BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: ) | |
| ) | MDL Docket No. |
| OVCON ORAL CONTRACEPTIVE ) | |
| ANTITRUST LITIGATION ) | |
| ) | |

**PLAINTIFF AMERICAN SALES COMPANY INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO DEFENDANTS'
JOINT MOTION TO CONSOLIDATE AND TRANSFER RELATED ACTIONS FOR
PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. §1407**

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, American Sales Company, Inc. ("Movant"), plaintiff in *American Sales Company, Inc. v. Warner Chilcott Holdings Co. III, Ltd., et al.*, C.A. No. 05-cv-2335-CKK in the United States District Court for the District of Columbia, hereby respectfully submits this Memorandum of Law in Support of its Response to the Defendants' Joint Motion to Consolidate and Transfer related actions to the federal district court for the District of New Jersey. For the reasons stated below, American Sales Company, Inc. respectfully request that the Judicial Panel on Multidistrict Litigation ("the Panel") enter an order transferring all related

actions to the federal district court for the District of Columbia because the balance of factors considered for transfer and consolidation weigh in favor of the District of Columbia.

## I.   INTRODUCTION

BACKGROUND

*Parties to the Action*

Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing and doing business under and by virtue of the laws of Bermuda, and Warner Chilcott Corporation is a wholly-owned indirect subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc. These entities have offices and principal places of business in New Jersey and are referred to collectively as "Warner."

Defendant Galen Chemicals Ltd. ("Galen"), is organized, exists, and does business pursuant to the laws of the Republic of Ireland, and is directly or indirectly owned or controlled by Warner. Warner through its direct and indirect subsidiaries is engaged in the discovery, development, manufacture, and distribution of pharmaceutical products throughout the United States, including Ovcon 35 ("Ovcon"), an oral contraceptive used to prevent pregnancy.

Defendant Barr, a Delaware corporation, is engaged in the development, manufacture, marketing, and distribution of generic oral contraceptive products. Barr maintains an office and principal place of business in New Jersey.

*Defendants' Anti-competitive Conduct in Violation of the Sherman Act*

Warner acquired Ovcon, which was originally approved by the Food and Drug Administration ("FDA") in 1976, and is not subject to patent protection, from Bristol-Myers Squibb Company ("BMS") on January 26, 2000. BMS agreed to supply (and has supplied)

2

Ovcon to Warner. Ovcon's net dollar sales have more than doubled since 2000, even as Warner has raised Ovcon's price. Ovcon is, and has been, one of Warner's highest revenue-producing products, and has been sold by Warner at a price substantially above Warner's cost of acquiring the product. For twelve months ending September 30, 2004, Warner's net sales of Ovcon were approximately $71.5 million.

In September 2001, Barr filed an Abbreviated New Drug Application with the Food and Drug Administration ("FDA") for approval to manufacture and sell an AB-rated or bioequivalent generic version of Ovcon. By January 2003, Barr publicly announced its intention to market a generic version of Ovcon by the end of the year. Barr anticipated pricing the generic Ovcon at approximately 30 percent less than the price that Warner charged for branded Ovcon, and projected that its generic Ovcon would capture approximately 50 percent of Warner's branded Ovcon sales within the first year of introduction.

Warner expected that Barr would price its generic at approximately 30 percent less than the price Warner charges for branded Ovcon. Warner projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescription sales within the first year of introduction. Warner calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period.

Within five months of Barr's announcement, Warner's chief financial officer warned the company's Board of Directors that generic Ovcon was the "biggest risk to the company." As a result, in August 2003, Warner and Barr discussed the possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon product. The negotiations between Warner and Barr resulted in the execution of a letter of intent on September 10, 2003. The terms of the letter of intent specified that Warner would pay Barr

3

$20 million and Barr would not compete in the United States for five years with its generic Ovcon product after Barr received final FDA approval. Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner if Warner so requested.

