**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VISTA HEALTHPLAN, INC. and UNITED FOOD AND COMMERCIAL WORKERS CENTRAL PENNSYLVANIA HEALTH AND WELFARE FUND,<br><br>    on behalf of themselves and all others similarly situated,<br><br>                                    Plaintiffs,<br><br>    v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., and BARR PHARMACEUTICALS, INC.,<br><br>                                    Defendants. | Civil Action No. 1:05CV02327<br><br>Judge Colleen Kollar-Kotelly |

**DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT**
**AND SUPPORTING MEMORANDUM OF LAW**

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc. (collectively, "Warner Chilcott") and Barr Pharmaceuticals, Inc. ("Barr") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss in part the above-captioned First Amended Complaint (the "Complaint") filed by Vista Healthplan, Inc. ("Vista") and United Food and Commercial Workers Central Pennsylvania Health and Welfare Fund ("United Food") (collectively, "Plaintiffs").

# Table of Contents

**Page**

I.  INTRODUCTION…………………………………………………………………1

II. BACKGROUND…………………………………………………………......2

    A.    The Agreement Between Warner Chilcott And Barr...........................................2

    B.    Plaintiffs Vista And United Food ......................................................................3

    C.    The Complaint ....................................................................................................4

III. LEGAL STANDARD………………………………………………………..5

IV. ARGUMENT…………………………………………………………………...5

    A.    Plaintiffs Lack Standing To Seek Damages Under The Antitrust And
        Consumer Protection Laws Of States That Follow *Illinois Brick* .........................6

        1.    The *Illinois Brick* Doctrine Bars Indirect Purchaser Suits Under
            The Antitrust Laws Of Four States..........................................................8

        2.    The *Illinois Brick* Doctrine Bars Indirect Purchaser Suits Under
            The Consumer Protection Laws Of Twenty-Four States...........................9

    B.    Plaintiffs Fail To State A Claim Under Three States' Antitrust Laws
        And Thirty-Six States' Consumer Protection Laws.............................................12

        1.    Plaintiffs' Antitrust Allegations Do Not State A Claim Under
            The Consumer Protection Laws Of Twenty-Two States.........................13

        2.    Plaintiffs Fail To Plead Other Essential Elements Necessary
            To Sustain Claims Under The Antitrust And Consumer Protection
            Laws Of Twenty-Three States ...............................................................24

            a.    Plaintiffs Do Not Purchase Goods for Personal, Family
                Or Household Use And Therefore Cannot State A Claim
                Under The Consumer Protection Laws Of Thirteen States...........25

            b.    Plaintiffs Do Not Meet Statutory Notice Requirements
                And Therefore Cannot State A Claim Under The
                Consumer Protection Laws Of Six States ....................................29

            c.    Plaintiffs Allege A Substantial Effect On Interstate
                Commerce And Therefore Cannot State A Claim Under
                The Antitrust Laws Of Two States And The District

Of Columbia And The Consumer Protection Laws
Of Three States ........................................................................31

     i.    Plaintiffs Do Not Meet The Intrastate Commerce
Requirements Of The Antitrust Laws Of The
District of Columbia And Massachusetts And The
Consumer Protection Law Of Utah..................................32

     ii.    Plaintiffs Do Not Allege A Sufficient Nexus To
State A Claim Under The Antitrust Law Of
Wisconsin And The Consumer Protection Laws
Of Delaware And New Hampshire ...................................34

    d.    Plaintiffs Are Private Parties And Therefore Cannot State
A Claim Under the Consumer Protection Act of Iowa.................35

  C.    Plaintiffs Cannot Circumvent *Illinois Brick's* Standing Limits By Alleging
A Generalized Unjust Enrichment Claim...........................................36

V.  CONCLUSION………………………………………………………………...38

# Table of Authorities

**Pages**

## Cases

\* *Abbott Labs., Inc. v. Segura*, 907 S.W.2d 504 (Tex. 1995)................................................................9, 10, 11, 12

*Alsides v. Brown Ins. Ltd.,* 592 N.W.2d 468 (Minn. Ct. App. 1999) ...................................................................19

*ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213 (D.D.C. 2005) ......................................5

*Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271 (D. Vt. 2003)........................................28

*Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238 (3d Cir. 2002) .......................................................27

*Berghausen v. Microsoft Corp.*, 765 N.E.2d 592 (Ind. Ct. App. 2002)...................................................................9

*Blewett v. Abbott Labs.*, 938 P.2d 842 (Wash. Ct. App. 1997)....................................................................10, 11

*BMW of North Am., Inc. v. Gore*, 517 U.S. 559 (1996) ........................................................................12

*Boos v. Abbott Labs*, 925 F. Supp. 49 (D. Mass. 1996) ........................................................................9

*Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001) ........................................................................23

*Brookings Mun. Util., Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169 (D.S.D. 2000)........................................22

*California v. ARC Am. Corp.*, 490 U.S. 93 (1989)........................................................................7

*C-B Kenworth, Inc. v. Gen. Motors Corp.*, 706 F. Supp. 952 (D. Me. 1988)....................................................26

*Cephas v. MVM, Inc.*, 403 F. Supp. 2d 17 (D.D.C. 2005)........................................................5

*City of Boston v. Aetna Life Ins. Co.,* 506 N.E.2d 106 (Mass. 1987)....................................................................31

*Daraee v. Microsoft Corp.*, 2000 WL 33187306 (Or. Cir. June 27, 2000) ...............................................................9

*Davidson v. Microsoft*, 792 A.2d 336 (Md. Ct. Spec. App. 2002) ..................................................................9, 18

*Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049 (5th Cir. 1982) ...........................................26

*Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83 (Ariz. Ct. App. 1983) ...............................................16

*Duvall v. Silvers, Asher Sher & McLaren, M.D.'s Neurology*, 998 S.W.2d 821 (Mo. Ct. App. 1999) ..................9

*EBSCO Indus., Inc. v. LMN Enters., Inc.*, 89 F. Supp. 2d 1248 (N.D. Ala. 2000) ......................................25

*ERI Max Entert., Inc. v. Streisand*, 690 A.2d 1351 (R.I. 1997) ...............................................................27

*Free v. Abbott Labs.*, 982 F. Supp. 1211 (M.D. La. 1997) ...............................................................9

*Free v. Abbott Labs., Inc.*, 176 F.3d 298 (5th Cir. 1999) ........................................................8

\* *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999) .........................................................passim

*FTC v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999)…………………………………9

*Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228 (Ill. App. 1st Dist. 1996) ...................................17

*Gonzales v. Assoc. Fin. Serv. Co. of Kan., Inc.*, 967 P.2d 312 (Kan. 1998) .............................................18

*Grinnell Mut. Reinsur. Co. v. Jungling*, 654 N.W.2d 530 (Iowa 2002) ...............................................36

*Healow v. Anesthesia Partners, Inc.*, 1996 WL 442524 (D. Mont. 1996) ...............................................9

*Hunt Enters., Inc. v. John Deere Indus. Equip. Co.*, 18 F. Supp. 2d 697 (W.D. Ky. 1997) ............................26

\* *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ............................................................6, 7

\* *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004).....................passim

*In re Relafen Antitrust Litig.*, 225 F.R.D. 14 (D. Mass. 2004)....................................................................................9

*In re Smith*, 866 F.2d 576 (3d Cir. 1989).............................................21

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001)..............................6, 7, 8

*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107 (D. Kan. 2003) ...............................14

*Island Mortgs. of New Jersey v. 3M*, 860 A.2d 1013 (N.J. Super. Law Div. 2004) .................................11, 20

*Jaffee v. United States*, 592 F.2d 712 (3d Cir. 1979) ..............37

*Johnson v. Microsoft Corp.*, 834 N.E.2d 791 (Ohio 2005)....................................................................................9, 21

*Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990) ...........8

*Kentucky Laborers Dist. Council Health and Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755 (W.D. Ky. 1998)................................................................10

*Laughlin v. Evanston Hosp.*, 550 N.E.2d 986 (Ill. 1990) ........17

*Lehman v. Shroyer*, 721 N.E.2d 365 (Ind. Ct. App. 1999)..............................................................17, 30, 31

*Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ...........................................................8

*Major v. Microsoft Corp.*, 60 P.3d 511 (Okla. Civ. App. 2002)....................................................................7, 9, 11

*McMahon v. Digital Equip. Corp.*, 944 F. Supp. 70 (D. Mass. 1996)....................................................................31

*Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833 (N.H. 2002) .........................................................................9

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222 (Iowa 1998).......................................36

*Mueller Co. v. U.S. Pipe & Foundry Co.*, 2003 WL 22272135 (D.N.H. Oct. 2, 2003).......................................35

*Olstad v. Microsoft Corp.*, 700 N.W. 2d 139 (Wisc. 2005)............................................................................34

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995) .............20

*Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491 (D.N.H. 1996)...................................................35

*Petri v. Gatlin*, 997 F. Supp. 956 (N.D. Ill. 1997) ................14

*Pomerantz v. Microsoft Corp.*, 50 P.3d 929 (Colo. Ct. App. 2002) ..................................................................9

*Sam v. Beaird*, 685 So. 2d 742 (Ala. Civ. App. 1996) .........15

*Sherwood v. Microsoft Corp.*, 2003 WL 21780975 (Tenn. Ct. App. July 31, 2003)..................................22

\*   *Sickles v. Cabot Corp.*, 877 A.2d 267 (N.J. Super. Ct. App. Div. 2005)...........................................7, 9, 12

*Siena v. Microsoft Corp.*, 796 A.2d 461 (R.I. 2002) ............9

*Sisters of Providence in Washington v. A.A. Pain Clinic, Inc.*, 81 P.3d 989 (Alaska 2003)..................................9

*Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc.*, 836 S.W.2d 907 (Ky. App. 1992) ..................................9, 11

*State v. Bear, Stearns & Co., Inc.*, 618 S.E.2d 582 (W. Va. 2005) ...............................................................28

*State v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428 (Idaho 2005)...............................................................16, 17

*State v. DVM Enter., Inc.*, 62 P.3d 653 (Kan. 2003) ............18

*Sun Dun Inc. v. Coca Cola Co.*, 740 F. Supp. 381 (D. Md. 1990)................................................................33

*Sun Dun Inc. v. Coca Cola Co.*, 770 F. Supp. 285 (D. Md. 1991)................................................................32

*The Daisy Group, Ltd. v. Newport News, Inc.*, 999 F. Supp. 548 (S.D.N.Y. 1998)........................................37

*Tylka v. Gerber Prods.*, 178 F.R.D. 493 (N.D. Ill. 1998)........12

*United States v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004) .................................................................14

*Utah Foam Products Co. v. Upjohn Co.*, 154 F.3d 1212 (10th Cir. 1998) ....................................................................33

*Vacco v. Microsoft Corp.*, 793 A.2d 1048 (Conn. 2002) ...........9, 10

*Valley Prod. Co. v. Landmark*, 877 F. Supp. 1087 (W.D. Tenn. 1994) ......................................................................9

*Varela v. Invs. Ins. Holding Corp.*, 615 N.E.2d 218 (N.Y. 1993) ........................................................................20

*Wade v. Jobe*, 818 P.2d 1006 (Utah 1991) ...............................23

*Wal-mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611 (Del. Ch. 2005) .........................................................16, 35

*Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455 (D.D.C. 1997) ...................................................................14

*Woodhaven Apartments v. Washington*, 942 P.2d 918 (Utah 1997) .......................................................................24

*Yo-Can, Inc. v. The Yogurt Exch., Inc.*, 778 N.E. 2d 80 (Ohio App. 7 Dist. 2002) ....................................................27

## Statutes

15 U.S.C. § 1................................................................................4

15 U.S.C. § 26..............................................................................4

21 U.S.C. § 355(b), (j) (2005) .....................................................2

73 Pa. Stat. Ann. § 201-9.2........................................................27

815 Ill. Comp. Stat. § 505/2.......................................................17

Ala. Code § 8-19-10(a)...............................................................25

Ala. Code § 8-19-3.....................................................................25

Ala. Code § 8-19-5.....................................................................15

Ariz. Rev. Stat. Ann. § 44-1522(A) ...........................................15

Colo. Rev. Stat. § 6-1-105 .................................................................................16

Del. Code Ann. tit. 6, § 2113 .............................................................................9

Del. Code Ann. tit. 6, § 2512 .............................................................................34

Del. Code Ann. tit. 6, § 2513(a) ........................................................................16

Idaho Code Ann. § 48-603 ................................................................................16

Idaho Stat. § 48-113 ..........................................................................................9

Ind. Code § 24-5-0.5-3 ......................................................................................17

Ind. Code § 24-5-0.5-5(a) ..................................................................................29

Ind. Code § 24-5-0.5-5(b) ..................................................................................29

Kan. Stat. § 50-623 ............................................................................................28

Kan. Stat. § 50-624(b) ........................................................................................26

Kan. Stat. § 50-634 ............................................................................................26

Kan. Stat. Ann. § 50-626 ...................................................................................18

Kan. Stat. Ann. § 50-627 ...................................................................................18

Ky. Rev. Stat. Ann. § 367.220(1) ......................................................................26

Mass. Gen. Laws ch. 93A, § 9(3) ......................................................................29

Mass. Gen. Laws, ch. 93, § 3 ............................................................................33

Md. Com. Law Code § 13-301 ...........................................................................18

Md. Com. Law Code § 13-303 ...........................................................................18

Me. Rev. Stat. tit. 5, § 213 .................................................................................26

Mich. Comp. Laws § 445.903(1) ........................................................................19

Minn. Stat. § 325F.68 .........................................................................................24

Minn. Stat. § 325F.69(1) .....................................................................................19

Miss. Code Ann. § 75-24-15 ..............................................................................30

Miss. Code Ann. § 75-24-15(1) ..........................................................................26

Mo. Rev. Stat. § 407.025 ................................................................................................27

Mont. Code Ann. § 30-14-102 ........................................................................................27

Mont. Code Ann. § 30-14-133(1) ....................................................................................27

N.D. Cent. Code § 51-15-02 ...........................................................................................21

N.H. Rev. Stat. Ann. § 358-A:2 ......................................................................................35

Nev. Rev. Stat. § 598.0915 .............................................................................................19

Nev. Rev. Stat. § 598.0918 .............................................................................................19

Nev. Rev. Stat. § 598.092 ...............................................................................................19

Nev. Rev. Stat. § 598.0923 .............................................................................................19

Nev. Rev. Stat. § 598.0925 .............................................................................................19

N.Y. Gen. Bus. Law § 349(a) .........................................................................................20

Ohio Rev. Code Ann. § 1345.02(A) ...............................................................................21

Ohio Rev. Code Ann. § 1345.03(A) ...............................................................................21

Ohio Rev. Stat. § 1345.09 ...............................................................................................27

Ohio Rev. Stat. § 1345.01(A), (D) .................................................................................27

Pa. Stat. Ann. tit. 73, § 201-2(4) ....................................................................................22

Pa. Stat. Ann. tit. 73, § 201-3 .........................................................................................21

R.I. Gen. Laws § 6-13.1-5.2 ...........................................................................................27

S.D. Codified Laws § 37-24-6 ........................................................................................22

Tenn. Code Ann. § 47-18-104(a) ....................................................................................22

Tex. Bus. & Com. Code § 17.45(5) ................................................................................23

Tex. Bus. & Com. Code § 17.46 .....................................................................................23

Tex. Bus. & Com. Code § 17.46(b) ................................................................................23

Tex. Bus. & Com. Code § 17.50(a)(1) ............................................................................23

Tex. Bus. & Com. Code § 17.50(a)(3) ............................................................................23

Tex. Bus. & Com. Code § 17.505 .................................................................................30

Utah Code Ann. § 13-5-5 ...........................................................................................33

Utah Code Ann.§ 13-11-4 ...........................................................................................23

Utah Code Ann.§ 13-11-5 ...........................................................................................23

Va. Code Ann. § 59.1-200 ...........................................................................................24

Va. Code Ann. § 59.1-9.17 ...........................................................................................10

Vt. Stat. Ann. tit. 9, § 2451a(a) ...................................................................................28

Vt. Stat. Ann. tit. 9, § 2461(b) ...................................................................................28

W. Va. Code § 46A-6-102(2) .......................................................................................28

W. Va. Code § 46A-6-106 ...........................................................................................28

W. Va. Code § 46A-6-106(b) .......................................................................................30

Wyo. Stat. § 40-12-102(a)(ii) .......................................................................................28

Wyo. Stat. § 40-12-108(a) ...........................................................................................28

Wyo. Stat. Ann. § 40-12-109 .......................................................................................30

x

## I.  INTRODUCTION

On behalf of a proposed class of "third-party payors," Plaintiffs allege that Defendants entered into an anticompetitive agreement regarding an oral contraceptive, Ovcon. As an insurer and a fund, however, Plaintiffs are not direct purchasers of Ovcon and, therefore, lack standing to seek treble damages under both federal antitrust law and under state law in the many states that have not passed "*Illinois Brick* repealer" laws.  Facing this reality, Plaintiffs attempt to piece together an assortment of damages claims under a multiplicity of state laws, as well as an "equitable" claim for restitution and disgorgement under a so-called unjust enrichment theory.  Plaintiffs' attempt fails under the vast majority of statutes upon which they rely.

While Plaintiffs seek damages under some 75 state statutes, they do not even lay out fundamental pleading requirements of more than half of them.  While, undoubtedly, this places an unnecessary burden on Defendants and this Court to parse through Plaintiffs' pleading to understand what precisely is being claimed, such consideration is warranted because it reveals that claims asserted under no less than 48 statutes are improper and should be dismissed. Dismissal of these claims will substantially narrow the necessary discovery in this action, eliminating *all* claims under the statutory schemes of 28 states.  Accordingly, Defendants move to dismiss Count III, *in its entirety*, and move to dismiss Counts II and IV, in part, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

Specifically, Defendants move to dismiss the following claims:

- **Count II:**  the antitrust claims asserted under the laws of the District of Columbia, Florida, Louisiana, Massachusetts, New Jersey, and Wisconsin; and the consumer protection claims asserted under the laws of Arizona, Kansas,

---

[1]  As discovery proceeds, additional bases to dismiss any remaining claims will likely emerge.  For example, it remains to be seen whether Plaintiffs can show that they are directly impacted by the conduct alleged and otherwise have standing to assert claims in any of the remaining states.

Louisiana, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, North Dakota, Tennessee, Vermont, and West Virginia;[2]

- **Count III:**  the unjust enrichment claim in its entirety; and

- **Count IV:**  the consumer protection claims asserted under the laws of the Alabama, Alaska, Arizona, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming.

## II.  BACKGROUND

### A.  THE AGREEMENT BETWEEN WARNER CHILCOTT AND BARR

Warner Chilcott markets and sells pharmaceutical products, including Ovcon, an oral contraceptive.  First Amended Complaint ("FAC") ¶ 2.[3]  Warner Chilcott purchased Ovcon from Bristol-Myers Squibb ("BMS") in January 2000, and simultaneously entered into a supply agreement for that product.  *Id.* ¶ 34.  BMS, however, was unable to adequately supply Warner Chilcott with Ovcon.

Barr manufactures and sells pharmaceutical products.  FAC ¶ 3.  In April 2004, Barr received approval from the Food and Drug Administration ("FDA") to produce Ovcon under an Abbreviated New Drug Application ("ANDA").  *Id.* ¶ 53.[4]  Currently, Barr produces

---

[2]    As Plaintiffs allege violations of the consumer protection statutes of all 50 states and the District of Columbia in Count IV, 13 of the claims asserted under the consumer protection statutes in Count II are duplicative of those asserted in Count IV.

[3]    As required by Federal Rule of Civil Procedure 12(b)(6), for the purposes of this motion only, Defendants accept the allegations in the Complaint as true.

[4]    Manufacturers must file a New Drug Application ("NDA") with the FDA to produce a new drug.  FAC ¶ 22.  Manufacturers file ANDAs to obtain approval to market generic versions of a "Reference Listed Drug," that is, a drug for which an NDA has been approved.  *Id.* ¶¶ 23, 26; *see also* 21 U.S.C. § 355(b), (j).

Ovcon for Warner Chilcott pursuant to a license and supply agreement.  *See id.* ¶¶ 50-52, 55.

The material terms of Warner Chilcott's and Barr's agreement concerning Ovcon were disclosed

in a September 2003 Letter of Intent ("LOI") between the parties, whereby Barr contemplated

granting Warner Chilcott an option to acquire a 5-year exclusive license to its ANDA for Ovcon

in addition to a supply of that product.  *See id.* ¶ 50.  More than 6 months later, on March 24,

2004, Warner Chilcott and Barr executed an agreement implementing the terms of the LOI, and

on May 6, 2004, Warner Chilcott exercised its option under that agreement.  *See id.* ¶¶ 51, 55.

Plaintiffs challenge this agreement as anticompetitive, *id.* ¶¶ 50, 52, 55, 61, and allege that

Defendants' conduct has "occurred in and [has] had a substantial effect upon interstate

commerce."  *Id.* ¶ 19.  Importantly, however, Ovcon has been on the market since approximately

1976 and was off-patent long before it was purchased by Warner Chilcott.  *See id.* ¶ 32.  As such,

Defendants' conduct could not preclude generic entry; a generic version of Ovcon may enter the

market at any time.  *See id.*

**B.    PLAINTIFFS VISTA AND UNITED FOOD**

Plaintiff Vista is a Florida insurance company "that provides comprehensive

health benefits to its members through agreements with participating pharmacies."  FAC ¶ 11.

Plaintiff United Food is a Pennsylvania trust fund that "provid[es] health benefits to eligible

participants."  *Id.* ¶ 12.  Like most insurance companies and health funds, Plaintiffs pay for or

reimburse their members' prescription drug costs.  *See id.* ¶¶ 11-12.  Plaintiffs purport to bring a

class action on behalf of "[a]ll Third Party Payors in the United States who purchased,

reimbursed, and/or paid for Ovcon" during the class period.  *Id.* ¶ 62.  Plaintiffs define a "Third

Party Payor" as:

> (i) a party to a contract, issuer of a policy, or sponsor of a plan, which contract,
> policy, or plan provides prescription drug coverage to natural persons; and (ii) is
> also at risk, pursuant to such contract, policy or plan, to provide prescription drug

3

> benefits, or to pay or reimburse all or part of the cost of prescription drugs dispensed to natural persons covered by such contract, policy or plan.