After Warner was notified by the Federal Trade Commission ("FTC") of the FTC's intention to investigate the non-compete agreement and its potential to significantly reduce competition by eliminating the only generic alternative to Ovcon, Warner and Barr signed their final Agreement on March 24, 2004. Under the Final agreement, within 45 days of FDA approval of Barr's generic version of Ovcon, Warner could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, itself or through a licensee, for five years. The Final Agreement referred to this arrangement as Warner's option to an exclusive license to Barr's generic version of Ovcon. Additionally, under the Final Agreement Warner retained the ability to purchase Ovcon supply from Barr, pursuant to certain payment terms. The ability to purchase supply from Barr would arise only after Barr received final FDA approval for its generic version of Ovcon. Warner and Barr understood that if upon FDA approval, Barr entered the contraceptive market with its generic Ovcon product, Warner's Ovcon supply needs would immediately be drastically reduced.

On April 23, 2004, the day after the FDA approved Barr's generic version of Ovcon, Barr publicly announced its intention to market generic Ovcon if Warner chose not to exercise its exclusive license option. On May 6, 2004, Warner exercised its exclusive license option under the Final Agreement and paid Barr $19 million. Warner did not begin purchasing Ovcon supply from Barr at that time, but instead continued to purchase Ovcon supply from BMS, until about May 2005. Under the terms of the Final Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately 2009.

Absent its agreement not to compete with Warner, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004. The entry of Barr's generic Ovcon into the United States would have quickly and significantly reduced the sales of Warner's branded Ovcon, and lead to a significant reduction in the average price purchasers paid for Ovcon products. Barr has abided by its agreement not to sell generic Ovcon in the United States, and to date no other pharmaceutical company has developed an AB rated generic version of Ovcon.

Absent the Defendants' anti-competitive conduct in violation of Section 1 of the Sherman Act, including collusion, agreement and conspiracy to assist Warner in: (1) effectively excluding less expensive, competitive products from the relevant market; (2) maintaining Warner's 100% market share and monopoly power in the relevant market; and (3) otherwise reaping the benefits of its illegal monopoly power. Plaintiff and the other Class members were injured in their business or property by the agreement, collusion and conspiracy among and between the Defendants which facilitated, enabled, assisted or furthered Warner's substantial foreclosure and exclusion of competition and monopolization of the relevant market. Plaintiff and other members of the class have been forced to pay higher prices for Ovcon than they would have paid in the absence of the Defendants' unlawful acts.

To date, ten related cases have been filed in three United States District Courts as referenced in Schedule A to Plaintiff's Response to Defendants' Joint Motion to Consolidate and Transfer for Pretrial Proceedings. These actions all name Warner Chilcott Holdings Company III, Ltd.; Warner Chilcott Corporation; Warner Chilcott (US) Inc.; Galen (Chemicals) Ltd.; and Barr Pharmaceuticals, Inc. as defendants and assert substantially similar claims and seek almost identical relief.

Transfer and consolidation of these ten actions is appropriate because they involve common factual questions, transfer will further the convenience of the parties and witnesses, and transfer will promote the just and efficient conduct of those actions. Furthermore, the District of Columbia is the appropriate place for transfer and consolidation for the reasons stated more fully below.

## II.    ARGUMENT

A.  <u>Transfer and Consolidation of All Ovcon Oral Contraceptive Antitrust Cases for Coordinated Pre-Trial Proceedings Will Further the Goals of Section 1407.</u>

The litmus test for transferability and coordination under 28 U.S.C. § 1407 is the presence of common questions of fact. *See In re Fed. Election Campaign Act. Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979). The related Ovcon Oral Contraceptive actions arise out of the same factual circumstances: the Defendants' through collusion, agreement and conspiracy enabled Warner to exclude less expensive competitive products, maintain Warner's 100% market share and monopoly power; and reap the benefits of its illegal monopoly power resulting in anti-competitive effects which far outweigh any procompetitive benefits or justification. Among the common questions of fact posed in these cases are: (1) whether the agreement not to compete among Defendants is a *per se* violation of the Sherman Act; (2) whether Defendants engaged in agreements, contracts, combinations, and conspiracies, which had the purpose and or effect of unreasonably restraining competition and limiting purchaser access to generic Ovcon; (3) whether Defendants' unreasonable anti-competitive contracts, combinations, and conspiracies have caused Plaintiff and the other members of the Class to suffer antitrust injury in the nature of overcharges; (4) whether Defendants' unlawful conduct caused Plaintiff and other Class members to pay more for Ovcon than they would otherwise have paid; (5) the appropriate Class-wide measure of damages; and; (6) whether Defendants' anti-competitive conduct is continuing.