*Id.*

## C.    THE COMPLAINT

Plaintiffs filed their original complaint on December 5, 2005 and their First Amended Complaint on February 6, 2006, alleging that the agreement described above gives rise to multiple claims under both state and federal law.[5]  In essence, Plaintiffs claim that they and other third-party payors "were and still are forced to pay more for Ovcon than they otherwise would have paid" as a result of Defendants' agreement, FAC ¶ 74, because Plaintiffs pay for or reimburse some or all of their members' costs for Ovcon.  *Id.* ¶¶ 11, 62.

In Count I, Plaintiffs seek an injunction and other "equitable" relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, for an alleged violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  *Id.* ¶¶ 75-77.  In Count II, Plaintiffs seek compensatory and multiple damages for alleged violations of the antitrust and consumer protection statutes of 23 states and the District of Columbia.  *Id.* ¶¶ 79-81.  In Count III, Plaintiffs seek restitution, disgorgement, and a constructive trust based on a theory of unjust enrichment.  *Id.* ¶¶ 83-84.  Finally, in Count IV, Plaintiffs seek unspecified relief for alleged violations of the consumer protection acts of all 50 states and the District of Columbia.  *Id.* ¶¶ 86-87.  As discussed below, the vast majority of these claims must be dismissed.

---

[5]     In addition, the Federal Trade Commission, various states, and six purported direct purchaser classes have filed 8 separate antitrust complaints in this district, all against the same set of Defendants and all targeting the same agreement.  On January 6, 2006, Defendants filed a Joint Motion to Consolidate these cases pursuant to Federal Rule of Civil Procedure 42.  Defendants' motion is currently pending before this Court.

### III.   LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 43 (D.D.C. 1999), *modified on other grounds*, 99 F. Supp. 2d 1 (D.D.C. 1999) (internal quotations omitted).  While the Court "should accept the plaintiff's allegations as true and construe those allegations in the light most favorable to the pleader," *ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 214 (D.D.C. 2005) (internal citations omitted), it "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Cephas v. MVM, Inc.*, 403 F. Supp. 2d 17, 20 (D.D.C. 2005) (internal citations omitted).  To survive a motion to dismiss, a plaintiff must set forth in its complaint "factual allegations that are neither vague nor conclusory and that cover all the elements that comprise the theory for relief." *ASA Accugrade*, 370 F. Supp. 2d at 215 (internal quotations omitted). Bare legal conclusions will not suffice.  *See id.*

Even construing the allegations in the light most favorable to Plaintiffs, the Complaint does not – and cannot – allege any set of facts that would entitle Plaintiffs to relief under the claim alleged in Count III of the Complaint, as well as a majority of the claims alleged in Counts II and IV of the Complaint.  As a result, each of the claims summarized above in Part I, *supra*, must be dismissed.

### IV.   ARGUMENT

Plaintiffs exert no effort to tailor the allegations in their scattershot Complaint to the 75 state statutes upon which they rely.  Consequently, there are often numerous bases to

5

dismiss a claim asserted under a particular statute, any one of which is sufficient in and of itself to justify dismissal. To minimize repetition, Defendants first address each basis for dismissal separately and then address on a state-by-state basis the claims alleged under Counts II and IV of the Complaint that should be dismissed. Finally, Defendants address the reasons why the Court should dismiss in its entirety Count III of the Complaint.

**A.    PLAINTIFFS LACK STANDING TO SEEK DAMAGES UNDER THE ANTITRUST AND CONSUMER PROTECTION LAWS OF STATES THAT FOLLOW ILLINOIS BRICK**

As an initial matter, Plaintiffs erroneously assert damages claims in Counts II and IV of the Complaint based upon the laws of states that deny third-party payors standing. Accordingly, in this section, Defendants move to dismiss all claims asserted under the laws of those states that follow the direct purchaser rule set forth by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Specifically, Defendants move to dismiss on this basis the claims asserted under the antitrust statutes of Florida, Louisiana, Massachusetts, and New Jersey, as well as the claims asserted under the consumer protection statutes of Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Indiana, Kentucky, Louisiana, Maryland, Missouri, Montana, New Hampshire, New Jersey, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington, and Wyoming.

It is beyond dispute that plaintiffs that do not directly purchase a product lack standing to pursue claims for damages arising from an antitrust violation under federal law. *See Illinois Brick*, 431 U.S. at 730-32; *see also In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1369 (S.D. Fla. 2001) (dismissing indirect purchaser damages claims on the grounds that "[t]he U.S. Supreme Court has flatly repudiated such efforts to trace damages through multiple levels in a chain of distribution or to apportion damages between direct and indirect purchasers"). By prohibiting indirect purchasers from suing for damages altogether, the

6

Supreme Court sought to avoid the "risk of duplicative recoveries," "unwarranted multiple liability," and the vastly complicated treble damage proceedings that were otherwise virtually guaranteed. *Illinois Brick*, 431 U.S. at 730-32. In short, the Court concluded that "the antitrust laws will be more effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers . . . ." *Id.* at 735.

Although the Supreme Court has held that states may allow suits by indirect purchasers under their own statutes, *see California v. ARC Am. Corp.*, 490 U.S. 93, 105-06 (1989), it has not created a cause of action for indirect purchasers to pursue under state laws. *See Sickles v. Cabot Corp.*, 877 A.2d 267, 275 (N.J. Super. Ct. App. Div. 2005); *Major v. Microsoft Corp.*, 60 P.3d 511, 513 (Okla. Civ. App. 2002). The state itself, then, must create a right of action allowing indirect purchasers to recover damages by repealing *Illinois Brick*. As one court in this district recently explained, *Illinois Brick* prevents indirect purchaser suits under both state antitrust and consumer protection statutes *unless* the state legislatures or courts have explicitly provided otherwise. *See Mylan*, 62 F. Supp. 2d at 43.

Plaintiffs here are third-party payors. FAC ¶ 62. Yet third-party payors do not purchase prescription drugs directly from pharmaceutical companies. *See, e.g.*, *In re Terazosin*, 160 F. Supp. 2d at 1367-68 (listing employee health plans among other indirect purchasers). Indeed, Plaintiffs reimburse their participants' purchases. *See* FAC ¶ 11 ("Vista pays some or all of the costs of prescription drugs dispensed . . . to its members."); ¶ 12 ("United Food . . . has paid [for] or reimbursed . . . its participants' purchases . . . ."). Accordingly, Plaintiffs do not allege that they, in fact, *purchase* Ovcon, let alone that they purchase Ovcon *directly* from Warner Chilcott. At best, then, Plaintiffs here amount to indirect purchasers. *See Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 207 (1990) (explaining that indirect purchasers "are not the

7

immediate buyers from the alleged antitrust violators").

   As third-party payors, and, thus, entities that do not purchase Ovcon directly, Plaintiffs' claims for monetary damages are clearly barred by Supreme Court precedent under federal law and, in the absence of express remedies created by state legislation or courts, state law as well. *See Mylan,* 62 F. Supp. at 43; *see also In re New Motor Vehicles Canadian Export Antitrust Litig.,* 350 F. Supp. 2d 160, 211-12 (D. Me. 2004); *In re Terazosin,* 160 F. Supp. 2d at 1372-75. As set forth in detail below, no less than 4 of Plaintiffs' antitrust claims and 24 of Plaintiffs' consumer protection claims must be dismissed because those states follow the direct purchaser rule of *Illinois Brick.*

### 1.  The Illinois Brick Doctrine Bars Indirect Purchaser Suits Under The Antitrust Laws Of Four States

   Plaintiffs assert claims in Count II of the Complaint under the antitrust laws of Florida, Louisiana, Massachusetts, and New Jersey apparently under the impression that these states have repealed *Illinois Brick. See* FAC ¶ 80 (d, g, i, o) (listing these states as among "the indirect purchaser states"). Plaintiffs are mistaken.

   Indirect purchaser actions are clearly prohibited under the antitrust laws of Florida, Louisiana, Massachusetts, and New Jersey. *See Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 102-03 (Fla. Dist. Ct. App. 1996) (explaining that Florida adheres to the "direct purchaser" rule enunciated in *Illinois Brick,* and that plaintiff and the others in her class, all of whom were indirect purchasers, lacked standing to pursue a Florida antitrust claim); *Free v. Abbott Labs., Inc.*, 176 F.3d 298, 299-301 (5th Cir. 1999), *aff'd without opinion*, 529 U.S. 333 (2000) (affirming dismissal of claim under Louisiana's antitrust law for lack of standing because "the Louisiana courts would follow the federal indirect purchaser rule"); *Boos v. Abbott Labs*, 925 F. Supp. 49, 51 (D. Mass. 1996) (citing *Commonwealth v. Mass. CRINC*, 466 N.E.2d 792,

796 n.7 (Mass. 1984)) (recognizing that the *Illinois Brick* doctrine applies to claims brought under Massachusetts' antitrust law); *Sickles*, 877 A.2d at 275 (dismissing for lack of standing indirect purchasers' claim based upon New Jersey's antitrust law because "it is clear New Jersey courts are directed to follow the *Illinois Brick* holding").  As Plaintiffs are, at best, indirect purchasers of Ovcon, there is no question that their claims under these 4 state antitrust statutes must be dismissed.

### 2.    The Illinois Brick Doctrine Bars Indirect Purchaser Suits Under The Consumer Protection Laws Of Twenty-Four States

Similarly, *Illinois Brick* mandates the dismissal of Plaintiffs' consumer protection claims alleged in Counts II and IV of the Complaint under the laws of 24 states[6] that forbid indirect purchasers from asserting damages claims under their antitrust laws.  To hold otherwise

---

[6]    Twenty-four states adhere to the direct purchaser rule of *Illinois Brick*:  Alaska (*see Mylan*, 62 F. Supp. 2d at 43; *Sisters of Providence in Washington v. A.A. Pain Clinic, Inc.*, 81 P.3d 989, 1000 (Alaska 2003)); Colorado (*see Pomerantz v. Microsoft Corp.*, 50 P.3d 929, 933 (Colo. Ct. App. 2002)); Connecticut (*see Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1069 (Conn. 2002)); Delaware (*see* Del. Code Ann. tit. 6, § 2113); Georgia (*see Valley Prod. Co. v. Landmark*, 877 F. Supp. 1087, 1096 (W.D. Tenn. 1994)); Idaho (*see* Idaho Stat. § 48-113); Indiana (*see Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 595-96 (Ind. Ct. App. 2002)); Kentucky (*see Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. App. 1992)); Louisiana (*see Free v. Abbott Labs.*, 982 F. Supp. 1211, 1216 (M.D. La. 1997)); Maryland (*see Davidson v. Microsoft*, 792 A.2d 336, 339-45 (Md. Ct. Spec. App.),*cert. denied*, 801 A.2d 1032 (Md. 2002)); Missouri (*see Duvall v. Silvers, Asher Sher & McLaren, M.D.'s Neurology*, 998 S.W.2d 821, 825 (Mo. Ct. App. 1999)); Montana (*see Healow v. Anesthesia Partners, Inc.*, 1996 WL 442524, at *4 (D. Mont. 1996)); New Hampshire (*see Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 839-40 (N.H. 2002)); New Jersey (*see Sickles*, 877 A.2d at 275); Ohio (*see Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 798 (Ohio 2005)); Oklahoma (*see Major*, 60 P.3d at 513); Oregon (*see Daraee v. Microsoft Corp.*, 2000 WL 33187306, at * 1 (Or. Cir. June 27, 2000)); *In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 25 (D. Mass. 2004)); Rhode Island (*see Siena v. Microsoft Corp.*, 796 A.2d 461, 464 (R.I. 2002)); South Carolina (*see Mylan*, 62 F. Supp. 2d at 51); Texas (*see Abbott Labs. v. Segura*, 907 S.W.2d 503, 507 (Tex. 1995)); Utah (*see Mylan*, 99 F. Supp. 2d at 9); Virginia (*see* Va. Code Ann. § 59.1-9.17); Washington (*see Blewett v. Abbott Labs.*, 938 P.2d 842, 846 (Wash. Ct. App. 1997)); and Wyoming (*see Mylan*, 62 F. Supp. 2d at 43).

would be to allow Plaintiffs an "end run" around this clear prohibition through creative pleading.