6

thus entitling the Class to injunctive relief to promote unrestrained trade and free and fair competition.

Given the numerous common questions of fact and law involved in all of these cases, consolidation is appropriate and will benefit all parties. Overarching the significant financial savings, transfer and consolidation will promote the convenience of the parties and the economical and efficient expenditure of judicial resources during pre-trial proceedings by eliminating duplicative and redundant discovery and the potential for inconsistent rulings, including determinations on class certification.

Common questions are presumed "when two or more complaints assert comparable allegations against identical defendants base[d] on similar transactions and events." *In re Air West, Inc. Sec Litig.*, 384 F.Supp. 609, 611 (J.P.M.L. 1974); *see also In re Cuisinart Food Processor Antitrust Litig.*, 506 F.Supp. 651, 654-55 (J.P.M.L. 1981). The factual issues to be determined in each of the actions proposed for transfer and consolidation arise from the same course of conduct and, hence, are identical. See *In re Neurontin Mktg. & Sales Practices Litig.*, 342 F.Supp. 2d 1350, 1351 (J.P.M.L. 2004) (holding that there were common issues warranting transfer and consolidation where "[a]ll actions [we]re purported class actions involving allegations that common defendants have engaged in illegal promotion and sale of the drug Neurontin for 'off-label' use.") See class action Complaints filed in: (1) *American Sales Co., Inc. v. Warner Chilcott Holdings et al.*, C.A. No. 05-cv-2335-CKK, pending in the District of Columbia; (2) *State of Colorado et al. v. Warner Chilcott Holdings et al.*, C.A. No. 05-cv-2182-CKK, pending in the District of Columbia; (3) *Meijer, Inc. et al., v. Warner Chilcott Holdings et al.*, C.A. No. 05-cv-2195-ESH, pending in the District of Columbia; (4) *Louisiana Wholesale Drug Co., Inc., et al., v. Warner Chilcott Public Ltd., Co., et al.*, C.A. No. 05-cv-2210-CKK,

pending in the District of Columbia; (5) *Rochester Coop., Inc v. Warner Chilcott Public Ltd., Co., et al.*, C.A. No. 05-cv-2257-CKK, pending in the District of Columbia; (6) *FTC v. Warner Chilcott Holdings et al.*, C.A. No. 05-cv-22179-CKK, pending in the District of Columbia; (7) *Valley Wholesale Drug Co., Inc. v. Warner Chilcott Holdings Co. III, Ltd., et al.*, C.A. No. 05-cv-2321-CKK, pending in the District of Columbia; (8) *Vista Healthplan, Inc., et al. v. Warner Chilcott Holdings Co. III, Ltd., et al.*, C.A. No. 05-cv-2327-CKK, pending in the District of Columbia; (9) *SAJ Distributors, Inc. et al., v. Warner Chilcott Holdings III, Ltd., et al.*, C.A. No. 05-cv-6095-RK, pending in the Eastern District of Pennsylvania; (10) *Jabo's Pharmacy, Inc., et al., v. Warner Chilcott Holdings III, Ltd., et al.*, C.A. No. 05-cv-0316, pending in the Eastern District of Tennessee. These complaints have been attached hereto as exhibits 1-10 respectively. All of the actions proposed for transfer and consolidation allege nearly identical violations of law, including violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and are based on the same underlying facts from the same time period.

Because common issues of fact and law are shared by all of the related cases, discovery and pretrial motion practice in each action will almost certainly be duplicated of the actions are not consolidated. Consolidation will therefore avoid redundant and costly discovery proceedings, including repetitive motion practice and potentially conflicting discovery and other pre-trial rulings. *See In re First Nat'l Bank, Heavener, Okla (First Mortgage Revenue Bonds) Sec. Litig.*, 451 F.Supp. 995, 997 (J.P.M.L. 1978) (transfer "necessary even though only two actions involved, in order to prevent duplicative pretrial proceedings and eliminate the possibility of inconsistent pretrial rulings."); *see also In re Multi-piece Rim Prod. Liab. Litig.*, 464 F.Supp. 969, 974 (J.P.M.L. 1979) (same).