*See Mylan,* 62 F. Supp. 2d at 43.

      The policy reasons barring indirect purchaser suits under the antitrust laws apply

equally to suits by indirect purchasers under the consumer protection laws.  As the Texas

Supreme Court succinctly explained in *Abbott Labs., Inc. v. Segura*, 907 S.W.2d 504, 506-07

(Tex. 1995):

> The legal reasoning behind the prohibition on indirect purchaser
> recovery in antitrust has three principal bases, each of which the
> Supreme Court discussed at some length in *Illinois Brick.* . . .
> This same reasoning applies to plaintiffs suing under [state
> consumer protection laws] on allegations that are in essence
> antitrust claims.  Assuming, *arguendo,* that . . . anticompetitive
> conduct is recoverable under [state consumer protection laws],
> indirect purchasers would face the same proof problems as they
> would have faced had an antitrust cause of action been recognized.

      "Over the past one hundred years, state and federal courts have developed sound

reasons to disfavor claims by remote plaintiffs for derivative injuries."  *Kentucky Laborers Dist.*

*Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc*., 24 F. Supp. 2d 755, 761 (W.D.

Ky. 1998).  Quite simply, by failing to repeal *Illinois Brick*, each of these 24 states demonstrates

its adherence to this policy.  In fact, 7 of these states have gone so far as to explicitly forbid

indirect purchasers from circumventing the antitrust laws through creative pleading.  *See Vacco*

*v. Microsoft Corp.*, 793 A.2d 1048, 1049 (Conn. 2002) (indirect purchasers are unambiguously

barred from maintaining a claim "predicated on the same factual allegations underlying the[ir]

antitrust claim, pursuant to the Connecticut Unfair Trade Practices Act"); *Skilcraft Sheetmetal,*

*Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992) (affirming dismissal of indirect

purchasers' claim under the Kentucky Consumer Protection Act because "a subsequent

purchaser may not maintain an action against a seller with whom he did not deal"); *In re New*

*Motor Vehicles*, 350 F. Supp. 2d at 192 (holding that indirect purchasers "cannot avoid [Missouri's] prohibition on indirect purchaser suits by making the same claim under Missouri's consumer protection statute"); *Island Mortgs. of New Jersey v. 3M*, 860 A.2d 1013, 1017-18 (N.J. Super. Law Div. 2004) (dismissing indirect purchasers' Consumer Fraud Act claims because the conduct alleged "clearly [fell] within the jurisdiction of New Jersey's Antitrust Act"); *Major*, 60 P.3d at 517 (holding that the Oklahoma Consumer Protection Act "should not extend to anticompetitive conduct and [the plaintiff] should not be permitted under the law to avoid the United States Supreme Court's policy choices expressed in *Illinois Brick* by recasting his claims of anticompetitive conduct as a Consumer Protection Act claim"); *Segura*, 907 S.W.2d at 507 (explaining that Texas decidedly forecloses indirect purchasers from "seeking a prohibited antitrust recovery [*i.e.,* damages] under the masquerade of [its] consumer protection statute"); *Blewett v. Abbott Labs.*, 938 P.2d 842, 847 (Wash. Ct. App. 1997) (affirming dismissal of Washington Consumer Protection Act claim brought by consumers against major drug manufacturers for overcharges allegedly passed on to them through local pharmacies and drug stores because, as an indirect purchaser, plaintiffs had "not suffered cognizable injury under the CPA").

In sum, to permit Plaintiffs here to sue for damages under these 24 states' consumer protection acts "would undermine the standing requirements of the [states' antitrust acts] and would essentially permit an end run around the policies allowing only direct purchasers to recover under the Antitrust Act[s]." *Sickles*, 877 A.2d at 277 (internal quotations and citations omitted); *see also Segura*, 907 S.W.2d at 507 (explaining that it would "not interpret the [consumer protection laws] in a manner that rewards creative pleading at the expense of

consistent application of legal principles"). Plaintiffs' claims under the 24 state statutes

enumerated above must therefore be dismissed.

**B.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THREE STATES' ANTITRUST LAWS AND THIRTY-SIX STATES' CONSUMER PROTECTION LAWS**

More than half of the claims Plaintiffs assert in Counts II and IV of the Complaint

under a multiplicity of state antitrust and consumer protection statutes fail for a separate and

independent reason: Plaintiffs have not pled the requisite elements. Careful consideration of

each of the antitrust and consumer protection statutes invoked by Plaintiffs illustrates that

multiple bases for dismissal often apply to each claim, any one of which would be sufficient in

and of itself to justify dismissal. For the sake of clarity, Defendants first address the bases for

dismissal and then address the application of these bases to each specific state law claim.

First, as set forth in Section B.1 below, Plaintiffs fail to allege any facts that

would transform their antitrust claim into violations of 22 states' consumer protection statutes.

Simply *labeling* their claims as ones for consumer fraud will not suffice: many state consumer

protection statutes require Plaintiffs to demonstrate facts supporting fraud or deceit. In addition,

although consumer protection statutes may be enacted for the same general purposes, they do not

necessarily target the same conduct in a uniform manner. *See BMW of North Am., Inc. v. Gore*,

517 U.S. 559, 568-69 (1996) ("No one doubts that a state may protect its citizens by prohibiting

deceptive trade practices. . . . But the states need not, and in fact do not, provide such protection

in a uniform manner."); *Tylka v. Gerber Prods.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998) ("[A] brief

review of the [consumer protection] statutes reveals not only nuances, but differing standards of

proof, procedure, substance, and remedies."). As detailed below, a number of state consumer

protection statutes only prohibit specifically enumerated and limited conduct that is not alleged here.[7]

Next, as set forth in Section B.2, Plaintiffs fail to set forth other essential elements of their claims: (a) 13 consumer protection claims must be dismissed because these statutes only allow consumers – not third-party payors – to recover; (b) 6 consumer protection claims must be dismissed because Plaintiffs fail to meet essential notice requirements; (c) 3 antitrust and 3 consumer protection claims must be dismissed because Plaintiffs fail to allege that the challenged conduct either affected intrastate commerce or had a substantial nexus to any state; and (d) the Iowa Consumer Protection Act claim must be dismissed because it provides no private right of action.

## 1. Plaintiffs' Antitrust Allegations Do Not State A Claim Under The Consumer Protection Laws Of Twenty-Two States

As alleged in Counts II and IV of the Complaint, Plaintiffs attempt to transform what is, at best, an antitrust claim into a violation of the consumer protection laws of all 50 states and the District of Columbia. This attempt must fail. Consumer protection statutes are generally designed to prevent those who regularly engage in consumer sales from making false or deceptive statements about their goods or services. Entering into a purportedly anticompetitive agreement absent some element of fraud or deceit simply does not provide a basis for relief under many states' consumer protection statutes. Indeed, after weeding through the consumer protection laws of all 50 states and the District of Columbia, it becomes abundantly clear that the consumer protection laws of the following 22 states are wholly inapplicable to this case:

---

[7]      Plaintiffs fail to cite any particular provision of the 51 state consumer protection statutes that they contend Defendants have violated. Nonetheless, a review of each of the numerous provisions in these statutes reveals that the conduct alleged simply does not fall within the purview of these narrowly drawn consumer protection statutes.

Alabama, Arizona, Colorado, Delaware, Idaho, Illinois, Indiana, Kansas, Maryland, Michigan, Minnesota, Nevada, New Jersey, New York, North Dakota, Ohio, Pennsylvania, South Dakota, Tennessee, Texas, Utah, and Virginia.

To be sure, Plaintiffs attempt to state a claim under the consumer protection statutes of these 22 states by including a bald assertion that Defendants' agreement constitutes "unconscionable, deceptive, or fraudulent acts."  FAC ¶ 87.  However, this assertion cannot convert a classic antitrust claim into a violation of those states' consumer protection laws, and it certainly cannot meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

Deceptive trade practices claims "must be pleaded with particularity because they are akin to allegations of fraud."  *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 464 (D.D.C. 1997) (internal citations omitted).  Naked allegations do not suffice.  *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003) (applying Rule 9(b)'s heightened pleading standard to consumer protection claims); *Petri v. Gatlin*, 997 F. Supp. 956, 973 (N.D. Ill. 1997) (same); *see also United States v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (plaintiff must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud" to state a claim).

Here, while Plaintiffs challenge Defendants' agreement and its purported effect, nowhere do they assert that Defendants concealed or misrepresented the agreement's nature, terms, or existence, or that Defendants' agreement targeted particularly vulnerable consumers. Plaintiffs' Complaint is utterly devoid of factual allegations that could constitute

14

unconscionability, fraud, or deceit.  As a result, many of Plaintiffs' consumer protection claims must be dismissed.

Moreover, Plaintiffs ignore the clear distinctions in a number of consumer protection statutes and, as a result, fail to allege conduct falling within the various statutes that target only specific practices.  For this reason as well, many of Plaintiffs' consumer protection claims must be dismissed.

ALABAMA:  The Alabama Deceptive Trade Practices Act prohibits only "deceptive acts or practices."  Ala. Code § 8-19-5.  It does not prohibit unfair methods of competition generally, but rather lists twenty-six prohibited practices, all of which involve fraud or deception.  *See id.*; *see also Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996) (explaining that "the statutory provisions in § 8-19-5 are designed to have limited application and are intended to replace the common law and statutory actions for fraud only in specifically designated situations").  While the Act also prohibits one from "[e]ngaging in any other unconscionable . . . act or practice," this, too, "require[s] some knowledge of false or deceptive conduct on the part of the wrongdoer." *Sam*, 685 So. 2d at 744.

ARIZONA:  The Arizona Consumer Fraud Act ("ACFA") prohibits the use of "deception" or "fraud" in connection with a sale of merchandise.  Ariz. Rev. Stat. Ann. § 44-1522(A).  It does not prohibit "unfair methods of competition, and it does not prohibit unfair acts and practices in addition to deceptive acts and practices." *In re New Motor Vehicles*, 350 F. Supp. 2d at 178.  To assert a claim under the ACFA, a plaintiff must show "a false promise or misrepresentation made in connection with the sale . . .  of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC*

15

*of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983).  In other words, "deception is required."  *In re New Motor Vehicles*, 350 F. Supp. 2d at 178.