Similarly, because these actions assert identical or similar claims consolidation and transfer of these actions to a single forum will also help to avoid potential conflicting or inconsistent rulings on class certification issues. The transferee court is authorized to decide all class certification issues. *See In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 405 F.Supp. 1402, 1403-04 (J.P.M.L. 1975) ("As the Panel has held in several past litigations, matters concerning class action certification should be included in the coordinated or consolidated pretrial proceedings in order to prevent inconsistent rulings and promote judicial efficiency.") Further, allowing the transferee court to make all decisions relating to class certification will eliminate any potential for conflicting rulings. *See In re Cement and Concrete Antitrust Litig.*, 437 F.Supp. 750 752 (J.P.M.L. 1977) (transfer and consolidation are necessary to prevent inconsistent class certification rulings). For all the aforementioned reasons, transfer and consolidation are appropriate and will promote the just and efficient conduct of these actions.

B.  The District of Columbia is the Appropriate Forum for This Litigation.

The combination of key factors that this Panel considers in making determinations of the appropriate forum are: (1) the location of the parties, witnesses, and documents; (2) the accessibility of the proposed transferee district to parties and witnesses; and (3) the respective caseloads of the proposed transferee district courts. *See In re Corn Derivatives Antitrust Litig.*, 929 F.Supp. 931-32 (J.P.M.L. 1980). In selecting the most appropriate transferee forum, the Panel also considers the speed and efficiency with which District Courts manage their caseloads. *See In re Preferential Drug Prods. Pricing Antitrust*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977) (transferring cases in part upon a transferee court's low median time between filing and disposition in civil actions); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (same). This panel often centralizes actions in a specific forum, if proceedings

9

in that court are significantly more advanced than parallel proceedings in other courts. *In re Litig. Arising From The Termination Of The Retirement Plan For Employees Of Fireman's Fund Ins. Co.*, 422 F.Supp. at 290. No forum has this particular advantage. The related actions are all at an early stage. Centralization of the actions in the District of Columbia for consolidated pre-trial proceedings will best serve the convenience of the parties and witnesses and the interests of justice. Moreover, the judges of the District of Columbia have MDL experience and demonstrated success in the management of civil cases from filing to disposition and/or trial. Currently, seven of the eight related actions alleging substantially similar claims and seeking near identical relief filed in the District of Columbia are assigned to Judge Colleen Kollar-Kotelly. Additionally, Judge Kollar-Kotelly has experience in the management and resolution of class actions as demonstrated in *Kifafi v. Hilton Hotel Ret. Plan*, C.A. No. 98-1517-CKK; *Lightfoot v. Dist. Of Columbia*, C.A. No. 01-cv-1484-CKK; *U.S. v. Microsoft Corp.*, C.A. No. 98-1232-CKK; *Diamond Chem. Co. v. Akzo Nobel Chems. B.V.*, C.A. No. 01-cv-2118-CKK; *Cruz v. Am. Airlines*, C.A. No. 96-cv-2817-CKK. Given the Honorable Judge Kollar-Kotelly's experience in complex class actions, the panel should assign Judge Kollar-Kotelly to oversee the MDL proceedings in the matters now before the Panel. Moreover, the District of Columbia offers: (1) a convenient location; (2) a close proximity to where significant and substantial evidence is likely located, considering the Defendants' principal places of operation are located in New Jersey and is a convenient forum for plaintiffs, witnesses and counsel located throughout the nation; (3) a more efficiently managed and speedy docket than the District of New Jersey; and (4) a court system with experience in complex MDL matters already transferred there by the Panel.