COLORADO:  The Colorado Consumer Protection Act ("CCPA") provides a comprehensive list of forty acts that it prohibits as "deceptive trade practices," none of which are alleged in Plaintiffs' Complaint, and all of which involve an element of fraud or deception.  *See* Colo. Rev. Stat. § 6-1-105; *In re New Motor Vehicles*, 350 F. Supp. 2d at 180 (dismissing CCPA claim given plaintiff's failure "to allege fraudulent or deceptive conduct by the defendants, and certainly none that is material, *i.e.*, a deception that caused the plaintiffs' injury (overpayment)").

DELAWARE:  The Delaware Consumer Fraud Act ("DCFA") prohibits the use of "deception" or "fraud" in connection with merchandise sales.  Del. Code Ann. tit. 6, § 2513(a).  To state a claim under the DCFA, a plaintiff must allege either deception or omission of a material fact.  *See In re New Motor Vehicles*, 350 F. Supp. 2d at 181 (dismissing DCFA claim given absence of such allegations); *see also Wal-mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 631 (Del. Ch. 2005) ("In most respects, the Consumer Fraud Act must be interpreted in light of established common law definitions and concepts of fraud and deceit.").

IDAHO:  The Idaho Consumer Protection Act ("ICPA") includes a clearly defined and, indeed, exhaustive list of the activities it proscribes as "unfair methods of competition and unfair or deceptive acts or practices," each of which involves the knowing employment of fraud or deceit.  *See* Idaho Code Ann. § 48-603; *State v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 433-34 (Idaho 2005) ("There is nothing in the wording of Idaho Code § 48-603 indicating that the list of conduct is merely illustrative.").

16

Entering into an allegedly anticompetitive agreement is simply not encompassed within the statute's list of proscribed conduct. *See Daicel Chem.*, 106 P.3d at 435 (affirming denial of leave to amend to add a claim under the ICPA based upon allegations of price-fixing that did not include allegations of fraud or deceit).

**ILLINOIS:**  Although the Illinois Consumer Fraud Act ("ICFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices," 815 Ill. Comp. Stat. § 505/2, "the language of the Act shows that its reach was to be limited to conduct that defrauds or deceives consumers or others." *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (Ill. 1990).  As such, "classic antitrust allegations dressed in Consumer Fraud Act clothing . . . must be brought under the Antitrust Act and not the Consumer Fraud Act." *Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. Ct. 1996).

**INDIANA:**  The Indiana Deceptive Consumer Sales Act only prohibits "deceptive acts" that fall within a list of 18 proscribed activities, each of which involves fraud or deception.  Ind. Code § 24-5-0.5-3 ("[t]he following acts or representations … are deceptive acts"); *see also Lehman v. Shroyer*, 721 N.E.2d 365, 369 (Ind. Ct. App. 1999) ("to be considered a deceptive act under the Deceptive Consumer Sales Act, an action must fall within the purview of I.C. 24-5-0.5-3").  The statute does not reach allegedly anticompetitive conduct, as it "was enacted to prevent those who regularly engage in consumer sales from making false or misleading statements about their goods or services." *Id.*

**KANSAS:**  The Kansas Consumer Protection Act ("KCPA") prohibits "deceptive" or "unconscionable" acts or practices "in connection with a consumer

transaction." Kan. Stat. Ann. §§ 50-626, 50-627.  While the "deceptive" acts delineated

in the statute are illustrative, all 18 involve fraud, deception, misrepresentation, or

concealment.  *Id.* § 50-626.  Thus, absent "deceptive or oppressive practices[,]

overreaching, intentional misstatements, or concealment of facts, there is no claim under

the KCPA."  *Gonzales v. Assoc. Fin. Serv. Co. of Kan., Inc.*, 967 P.2d 312, 328 (Kan.

1998) (internal citations and quotations omitted).  Similarly, while the 6

"unconscionable" acts listed in the statute are illustrative, Kan. Stat. Ann. § 50-627,

"there must be some element of deceptive bargaining conduct present as well as unequal

bargaining power to render the [act] unconscionable."  *State v. DVM Enter., Inc.*, 62 P.3d

653, 657 (Kan. 2003) (quoting *Wille v. Southwestern Bell Tel. Co.*, 549 P.2d 903 (Kan.

1976)).

      **MARYLAND:** The Maryland Consumer Protection Act ("MCPA") forbids

any "unfair or deceptive trade practice" in connection with the sale of consumer goods,

Md. Com. Law Code § 13-303, and provides an illustrative list of prohibited acts, each of

which involves deception.  *Id.* § 13-301.  "Antitrust violations . . . are not listed in

MCPA's list of prohibited activities" and do not provide a basis for relief.  *Davidson v.*

*Microsoft Corp.*, 792 A.2d 336, 345 (Md. Ct. Spec. App. 2002) (affirming dismissal of

licensee's MCPA claim, which sounded in antitrust, because "Maryland has separate

statutory schemes addressing antitrust and unfair or deceptive trade practices, and

[licensee's] complaint contain[ed] no allegations that fit within the MCPA framework");

*see also In re New Motor Vehicles*, 350 F. Supp. 2d at 188 (dismissing MCPA claim not

only because plaintiff failed to allege fraud and deception, but also given that plaintiff's

alleged conspiracy constituted a "potential violation of the Maryland Antitrust Act . . . a statute separate from the MCPA").

MICHIGAN:  The Michigan Consumer Protection Act "forbids only itemized '[u]nfair, unconscionable, or deceptive methods, acts, or practices.'"  *In re New Motor Vehicles*, 350 F. Supp. 2d at 167, 189 (quoting Mich. Comp. Laws § 445.903(1)). The itemized list contains 36 prohibited acts, most of which involve fraud and deception, Mich. Comp. Laws § 445.903(1), and the rest of which are not at issue here.  *See, e.g.*, *id.* § 445.903(1)(x) (prohibiting one from taking advantage of a consumer's inability reasonably to protect his or her interests); *id.* § 445.903(1)(hh) (requiring a consumer to disclose his or her social security number as a condition of a transaction absent certain circumstances).

MINNESOTA:  The Minnesota Prevention of Consumer Fraud Act proscribes the use of "fraud" as well as "deceptive practice[s]."  Minn. Stat. § 325F.69(1).  Thus, "[t]o sustain a claim for consumer fraud, a plaintiff must demonstrate that the defendant made a false promise or misrepresentation with the intent that others rely thereon . . . ."  *Alsides v. Brown Ins. Ltd.,* 592 N.W.2d 468, 474 (Minn. Ct. App. 1999); *see also In re New Motor Vehicles*, 350 F. Supp. 2d at 190 (dismissing claim given failure to allege facts supporting fraud, deception, or material omission).

NEVADA:  The Nevada Consumer Protection Act prohibits 53 explicitly enumerated "deceptive trade practice[s]."  Nev. Rev. Stat. §§ 598.0915-0918, 092, 0923, 0925.  None of the 53 enumerated practices involves the type of conduct alleged here. *See id.*

19

NEW JERSEY: "[A]llegations must involve 'inherently misleading or fraudulent conduct' to state a claim under the [New Jersey Consumer Fraud Act]." *In re New Motor Vehicles*, 350 F. Supp. 2d at 194 n.55 (citing *Kieffer v. Mylan Labs., Inc.*, 1999-2 Trade Cas. (CCH) ¶ 72,673 (N.J. Super. Ct. Law Sept. 9, 1999)); *see also Island Mortgs.*, 860 A.2d at 1018 (explaining that "the heart of an unconscionable commercial practice is the 'capacity to mislead'" and dismissing claims brought under the New Jersey Consumer Fraud Act that sounded in antitrust). Allegedly anticompetitive conduct is simply not encompassed within the Act, *see In re New Motor Vehicles*, 350 F. Supp. 2d at 194 n.55 (citing *Kieffer*, 1999-2 Trade Cas. (CCH) ¶ 72,673), the purpose of which was to "prevent deception, fraud, or falsity." *Island Mortgs.*, 860 A.2d at 1015 (quoting *Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 15 (N.J. 1977)).

NEW YORK: New York General Business Law § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in this state." To state a claim under the Act, a plaintiff must allege "that defendant is engaging in an act or practice that is deceptive or misleading in a material way . . . ." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995); *see also Varela v. Investors Ins. Holding Corp.*, 615 N.E.2d 218, 219 (N.Y. 1993) (dismissing claim because defendants' alleged actions, even if improper, "did not mislead plaintiffs in any material way and did not constitute 'deceptive acts' within the meaning of the [consumer protection laws]"). "An antitrust violation may violate section 349, but only if it is deceptive." *In re New Motor Vehicles*, 350 F. Supp. 2d at 197 (citing *Oswego*, 647 N.E.2d at 744) (dismissing New York consumer protection act claim).

20

NORTH DAKOTA: North Dakota's consumer protection statute declares unlawful "any deceptive act or practice, fraud, . . . or misrepresentation . . . in connection with the sale . . . of any merchandise." N.D. Cent. Code § 51-15-02. The statute does not prohibit unfair acts or unfair competition generally, "but instead is limited to a proscription on deception, fraud and misrepresentation." *In re New Motor Vehicles*, 350 F. Supp. 2d at 198. Thus, "a plaintiff must allege fraudulent or deceptive conduct to maintain a North Dakota consumer protection claim." *Id.* (dismissing claim given failure to allege fraud or deception).

OHIO: The Ohio Consumer Sales Practices Act ("CSPA") forbids a supplier from engaging in an unfair or deceptive act or practice, Ohio Rev. Code Ann. § 1345.02(A), or an unconscionable act or practice, *id.* § 1345.03(A), in connection with a consumer transaction. "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 800 (Ohio 2005). Allegedly anticompetitive conduct does not fall within either of these practices, and thus, does not state a claim for relief under the Act. *See id.* at 801 ("[T]he [Antitrust] Act, not the CSPA, provides the exclusive remedy for engaging in [anticompetitive] conduct.").

PENNSYLVANIA: While the Pennsylvania Unfair Trade Practices and Consumer Protection Law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices," Pa. Stat. Ann. tit. 73, § 201-3, it "bans only the enumerated activities." *In re Smith*, 866 F.2d 576, 583 (3d Cir. 1989) (explaining that the statute

21

"protects consumers of goods and services from unfair or deceptive trade practices or acts" and was enacted to "place on more equal terms seller and consumer") (internal citations omitted). Each of the 21 prohibited acts involves an element of fraud or deception. *See id.* § 201-2(4).

SOUTH DAKOTA: The South Dakota consumer protection statute prohibits only knowing and intentional "deceptive act[s] or practice[s]" in connection with the sale of merchandise. S.D. Codified Laws § 37-24-6. The statute lists 12 examples of prohibited practices, all of which involve fraud or deception. *See id.* Thus, to state a claim, a plaintiff must allege "an intentional misrepresentation or concealment of fact on which plaintiffs relied and which caused an injury to them." *Brookings Mun. Util., Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169, 1177-78 (D.S.D. 2000).