According to the 2004 U.S. District Court Judicial Caseload Profile, the District of Columbia is ranked higher than the District of New Jersey in the category of "time of filing a civil action to trial," with a median time of only 27.4 months and a median time of 10.3 month from civil action filing to disposition. By comparison the District of New Jersey placed 79th nation-wide with a median time of 33.4 months from filing to trial and 7.6 months from civil action filing to disposition.[1]

C.   <u>Convenience of the Parties and Witnesses Favors the District of Columbia</u>.

The Defendants have offices and principal places of business in New Jersey which are within relative close proximity to the United States District Court for the District of Columbia. American Sales Company, Inc. provides purchasing and distribution services in health and beauty care items, pharmacy and general merchandise to retail arenas throughout the United States and has purchased Ovcon directly from Warner and as a consequence was injured. Accordingly, because American Sales Company, Inc. is the purchasing agent for retailers and has purchased Ovcon on their behalf throughout the Northeast and Mid-Atlantic regions including the District of Columbia, Maryland, Virginia, and West Virginia, the District of Columbia is the appropriate forum for transfer and consolidation of pre-trial matters. Furthermore, relevant conduct with respect to the Defendants' illegally maintained monopoly power in the market for prescription oral contraceptives through anti-competitive and unlawful contracts, combinations, and conspiracies occurred in close proximity to the District of Columbia.

Although the Defendants have their principal places of business in New Jersey, and within close proximity to the District of New Jersey, *In re Richardson-Merrell Inc. "Bendectin" Prods. Liab. Litig. (No. II)*, 533 F.Supp. 489 (J.P.M.L. 1982) (transfer to Ohio was appropriate

---

[1] See Judicial Caseload Profiles for the District of Columbia and the District of New Jersey attached as Exhibits 12.

because the relevant operations of the defendant drug manufacturer were carried on in Ohio–and thus many documents and witnesses would be found there), the District of Columbia is a superior forum for transfer and consolidation given (1) the scope of the Defendants' efforts to illegally maintain a monopoly and (2) the number of plaintiffs located beyond the proximity of New Jersey. Many of the witnesses and documents relevant to the prosecution of these cases will be located outside of the offices of the defendants' principle places of business and within the control of the various plaintiffs which are located in closer proximity to the District of Columbia.

The District of Columbia is also the appropriate forum because a considerable portion of the evidence on the claims alleged by American Sales Company, Inc. against the Defendants will likely involve testimony and documents from retailers like Giant-Carlisle and Giant-Landover for whom American Sales Company, Inc. is the purchasing agent. Giant-Carlisle, is based in Carlisle, Pennsylvania. Established in 1923, Giant-Carlisle stores operate under the name Giant in Pennsylvania and under the name Martins in Maryland, Virginia and West Virginia. Giant-Landover, is based in Landover, Maryland, and was established as Giant Food, Inc., in 1936. Giant-Landover operates retail stores selling food, pharmacy, health and beauty care items and general merchandise in Maryland, Virginia, Delaware, New Jersey and the District of Columbia. Accordingly, given the proximity to the District of Columbia of relevant witnesses and documents, the District of Columbia is the proper forum for transfer and consolidation.

Moreover, in terms of practicality, the District of Columbia is easily accessible by direct flights from all the major cities in the country. On balance the District of Columbia is extremely accessible and is a fair and convenient forum for all parties, witnesses, and counsel.

12

## II. CONCLUSION

Transfer and consolidation or coordination of these ten actions and any other subsequently-filed related cases, for pre-trial proceedings will serve the interests of justice by providing a single forum in which the legal rights of class members can be adjudicated. For the foregoing reasons, American Sales Company, Inc. responds to the Defendants' Joint Motion to Consolidate and Transfer for Pretrial Proceedings and respectfully request that the Panel order that this and all other related actions be consolidated and transferred to the District of Columbia, which is the most appropriate transferee forum.

Dated: December 20, 2005

_____
Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
60 West Randolph Street, Suite 200
Chicago, IL 60601
Telephone: (312)762-9237
Facsimile: (312) 762 9286

Jonathan W. Cuneo
David W. Stanley
William H. Anderson
CUNEO, GILBERT & LaDUCA, LLP
507 C Street, N.E.
Washington, D.C. 20002
(202)789-3960