TENNESSEE: The Tennessee Consumer Protection Act ("TCPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). "The TCPA lists some thirty-three specific acts that constitute unfair or deceptive acts or practices . . . all of which involve some form of misrepresentation about goods or services." *Sherwood v. Microsoft Corp.*, 2003 WL 21780975, at *32 n.39 (Tenn. Ct. App. July 31, 2003) (internal citations omitted). Neither unfair competition nor anticompetitive acts are prohibited by the TCPA. *See id.* at *31. Indeed, claims based upon anticompetitive conduct are not cognizable under the TCPA. *See id.* at *34 (dismissing plaintiffs' TCPA claim as "classic antitrust allegations dressed in" TCPA clothing).

TEXAS: The Texas Deceptive Trade Practices-Consumer Protection Act declares unlawful "[f]alse, misleading, or deceptive acts or practices" in addition to an

"unconscionable action or course of action."  Tex. Bus. & Com. Code §§ 17.46,

17.50(a)(3).  The Act provides an exhaustive list of the 27 acts it prohibits as "false,

misleading, or deceptive," all of which involve an element of fraud or deceit.  *Id.* §§

17.46(b), 17.50(a)(1).  "[U]nconscionable action" is defined under the statute as "an act

or practice which, to a consumer's detriment, takes advantage of the lack of knowledge,

ability, experience, or capacity of the consumer to a grossly unfair degree."  *Id.* §

17.45(5).  Indeed, "[t]o prove an unconscionable action or course of action, a plaintiff

must show that the defendant took advantage of his lack of knowledge and that the

resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated."

*Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (internal quotations omitted).

   **UTAH:**  The Utah Consumer Sales Practices Act prohibits "deceptive act[s]

or practice[s]" as well as "unconscionable act[s] or practice[s]."  Utah Code Ann. §§ 13-

11-4, 13-11-5; *see Wade v. Jobe*, 818 P.2d 1006, 1015 (Utah 1991), *rev'd on other*

*grounds*, *Carlie v. Morgan*, 922 P.2d 1 (Utah 1996) (explaining that the Act does not

"broadly prohibit[] all unfair methods of competition and unfair or deceptive acts or

practices").  The Act provides a list of 26 practices that may be deemed "deceptive" if

committed knowingly or intentionally, all of which involve an element of fraud or

deception, and none of which apply here.  *See* Utah Code Ann. §§ 13-11-4.  Further,

while the Act does not explicitly codify what constitutes an "unconscionable act or

practice," the Utah Supreme Court has explained an unconscionable transaction as one

where "no decent, fair-minded person would view the results without being possessed of

a profound sense of injustice," or where "a disparity [is] so great as to shock the

conscience." *Woodhaven Apartments v. Washington*, 942 P.2d 918, 925 (Utah 1997) (internal citations omitted).

VIRGINIA:  The Virginia Consumer Protection Act ("VCPA") only prohibits specifically enumerated "fraudulent acts or practices committed by a supplier in connection with a consumer transaction."  Va. Code Ann. § 59.1-200.  "[T]he plain language of the statute requires fraud or misrepresentation, and Virginia courts have so interpreted it."  *In re New Motor Vehicles*, 350 F. Supp. 2d at 206-07 (dismissing VCPA claim).  As a result, an antitrust claim that does not include fraud and deceit cannot state a claim for relief under the VCPA.  *See id.*

In sum, Plaintiffs attempt to shoehorn their antitrust claim into violations of 51 consumer protection laws, but their attempt overwhelmingly fails.  For this reason, Plaintiffs' antitrust claim simply does not state a claim under the consumer protection statutes of 22 states.

2.    **Plaintiffs Fail To Plead Other Essential Elements Necessary To Sustain Claims Under The Antitrust And Consumer Protection Laws Of Twenty-Three States**

In addition to the bases for dismissal noted in Section B.1, Plaintiffs make no attempt to plead – let alone meet – the most basic requirements of many of the consumer protection and antitrust statutes under which they seek relief in Counts II and IV.[8]  Plaintiffs wholly disregard their obligation to confirm that their claims have any basis under many antitrust and consumer protection statutes upon which they rely.

---

[8]    Indeed, Plaintiffs do not even properly cite the consumer protection statutes of at least ten states.  For example, Plaintiffs cite Minnesota's False Statement in Advertising Act, Minn. Stat. § 325F.67, as opposed to the Minnesota Consumer Protection Act, Minn. Stat. § 325F.68.  As Plaintiffs purportedly bring claims under "all states' consumer protection acts," FAC Count IV, however, Defendants assume they rely on these statutes.

24

On the face of the Complaint, Plaintiffs cannot constitute "consumers," cannot meet statutory notice requirements, and cannot plead conduct either affecting intrastate commerce or that had a substantial nexus to a particular state.  Indeed, Plaintiffs go so far as to assert a claim under the Iowa Consumer Protection Act, a statute that does not allow for a private right of action.  Any one of these bases alone is sufficient to justify dismissal of a claim, but Plaintiffs often fail to plead multiple essential elements under a single statute.  The deficiencies in Plaintiffs' Complaint are not only numerous but undeniable.  Thus, for the reasons outlined below, Plaintiffs fail to state a claim under 20 consumer protection and 3 antitrust statutes[9] alleged in Counts II and IV of the Complaint.  Accordingly, those claims must be dismissed.

### a.    Plaintiffs Do Not Purchase Goods for Personal, Family Or Household Use And Therefore Cannot State A Claim Under The Consumer Protection Laws Of Thirteen States

As detailed below, the consumer protection statutes of 13 states only allow individual consumers who purchase the goods in question for "personal, family, or household purposes" to recover under their consumer protection laws.

ALABAMA:  A defendant is only liable for damages sustained by "consumers," defined as "[a]ny natural person who buys goods . . . for personal family or household use."  Ala. Code §§ 8-19-10(a), 8-19-3; *see also EBSCO Indus., Inc. v. LMN Enters., Inc.*, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000) (dismissing claim because plaintiff was a corporation, not a natural person).

---

[9]    In particular, Plaintiffs fail to state a claim under the consumer protection statutes of the following states:  Alabama, Delaware, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Mississippi, Missouri, Montana, New Hampshire, Ohio, Pennsylvania, Rhode Island, Texas, Utah, Vermont, West Virginia, and Wyoming.  Plaintiffs also fail to state a claim under the antitrust statutes of Massachusetts, Wisconsin, and the District of Columbia.

KANSAS:  A private remedy exists only for an aggrieved "consumer," defined to include "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes."  Kan. Stat. §§ 50-624(b), 50-634; *see also Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1060 (5th Cir. 1982) ("[Plaintiff] is a corporation, not an 'individual,' and thus does not qualify as a 'consumer' under the Act.").

KENTUCKY:  Only a person "who purchases . . . goods . . . primarily for personal, family or household purposes . . . may bring an action . . . to recover actual damages."  Ky. Rev. Stat. Ann. § 367.220(1); *see also Hunt Enters., Inc. v. John Deere Indus. Equip. Co*., 18 F. Supp. 2d 697, 702 (W.D. Ky. 1997) (dismissing dealer's claim because goods were not for personal, family, or household purposes).

MAINE:  A damages claim may be asserted only by a "person who purchases . . . goods . . . primarily for personal, family or household purposes."  Me. Rev. Stat. tit. 5, § 213; *see also C-B Kenworth, Inc. v. Gen. Motors Corp.*, 706 F. Supp. 952, 957 (D. Me. 1988) (dismissing UTPA claim brought by automobile franchisee against automobile manufacturer because the "act creates a private right of action only for those who have purchased goods, services or property 'primarily for personal, family or household purposes'").

MISSISSIPPI:  Only a "person who purchases . . . goods . . . primarily for personal, family or household purposes" may bring an action.  Miss. Code Ann. § 75-24-15(1).

**MISSOURI:**  Private civil actions may be brought only by "persons who purchase[] . . . merchandise primarily for personal, family or household purposes."  Mo. Rev. Stat. § 407.025.

**MONTANA:**  Only "a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes" may seek damages.  Mont. Code Ann. §§ 30-14-133(1), 30-14-102.

**OHIO:**  Damages may be sought only by a "consumer" – "a person who engages in a consumer transaction with a supplier" – namely, "a transfer of an item of goods . . . to an individual for purposes that are primarily personal, family, or household." Ohio Rev. Stat. §§ 1345.01(A) (D), 1345.09; *see also Yo-Can, Inc. v. The Yogurt Exch., Inc.*, 778 N.E.2d 80, 84 (Ohio App. 7 Dist. 2002) (explaining that the good sold or transferred must "be for purposes that are primarily personal, family, or household").

**PENNSYLVANIA:**  Only a "person who purchases . . . goods . . . primarily for personal, family or household purposes" may bring a private right of action to recover damages.  73 Pa. Stat. Ann. § 201-9.2; *see also Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002) ("Pennsylvania courts have distinguished purchases made for business reasons, which are not actionable, from those made for 'personal, family or household use.'").

**RHODE ISLAND:**  A private right of action exists only for a "person who purchases . . . goods . . . primarily for personal, family or household purposes."  R.I. Gen. Laws § 6-13.1-5.2; *see also ERI Max Entert., Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997) (corporation "plainly d[id] not have standing to bring a private action" under the Act).

27

VERMONT:  Only a "consumer," defined as "any person who purchases . . . goods . . . not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household . . . [or] for the use or benefit of his or her business" who sustains damages may bring suit.  Vt. Stat. Ann. tit. 9, §§ 2461(b), 2451a(a); *see also Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 276 (D. Vt. 2003) ("The VCFA . . . countenances a lawsuit brought by a corporation that purchased goods or services for the use or benefit of the business or in connection with the operation of the business, as long as the goods or services were not purchased for resale in the ordinary course of the business.").

WEST VIRGINIA:  Only "[a]ctions by consumers," who are defined as "natural person[s] to whom a sale . . . is made . . . for personal, family, household or agricultural purpose," are permitted.  W. Va. Code §§ 46A-6-102(2), 46A-6-106.

WYOMING:  Actions for damages may be brought only by a person who "has actually suffered as a consumer."  Wyo. Stat. §§ 40-12-102(a)(ii) (defining "consumer transactions" to include sales "to an individual for purposes that are primarily personal, family or household"), 40-12-108(a).

These limitations are not surprising, for many states' consumer protection acts are designed specifically to protect *consumers*.  *See, e.g.*, *State v. Bear, Stearns & Co., Inc.*, 618 S.E.2d 582, 587 (W. Va. 2005) (recognizing that the West Virginia Consumer Credit and Protection Act "is essentially designed to protect consumers in the relatively common cash and credit transactions in which they engage on a regular basis"); Kan. Stat. § 50-623 (declaring as one of the purposes of the act "[t]o protect consumers from suppliers who commit deceptive and unconscionable practices").

Plaintiffs are not consumers and are not the types of entities that can seek recovery under these state consumer protection statutes. Plaintiff Vista is an insurance company and Plaintiff United Food is a trust fund; neither alleges that they purchase Ovcon, let alone that they purchase Ovcon for personal, family, or household use. *See* FAC ¶ 11. Plaintiffs' claims do not fulfill the statutory requirements in these 13 states and, therefore, must be dismissed.

> **b.** **Plaintiffs Do Not Meet Statutory Notice Requirements And Therefore Cannot State A Claim Under The Consumer Protection Laws Of Six States**

The consumer protection acts of the 6 states set forth below require Plaintiffs to provide advanced, written notice of their claims prior to filing a complaint.

**INDIANA:** "[T]he consumer bringing the action [must] have given notice in writing to the supplier within the sooner of (i) six (6) months after the initial discovery of the deceptive act, [or] (ii) one (1) year following [a] consumer transaction, . . . which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom." Ind. Code § 24-5-0.5-5(a).[10]

**MASSACHUSETTS:** "At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." Mass. Gen. Laws ch. 93A, § 9(3).

**MISSISSIPPI:** "In any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an

---

[10]     Indiana's notification requirement, Ind. Code § 24-5-0.5-5(b), is included as a portion of its "Limitations" sections, and sets forth timing requirements that are similar in nature to statute of limitations requirements. The agreement was executed on March 24, 2004 and Plaintiffs filed their Complaint more than a year and a half later, on December 5, 2005. Plaintiffs, then, did not file their claim within the one-year limitation imposed by Indiana law, and Plaintiffs' consumer protection claim should be dismissed on that basis as well.

29

informal dispute settlement program approved by the Attorney General."  Miss. Code Ann. § 75-24-15.

TEXAS:  "As a prerequisite to filing a suit seeking damages . . . a consumer shall give written notice to that person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages . . . reasonably incurred . . . ."  Tex. Bus. & Com. Code § 17.505.

WEST VIRGINIA:  "[N]o action may be brought . . . until the consumer has informed the seller . . . in writing and by certified mail of the alleged violation and provided the seller . . . twenty days from receipt of the notice of violation to make a cure offer."  W. Va. Code § 46A-6-106(b).

WYOMING:  Consumers must give "notice in writing to the alleged violator of the act, (a) within one (1) year after the initial discovery of the unlawful deceptive trade practice, [or] (b) within two (2) years following such consumer transaction, whichever occurs first . . . stat[ing] fully the nature of the alleged unlawful deceptive trade practice and the actual damage suffered therefrom."  Wyo. Stat. Ann. § 40-12-109.

Notice requirements are enacted "to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished."  *Lehman*, 721 N.E.2d at 368 (quoting *McCormick Piano & Oregon Co. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980)).  Essentially, these requirements provide defendants with "a reasonable opportunity to remedy the consequences of an alleged deceptive act about which the consumer complains."  *Id.* at 369.  To ensure that this

purpose is fulfilled, "a literal application of the notice provisions" is required.  *Id.* (citing *McCormick Piano*, 412 N.E.2d at 849).

In the instant case, Plaintiffs do not – and cannot – allege that they served Defendants with any advance notice or demand for relief prior to filing their original complaint on December 5, 2005.  As a result, Defendants were given no opportunity to cure any damages Plaintiffs allegedly sustained.  This failure to serve proper notice entitles Defendants to dismissal of Plaintiffs' claims under the consumer protection laws of Indiana, Massachusetts, Mississippi, Texas, West Virginia, and Wyoming.  *See City of Boston v. Aetna Life Ins. Co.,* 506 N.E.2d 106, 109 (1987) (dismissing consumer protection claim for lack of standing because "[t]he failure of the City to allege the sending of a demand letter [was] fatal to its [claim]"); *McMahon v. Digital Equip. Corp.*, 944 F. Supp. 70, 77 (D. Mass. 1996) (dismissing consumer protection claim because "[t]he plaintiff ha[d] not alleged that she sent a 30-day demand letter to [the defendant], a prerequisite to bring a suit under [the act]"); *Lehman*, 721 N.E.2d at 368-69 (affirming judgment for defendant where plaintiff failed to provide proper notice under the Deceptive Consumer Sales Act before filing its claim).

      **c.**      **Plaintiffs Allege A Substantial Effect On Interstate Commerce And Therefore Cannot State A Claim Under The Antitrust Laws Of Two States And The District Of Columbia And The Consumer Protection Laws Of Three States**

In their Complaint, Plaintiffs allege that Defendants' purported conduct had a substantial effect on interstate commerce.  *See* FAC ¶ 19.  This allegation alone justifies the dismissal of the claims brought under the antitrust and consumer protection statutes of 5 states and the District of Columbia.  The antitrust laws of the District of Columbia and Massachusetts and the consumer protection laws of Utah only allow claims that occur in *intra*state commerce.  Similarly, the antitrust law of Wisconsin and the consumer protection laws of Delaware and New

31

Hampshire reach only that conduct having a sufficient nexus with their respective states. Because Plaintiffs fail to meet the basic pleading requirements of these state statutes, their claims under these laws must be dismissed.

> **i.    Plaintiffs Do Not Meet The Intrastate Commerce Requirements Of The Antitrust Laws Of The District of Columbia And Massachusetts And The Consumer Protection Law Of Utah**

The antitrust laws of the District of Columbia and Massachusetts and the consumer protection law of Utah reach only those violations that occur solely or predominantly in *intra*state commerce. Plaintiffs make no attempt to meet this threshold requirement. Plaintiffs do not allege that any purported "violations" of the state antitrust laws were limited to commerce in any particular state or geographical region. To the contrary, Plaintiffs allege that "Ovcon was sold throughout the United States[,] Ovcon was manufactured and sold in a continuous and uninterrupted flow of commerce across state and national lines[, and] Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect on interstate commerce." FAC ¶ 19. Plaintiffs' allegation that Defendants' conduct had a *substantial* effect on *inter*state commerce alone requires the dismissal of their claims under the antitrust laws of the District of Columbia and Massachusetts and the consumer protection law of Utah.

DISTRICT OF COLUMBIA: The District of Columbia's antitrust laws only apply to violations occurring *solely* in intrastate commerce. *See Sun Dun Inc. v. Coca Cola Co.*, 770 F. Supp. 285, 288 (D. Md. 1991) (dismissing claim because plaintiff failed to show that its purchases did not involve an intrastate aspect). Indeed, as the court explained in *Sun Dun*, "the only claims . . . to which the D.C. [Antitrust Act] might possibly apply are those for direct and indirect purchases within the District of Columbia

which do not involve an interstate link, and which thus do not fall within the scope of federal antitrust law." 740 F. Supp. 381, 397 (D. Md. 1990).

MASSACHUSETTS: Similarly, Massachusetts' antitrust laws reach only conduct that has its primary and predominant impact in Massachusetts; conduct that includes a significant interstate aspect cannot serve as the basis of a claim. *See* Mass. Gen. Laws, ch. 93, § 3 ("[n]othing in the Massachusetts Antitrust Act . . . shall apply to any course of conduct, pattern of activity, or activities unless they occur and have their competitive impact primarily and predominantly within the commonwealth and at most, only incidentally outside New England").

UTAH: The Utah Unfair Trade Practices Act ("UTPA") applies only to violations occurring in intrastate commerce. *See* Utah Code Ann. § 13-5-5 ("Definition of 'commerce' as used in this bill shall be construed to mean intrastate commerce in the state of Utah."); *Utah Foam Prods. Co. v. Upjohn Co*., 154 F.3d 1212, 1217 (10th Cir. 1998) (affirming dismissal of UTPA claim where it was "not clear that the commerce affected here was intrastate commerce" as "[u]nder Utah law, the term 'commerce' means 'intrastate commerce in the state of Utah'"); *Mylan*, 62 F. Supp. 2d at 52 (explaining that the UTPA "applies only to intrastate commerce"). Significantly, "the violation, not just the end location of the product at issue, must have occurred intrastate for the statute to apply." *Mylan*, 62 F. Supp. 2d at 52 (dismissing UTPA claim brought against generic drug manufacturers that was based upon allegation that illegal agreements allowed for excessive pricing of drugs sold throughout the United States because "[a]lthough the drugs eventually came to rest in Utah, no alleged violation occurred in intrastate commerce").

33

**ii.    Plaintiffs Do Not Allege A Sufficient Nexus To State A Claim Under The Antitrust Law Of Wisconsin And The Consumer Protection Laws Of Delaware And New Hampshire**

The antitrust law of Wisconsin and the consumer protection laws of Delaware and New Hampshire reach only conduct that has a substantial impact within their respective states. Yet Plaintiffs offer no facts from which the Court could infer any connection between Defendants' conduct and Wisconsin, Delaware, or New Hampshire. Instead, Plaintiffs rest on their bald assertion that "Ovcon was sold throughout the United States." FAC ¶ 18. This lone allegation does not entitle Plaintiffs to relief under these statutes.

WISCONSIN: Wisconsin limits the scope of its antitrust laws to encompass only those activities that have a direct or substantial connection with the state. *See Olstad v. Microsoft Corp.*, 700 N.W. 2d 139, 158 (Wisc. 2005). While the Wisconsin Antitrust Act may reach interstate commerce in some circumstances, a plaintiff must allege one of two things to state a claim: "(1) [that] actionable conduct, such as the formation of a combination or conspiracy, occurred within this state, even if its effects are felt primarily outside Wisconsin; or (2) [that] the conduct complained of 'substantially affects' the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state." *Id.*

DELAWARE: The purpose of the Delaware Consumer Fraud Act is "to protect consumers . . . from unfair or deceptive merchandising practices in the conduct of any trade or commerce *in part or wholly within this State*." Del. Code Ann. tit. 6, § 2512 (emphasis added). As a result, "relief can only be granted under the Consumer Fraud Act for unlawful practices occurring or performed partly or wholly within Delaware." *Wal-mart Stores, Inc.*, 872 A.2d at 631 (granting motion to dismiss Wal-Mart's Consumer Fraud Act claim because it "[did] not allege any facts which, if true, could constitute

34

unfair or deceptive conduct occurring within Delaware"); *see also In re New Motor Vehicles*, 350 F. Supp. 2d at 182 n.33 ("[T]he offending conduct itself (not merely the trade or commerce) must occur in Delaware.").

NEW HAMPSHIRE: The New Hampshire Consumer Protection Act ("NHCPA") makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce *within this state*." N.H. Rev. Stat. Ann. § 358-A:2 (emphasis added). Thus, the NHCPA applies only to offending conduct that occurs within the state. *See Pacamor Bearings, Inc. v. Minebea Co*., 918 F. Supp. 491, 504 (D.N.H. 1996); *Mueller Co. v. U.S. Pipe & Foundry Co*., 2003 WL 22272135, at *6 (D.N.H. Oct. 2, 2003) (explaining that "commercial conduct which affects the people of New Hampshire is actionable under [the NHCPA] only if it occurs within New Hampshire"). Sales within the state are insufficient to state a claim. *See Pacamor Bearings*, 918 F. Supp. at 504 ("It is the 'offending conduct' that must occur within the state – the 'unfair method of competition or any unfair or deceptive act or practice' in trade or commerce – *not the actual sale*.") (emphasis added); *Mueller*, 2003 WL 22272135, at *6 (granting motion to dismiss NHCPA claim given plaintiff's failure to allege that any conduct proscribed by the statute took place within the state).

### d.    Plaintiffs Are Private Parties And Therefore Cannot State A Claim Under the Consumer Protection Act of Iowa

Plaintiffs allege that "Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.1[6], *et seq.*" FAC ¶ 76 (p). However, Iowa's consumer protection laws do not allow for a private remedy. *See Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 228 (Iowa 1998) (affirming dismissal of claim brought under the Iowa consumer fraud act because that statute did not create a private

35

cause of action); *accord Grinnell Mut. Reinsur. Co. v. Jungling*, 654 N.W.2d 530, 537 (Iowa

2002) (the consumer protection act "does not expressly create a private cause of action"). Iowa's

legislature did not create a private cause of action under its consumer fraud act, and did not

intend that one be implied. *See Molo Oil*, 578 N.W.2d at 228 ("It is clear that, when state

legislatures want consumers to enforce their consumer fraud acts, they expressly provide for that

remedy in the statute. Iowa has not done that."). As private parties, Plaintiffs cannot maintain a

claim for alleged violations of Iowa's consumer fraud laws. Accordingly, their Iowa consumer

fraud claim must be dismissed.

### C.    PLAINTIFFS CANNOT CIRCUMVENT ILLINOIS BRICK'S STANDING LIMITS BY ALLEGING A GENERALIZED UNJUST ENRICHMENT CLAIM

Finally, Plaintiffs assert a damages claim in Count III based upon a theory of

unjust enrichment. *See* FAC ¶¶ 83-85 (seeking restitution, disgorgement, and a constructive

trust). Apparently, Plaintiffs allege this claim in an attempt to side-step settled authority

prohibiting indirect purchasers from seeking monetary relief under the federal antitrust laws.

This claim, however, must be dismissed in its entirety.[11]

Federal antitrust laws do not provide a restitution or disgorgement remedy to

indirect purchasers. *See Mylan*, 62 F. Supp. 2d at 41-42 (dismissing plaintiffs' complaint insofar

as it sought disgorgement and/or restitution under the Clayton Act); *see also In re New Motor*

*Vehicles*, 250 F. Supp. 2d at 211 ("Certainly no restitutionary remedy can escape the limitations

the United States Supreme Court imposed on federal antitrust recovery in *Illinois Brick*."). The

concerns articulated in *Illinois Brick* regarding duplicative recovery and multiple liability apply

---

[11]    In addition, Count I of Plaintiffs' Complaint asserts a claim for "equitable and injunctive relief" under Section 16 of the Clayton Act. FAC ¶ 78. Although Defendants' Motion to Dismiss Plaintiffs' equitable claims refers principally to the unjust enrichment claim in Count III, it applies with equal force to Count I to the extent it calls for any form of equitable relief that is monetary in nature.

equally to claims brought on behalf of indirect purchasers for restitution or disgorgement.  *See Mylan*, 62 F. Supp. 2d at 41.  As a result, Plaintiffs cannot maintain claims for restitution and disgorgement under federal statutory law.  *See id.* at 42 (dismissing claims for restitution and disgorgement as plaintiffs "should not be allowed to circumvent *Illinois Brick* through a novel interpretation of § 16").

Plaintiffs' restitution and disgorgement claims fare no better under federal common law.  *See In re New Motor Vehicles*, 350 F. Supp. 2d at 211 n.90.  First, and quite simply, there is no claim for unjust enrichment that arises under federal common law in these circumstances.  *See id.* (recognizing the absence of a federal common law of unjust enrichment).  Second, even if a federal common law claim could exist for unjust enrichment in this case, "*Illinois Brick* would certainly control its contours."  *Id.*

No matter how Plaintiffs label their unjust enrichment claim they seek damages plain and simple.  *See Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979) ("A Plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money."); *see also The Daisy Group, Ltd. v. Newport News, Inc.*, 999 F. Supp. 548, 552 (S.D.N.Y. 1998) (cautioning that disgorged profits sought "as restitution for unjust enrichment," are, in fact, "a rough proxy measure of plaintiff's damages").  In this regard, Plaintiffs' unjust enrichment claim – like many of Plaintiffs' claims – seeks an "end run" around the bright-line rule established by the Supreme Court barring indirect purchaser recovery.  *Illinois Brick* leaves no room for such recovery.  Count III must therefore be dismissed in its entirety.

## V.  CONCLUSION

In sum, Defendants move to dismiss for various independent reasons 48 of Plaintiffs' state antitrust and consumer protection claims alleged in Counts II and IV, as well as their unjust enrichment claim alleged in Count III in its entirety.

Count II of Plaintiffs' Complaint alleges violations of the antitrust and/or consumer protection statutes of 23 states and the District of Columbia.  The Count II claims brought under the laws of 15 states and the District of Columbia must be dismissed, in whole or in part, for one or more of the following reasons:  (1) Plaintiffs lack standing under the antitrust and consumer protection laws of states that follow *Illinois Brick*; (2) Plaintiffs fail to allege any conduct that brings them within state consumer protection acts and thus fail to state a claim under those laws; and/or (3) Plaintiffs fail to plead essential elements necessary to sustain claims under the antitrust and consumer protection laws of certain states.  Though discussed in detail in Sections A and B above, the Count II claims for which Defendants seek dismissal are summarized as follows:

| STATE | REQUIRES DISMISSAL OF: | | REASONS | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Antitrust Claim (AT) | Consumer Protection Claim (CP) | Follows *Illinois Brick* Principle | No Fraud/ Deceit | Not for Personal Use | No Notice | Intrastate Commerce | Insufficient Nexus |
| Arizona | | X | | CP | | | | |
| District of Columbia | X | | | | | | AT | |
| Florida | X | | AT | | | | | |
| Kansas | | X | | CP | CP | | | |
| Louisiana | X | X | AT&CP | | | | | |
| Massachusetts | X | X | AT | | | CP | AT | |
| Michigan | | X | | CP | | | | |
| Minnesota | | X | | CP | | | | |
| Nevada | | X | | CP | | | | |
| New Jersey | X | X | AT&CP | CP | | | | |
| New York | | X | | CP | | | | |
| North Dakota | | X | | CP | | | | |
| Tennessee | | X | | CP | | | | |
| Vermont | | X | | | CP | | | |
| West Virginia | | X | | | CP | CP | | |
| Wisconsin | X | | | | | | | AT |

Count III of Plaintiffs' Complaint alleges an unjust enrichment claim. This claim must be dismissed in its entirety as federal law does not provide a restitution or disgorgement remedy to indirect purchasers.

Count IV of Plaintiffs' Complaint alleges violations of the consumer protection statutes of all 50 States and the District of Columbia (13 of which overlap with those claims alleged under Count II). For the same reasons set forth above, the claims brought under the laws of 42 states must be dismissed, in whole or in part. While also discussed in detail in Sections A and B, the Count IV claims for which Defendants seek dismissal are summarized as follows:

| STATE | REQUIRES DISMISSAL FOR FOLLOWING REASONS: | | | | | | |
|---|---|---|---|---|---|---|---|
| | Follows *Illinois Brick* Principle | No Fraud / Deceit | Not for Personal Use | No Notice | Intrastate Commerce | Insufficient Nexus | No Private Cause of Action |
| Alabama | | X | X | | | | |
| Alaska | X | | | | | | |
| Arizona | | X | | | | | |
| Colorado | X | X | | | | | |
| Connecticut | X | | | | | | |
| Delaware | X | X | | | | X | |
| Georgia | X | | | | | | |
| Idaho | X | X | | | | | |
| Illinois | | X | | | | | |
| Indiana | X | X | | X | | | |
| Iowa | | | | | | | X |
| Kansas | | X | X | | | | |
| Kentucky | X | | X | | | | |
| Louisiana | X | | | | | | |
| Maine | | | X | | | | |
| Maryland | X | X | | | | | |
| Massachusetts | | | | X | | | |
| Michigan | | X | | | | | |
| Minnesota | | X | | | | | |
| Mississippi | | | X | X | | | |
| Missouri | X | | X | | | | |
| Montana | X | | X | | | | |
| Nevada | | X | | | | | |
| New Hampshire | X | | | | | X | |
| New Jersey | X | X | | | | | |
| New York | | X | | | | | |
| North Dakota | | X | | | | | |
| Ohio | X | X | X | | | | |
| Oklahoma | X | | | | | | |
| Oregon | X | | | | | | |
| Pennsylvania | | X | X | | | | |
| Rhode Island | X | | X | | | | |
| South Carolina | X | | | | | | |
| South Dakota | | X | | | | | |

| | Follows *Illinois Brick* Principle | No Fraud / Deceit | Not for Personal Use | No Notice | Intrastate Commerce | Insufficient Nexus | No Private Cause of Action |
|---|---|---|---|---|---|---|---|
| Tennessee | | X | | | | | |
| Texas | X | X | | X | | | |
| Utah | X | X | | | X | | |
| Vermont | | | X | | | | |
| Virginia | X | X | | | | | |
| Washington | X | | | | | | |
| West Virginia | | | X | X | | | |
| Wyoming | X | | X | X | | | |

The dismissal of the 48 claims illustrated in these charts show that Plaintiffs cannot maintain *any* claims under the laws of the following 28 states:  Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Montana, New Hampshire, New Jersey, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington, and Wyoming.  Dismissal of the antitrust and consumer protection act claims under the laws of these states is not only appropriate under the language of the individual statutes as well as case law, it is essential to narrowing the necessary discovery in this action.  The 48 claims illustrated in the above charts should thus be dismissed.[12]

For the foregoing reasons, Defendants respectfully request that their motion to dismiss be granted.

---

[12]     For the Court's convenience, a chart summarizing the claims that would remain is attached as Appendix A.  As stated earlier, discovery will likely reveal additional bases to dismiss the remaining claims.

Date:   February 28, 2006                    Respectfully submitted,


  /s/ Kevin J. Arquit                          /s/ Karen N. Walker
Kevin J. Arquit (D.C. Bar # 438511)          Karen N. Walker (D.C. Bar # 412137)
Charles E. Koob (*pro hac vice* pending)     Mark L. Kovner (D.C. Bar #  430431)
                                             Chong S. Park (D.C. Bar # 463050)


SIMPSON THACHER & BARTLETT LLP               KIRKLAND & ELLIS LLP
425 Lexington Avenue                         655 Fifteenth Street, N.W.
New York, New York  10017-3954               Washington, District of Columbia  20005
(212) 455-2000                               (202) 879-5000
(212) 455-2502 (fax)                         (202) 879-5200 (fax)

*Counsel for Warner Chilcott Holdings*        *Counsel for Barr Pharmaceuticals, Inc.*
*Company III, Ltd., Warner Chilcott*
*Corporation, Warner Chilcott (US) Inc., and*
*Warner Chilcott Company, Inc.*

# APPENDIX A

**Civil Action No. 1:05CV02327**

**Claims Remaining**

| STATE | Antitrust Claim | Consumer Protection Claim |
|---|---|---|
| Arizona | X | |
| Arkansas | | X |
| California | X | X |
| District of Columbia | | X |
| Florida | | X |
| Hawaii | | X |
| Iowa | X | |
| Kansas | X | |
| Maine | X | |
| Michigan | X | |
| Minnesota | X | |
| Mississippi | X | |
| Nebraska | X | X |
| Nevada | X | |
| New Mexico | X | X |
| New York | X | |
| North Carolina | X | X |
| North Dakota | X | |
| South Dakota | X | |
| Tennessee | X | |
| Vermont | X | |
| West Virginia | X | |
| Wisconsin | | X |