**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| VISTA HEALTHPLAN, INC. and UNITED FOOD AND COMMERCIAL WORKERS CENTRAL PENNSYLVANIA HEALTH AND WELFARE FUND,<br><br>on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., and BARR PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No. 1:05CV02327<br><br>Judge Colleen Kollar-Kotelly |

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
CLASS ACTION COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Warner Chilcott Company, Inc. (collectively, "Warner Chilcott") and Barr Pharmaceuticals, Inc. ("Barr") (collectively, "Defendants") respectfully submit this memorandum in support of their joint motion to dismiss in part the Second Amended Class Action Complaint filed by Vista Healthplan Inc. and United Food and Commercial Workers Central Pennsylvania Health and Welfare Fund (collectively, "Plaintiffs").

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................3

    A.    The Agreement Between Warner Chilcott And Barr.................................3

    B.    Plaintiffs Vista And United Food ..........................................................4

    C.    Plaintiffs' Complaints .........................................................................5

ARGUMENT .......................................................................................................6

I.    PLAINTIFFS LACK STANDING TO ASSERT THE MAJORITY OF THEIR
CLAIMS ......................................................................................................8

    A.    Plaintiffs Lack Standing To Assert Claims On Behalf Of Residents Of
Other States.......................................................................................8

    B.    Plaintiff United Food Is A Trust Fund And Does Not Have Standing In
This Action.......................................................................................12

II.    COUNT II OF PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM
UNDER THE LAWS OF FOUR STATES AND THE DISTRICT OF
COLUMBIA .............................................................................................13

    A.    Plaintiffs Have No Claim Under The Antitrust Laws Of The District Of
Columbia.........................................................................................13

    B.    Plaintiffs Lack Standing Under The Antitrust Laws Of Louisiana.......................14

    C.    Plaintiffs Cannot State A Claim Under The Consumer Protection Laws Of
Massachusetts. ................................................................................16

        1.    *Illinois Brick* Bars Plaintiffs' Claim Under § 11 Of The
Massachusetts Consumer Protection Laws................................16

        2.    Plaintiffs' Failure To Provide Statutory Notice Mandates Dismissal
Of Their Claim Under § 9 Of The Massachusetts' Consumer
Protection Laws. ....................................................................17

    D.    Plaintiffs Are Not "Consumers" Under The Consumer Protection Laws Of
Vermont. .........................................................................................19

    E.    Plaintiffs Have No Claim Under The Antitrust Laws Of Wisconsin....................19

**Page**

III.    PLAINTIFFS CANNOT CIRCUMVENT *ILLINOIS BRICK'S* STANDING
         LIMITS BY ALLEGING A GENERALIZED UNJUST ENRICHMENT CLAIM.........21

         A.    Plaintiffs Cannot Re-label Their Damages Claim To Avoid *Illinois Brick*. ..........22

         B.    *Illinois Brick* Bars Plaintiffs' Common Law Claims. ..............................................23

         C.    Plaintiffs' Exclusive Remedy Should Lie In The Antitrust Laws. ........................24

CONCLUSION ..................................................................................................................26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Wright*,
    468 U.S. 737 (1984) ................................................................................. 9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................... 11

*American Mgmt. Servs., Inc. v. George S. May Int'l Co.*,
    933 F. Supp. 64 (D. Mass. 1996) ........................................................... 17

*ASA Accugrade, Inc. v. Am. Numismatic Ass'n*,
    370 F. Supp. 2d 213 (D.D.C. 2005) ......................................................... 7

*Bledsoe v. Crowley*,
    849 F.2d 639 (D.C. Cir. 1988) ............................................................... 25

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ............................................................................... 10

*Boos v. Abbott Labs.*,
    925 F. Supp. 49, (D. Mass. 1996) .......................................................... 16

*Bowen v. First Family Fin. Servs., Inc.*,
    233 F.3d 1331 (11th Cir. 2000) ............................................................. 10

*Brady Campaign v. Ashcroft*,
    339 F. Supp. 2d 68 (D.D.C. 2004) ........................................................... 6

*California Ass'n of Physically Handicapped,*
*Inc. v. FCC*,
    778 F.2d 823 (D.D.C. 1985) ..................................................................... 9

*California v. ARC Am. Corp.*,
    490 U.S. 93 (1989) ................................................................................. 15

*Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*,
    295 F. Supp. 2d 430 (D. Del. 2003) ....................................................... 26

*Cephas v. MVM, Inc.*,
    403 F. Supp. 2d 17 (D.D.C. 2005) ........................................................... 7

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
    762 N.E.2d 303 (Mass. 2002) ................................................................ 16

iii

**Page(s)**

*City of Boston v. Aetna Life Ins. Co.*,
    506 N.E.2d 106 (1987)............................................................................ 18

*Commonwealth v. Massachusetts CRINC*,
    466 N.E.2d 792 (Mass. 1984) ............................................................... 16

*Easter v. American West Fin.*,
    381 F.3d 948 (9th Cir. 2004) ............................................................... 10

*Edelman v. Jordan*,
    415 U.S. 651 (1974).............................................................................. 23

*Fascione v. CNA Ins. Cos.*,
    754 N.E.2d 662 (Mass. 2001) ............................................................... 25

*Fink v. DeClassis*,
    745 F. Supp. 509 (N.D. Ill. 1990) ....................................................... 17

*First Nat'l Bank v. Warren*,
    796 F.2d 999 (7th Cir. 1986) ............................................................... 22

*Free v. Abbott Labs., Inc.*,
    176 F.3d 298 (5th Cir. 1999) ................................................... 15, 16, 24

\* *FTC v. Mylan Labs., Inc.*,
    62 F. Supp. 2d 25 (D.D.C. 1999) ................................................ passim

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
    185 F. Supp. 2d 9 (D.D.C. 2001) .......................................................... 6

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) ........................................................... 10

*Hawkins v. Dep't of Welfare*,
    197 S.W. 2d 98 (Ky. 1946) ................................................................. 25

\* *Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977).............................................................. passim

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    289 F.3d 98 (D.C. Cir. 2002) ............................................................... 10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    295 F. Supp. 2d 30 (D.D.C. 2003) ...................................................... 13

*In re Microsoft Corp. Antitrust Litig.*,
    241 F. Supp. 2d 563 (D. Md. 2003) .................................................... 24

iv

**Page(s)**

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004) .................................................... 15, 21, 23

*In re Newbridge Networks Secs. Litig.*,
   926 F. Supp. 1163 (D.D.C. 1996) ................................................................. 21

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004) .................................................................. 11

*In re Rezulin Prods. Liab. Litig.*,
   390 F. Supp. 2d 319 (S.D.N.Y. 2005) .......................................................... 25

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) ............................................. 11, 14, 23

*Jaffee v. United States*,
   592 F.2d 712 (3d Cir. 1979) ........................................................................ 23

*Kansas v. UtiliCorp United, Inc.*,
   497 U.S. 199 (1990) ..................................................................................... 14

*Kloth v. Microsoft Corp.*,
   2006 WL 998087 (4th Cir. Apr. 18, 2006) .................................................. 22

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*,
   781 N.E.2d 787 (Mass. 2003) ...................................................................... 17

*Lewis v. Casey*,
   518 U.S. 343 (1996) ............................................................................... 10, 11

*Lubner v. City of Los Angeles*,
   53 Cal. Rptr. 2d 24 (Cal. Ct. App. 1996) .................................................... 25

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................... 9

*McMahon v. Digital Equip. Corp.*,
   944 F. Supp 70 (D. Mass. 1996) ................................................................. 18

*Monroe Beverage Co. v. Stroh Brewery Co.*,
   559 N.W.2d 297 (Mich. 1997) .................................................................... 25

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ....................................................................................... 9

*Olstad v. Microsoft Corp.*,
   700 N.W. 2d 139 (Wis. 2005) ..................................................................... 19

Page(s)

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) .................................................................................................. 11

*Qualls v. Rumsfeld*,
    412 F. Supp. 2d 40 (D.D.C. 2006) ........................................................................... 21

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002) ................................................................................... 11

*Seafarers Welfare Plan v. Philip Morris*,
    27 F. Supp. 2d 623 (D. Md. 1998) ........................................................................... 12

*Spring v. Geriatric Auth. Of Holyoke*,
    475 N.E.2d 727 (Mass. 1985) ................................................................................... 18

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .................................................................................................... 11

*Steves v. Robie*,
    31 A.2d 797 (Me. 1943) ............................................................................................ 25

*Sun Dun, Inc. v. Coca Cola Co.*,
    770 F. Supp. 285 (D. Md. 1991) .............................................................................. 13

*The Daisy Group, Ltd. v. Newport News, Inc.*,
    999 F. Supp. 548 (S.D.N.Y. 1998) ........................................................................... 23

*Trade 'N Post, L.L.C. v. World Free Duty Ams., Inc.*,
    628 N.W.2d 707 (N.D. 2001) ................................................................................... 25

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) .................................................................................................. 11

*Wilson v. Cont'l Cos.*,
    274 N.W. 2d 679 (Wis. 1979) .................................................................................. 21

*Winney v. Ransom & Hastings, Inc.*,
    542 A.2d 269 (Vt. 1988) ........................................................................................... 25

*Wyman v. Terry Schulte Chevrolet, Inc.*,
    584 N.W. 2d 103 (S.D. 1998) ................................................................................... 25

**Statutes**

D.C. Code Ann. §§ 28-4501, *et seq.* .............................................................................. 14

Fla. Stat. Ann. §§ 501.201, *et seq.* ............................................................................. 3, 7

**Page(s)**

La. Rev. Stat. Ann. §§ 51:137, *et seq.* ........................................................................ 15

Mass. Gen. Laws ch. 93A, § 11 ................................................................................... 16

Mass. Gen. Laws ch. 93A, § 9 ..................................................................................... 18

Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.* ......................................................................... 19

Vt. Stat. Ann. tit. 9, §§ 2461 ....................................................................................... 19

Wis. Stat. § 133.01, *et seq.* ........................................................................................ 21

**Other Authorities**

*Black's Law Dictionary* 1513 (7th ed. 1999) ............................................................. 12

Dobbs, Law of Remedies § 4.1(1) (1993) ................................................................... 22

Restatement (Second) of Conflict of Laws § 221, cmt. d ........................................... 26

*U.S. Const., art. III, § 2* ............................................................................................... 9

# INTRODUCTION

Faced with Defendants' Motion to Dismiss the majority of claims asserted in their First Amended Class Action Complaint, Plaintiffs chose to replead rather than respond to Defendants' motion. In this, their ***Second*** Amended Class Action Complaint, Plaintiffs again allege — on behalf of a proposed class of "Third Party Payors" — that Defendants entered into an anticompetitive agreement regarding an oral contraceptive, Ovcon. Plaintiffs' latest complaint asserts claims for (i) injunctive relief under the Clayton Act (Count I), (ii) compensatory and treble damages under a number of state antitrust and consumer protection laws of so-called "Indirect Purchaser States" (Count II), and (iii) restitution, disgorgement, and constructive trust under an "unjust enrichment" theory (Count III). Plaintiffs seek to recover alleged "overcharges" for "supra-competitive prices" paid for their members' purchases of Ovcon. As before, Plaintiffs lack standing or are otherwise barred from pursuing the majority of their claims.

***First***, Plaintiffs have no constitutional standing to assert claims under the laws of states where no named plaintiff resides. Plaintiffs — residents of Florida and Pennsylvania — purport to bring claims on behalf of citizens not only of plaintiff-Vista's home state (Florida), but also the citizens of twenty-one (21) other states and the District of Columbia. Plaintiffs, however, have no constitutional standing to assert claims under the laws of states where no named plaintiff resides, *i.e.*, each state identified in Count II, except Florida.[1] In the absence of a named representative from each jurisdiction, Plaintiffs' attempt to assert antitrust or consumer protection claims under the laws of the myriad other "Indirect Purchaser States" listed in Count

---

[1]    Plaintiffs do not assert claims under Pennsylvania law, plaintiff-United Food's home state.

II of the complaint must be rejected.  The claims by Plaintiff United Food must also be dismissed because United Food is a trust fund that does not have standing.  United Food only pays for or reimburses its members' costs of Ovcon out of a trust fund, and has not suffered, and as a matter of law cannot suffer, any damages.

*Second*, even if Plaintiffs had standing to assert claims under the laws of states in which they do not reside, Plaintiffs' claims pursuant to the laws of the District of Columbia, Louisiana, Massachusetts, Vermont, and Wisconsin suffer from the same substantive defects as they did in Plaintiffs' prior complaints.  Namely, these claims fail because:

- *District of Columbia***:**  Although Plaintiffs allege a conspiracy affecting interstate commerce, the antitrust law of the District of Columbia only reaches violations that occur *solely* in *intra*state commerce;

- *Louisiana***:**  As third-party payors, Plaintiffs lack standing to sue for damages, *i.e.*,  Louisiana adheres to the direct purchaser rule of *Illinois Brick*;

- *Wisconsin***:**  Plaintiffs have failed to plead an essential element of their claim: that the challenged conduct had a "substantial" connection to, or impact in, Wisconsin;

- *Massachusetts***:**  As third-party payors, Plaintiffs lack standing to sue for damages under § 11 of the consumer protection laws of Massachusetts, *i.e.*, Massachusetts adheres to the direct purchaser rule of *Illinois Brick*.  Additionally, Plaintiffs have not met the threshold notice requirements necessary to state a claim under § 9 of the consumer protection laws of Massachusetts; and

- *Vermont***:**  Plaintiffs are not "consumers" as defined under the consumer protection laws of Vermont and thus lack standing to pursue a claim.

*Finally*, Plaintiffs' generalized equitable claim for "restitution, disgorgement and constructive trust for unjust enrichment" (Count III) is barred by the direct purchaser rule of *Illinois Brick*.  Quite simply, a plaintiff cannot circumvent the direct purchaser rule of *Illinois Brick* by disguising a claim for damages as one for equitable "restitution."  In any event, *Illinois Brick* precludes both federal antitrust *and* common law claims by indirect purchasers absent express authority for such relief under state law.  Thus, Plaintiffs' unjust enrichment claim is

barred absent state law expressly repealing *Illinois Brick* (so-called *Illinois Brick*-repealer statutes). Even there, however, Plaintiffs' exclusive remedy should lie in these *Illinois Brick*-repealer statutes, ***not*** any generalized common law claim. Count III of Plaintiffs' Second Amended Complaint should thus be dismissed in its entirety.

Accordingly, Count II, with the exception of Plaintiffs' claims brought pursuant to Fla. Stat. Ann. §§ 501.201, *et seq.*, should be dismissed. Count III of Plaintiffs' Second Amended Class Action Complaint should be dismissed in its entirety.[2]


## BACKGROUND

### A.     The Agreement Between Warner Chilcott And Barr

Warner Chilcott markets and sells pharmaceutical products, including Ovcon, an oral contraceptive. (*Vista* and *United Food* Third Party Payor Second Amended Class Action Complaint ("SAC") ¶ 2.) Warner Chilcott purchased Ovcon from Bristol-Myers Squibb ("BMS") in January 2000, and simultaneously entered into a supply agreement for that product. (*Id.* ¶ 34.) BMS, however, was unable to adequately supply Warner Chilcott with Ovcon. Therefore, in August 2003, Warner Chilcott began negotiations with Barr to manufacture and supply Warner Chilcott with Ovcon.[3] (*Id.* ¶¶ 49-50.)

In September 2003, Warner Chilcott and Barr reached a tentative agreement concerning Ovcon, the material terms of which were disclosed in a September 2003 Letter of Intent ("LOI")

---

[2]    Unless otherwise noted, all ***emphasis*** herein has been added and internal citations omitted.

[3]    Manufacturers must file a New Drug Application ("NDA") with the Food and Drug Administration ("FDA") to produce a new drug. (SAC ¶¶ 22-23.) Manufacturers may file an Abbreviated New Drug Application ("ANDA") to obtain approval to market generic versions of a "Reference Listed Drug[]," that is, a drug for

(Continued…)

between the parties.  (*Id.* ¶ 50.)  Under the terms of the LOI, Barr contemplated granting Warner Chilcott an option to acquire a five-year exclusive license to its ANDA for Ovcon.  (*Id.*)  More than six months later, on March 24, 2004, Warner Chilcott and Barr executed an agreement implementing the terms of the LOI.  (*Id.* ¶ 51.)

In April 2004, Barr received approval from the FDA to produce Ovcon under its ANDA.  (*Id.* ¶ 53.)  And, on May 6, 2004, Warner Chilcott exercised its option under the parties agreement.  (*Id.* ¶ 55.)  Currently, Barr produces Ovcon for Warner Chilcott pursuant to the parties' license and supply agreement.  (*Id.* ¶¶ 50-52.)

Plaintiffs challenge this agreement as anticompetitive (*id.* ¶¶ 57-60), and allege that Defendants' license and supply agreement prevented generic competition.[4]  (*Id.* ¶¶ 58-59.)

## B.    Plaintiffs Vista And United Food

Plaintiff Vista Health Plan, Inc. is a Florida insurance company "that provides comprehensive health benefits to its members through agreements with participating pharmacies."  (SAC ¶ 11.)  "Vista pays some or all of the cost of prescription drugs dispensed, including Ovcon, to its members."  (*Id.*)  Plaintiff United Food and Commercial Workers Central Pennsylvania Health and Welfare Fund is a Pennsylvania trust fund that "provid[es] health benefits to eligible participants."  (*Id.* ¶ 12.)  Like most insurance companies and health funds, Plaintiffs reimburse or pay the costs of ***their members*** ' prescription purchases.  (*Id.* ¶¶ 11-12.)  Plaintiffs purport to bring a class action on behalf of "[a]ll Third Party Payors" who "reimbursed,

---

which an NDA has been approved.  (*Id.* ¶¶ 24-28.)  Barr — a manufacturer of pharmaceutical products (*id.* ¶ 3) — had filed an ANDA to produce Ovcon with the FDA in September 2001.  (*Id.* ¶ 38.)

[4]    Notably, Ovcon has been on the market since approximately 1976 and was off-patent long before it was purchased by Warner Chilcott.  (*Id.* ¶ 33.)  Accordingly, Defendants' conduct could *not* preclude generic entry and a generic version of Ovcon may enter the market at any time.

and/or paid for Ovcon" during the class period.  (*Id.* ¶ 63.)  Plaintiffs define a "Third Party

Payor" as:

> (i) a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy, or plan provides prescription drug coverage to natural persons; and (ii) is also at risk, pursuant to such contract, policy or plan, to provide prescription drug benefits, or to pay or reimburse all or part of the cost of prescription drugs dispensed to natural persons covered by such contract, policy or plan.

(*Id.*)

### C.    Plaintiffs' Complaints

Plaintiffs filed their original four-count Class Action Complaint on December 5, 2005,

alleging that the Defendants' license and supply agreement described above gave rise to multiple

claims under both state and federal law.  On February 6, 2006, Plaintiffs' filed their First

Amended Class Action Complaint asserting the same causes of action.[5]

On February 28, 2006, Defendants jointly moved to dismiss a multitude of Plaintiffs'

claims.  Defendants demonstrated that Plaintiffs failed to state a claim, or were otherwise barred

from proceeding, under forty-nine (49) of the seventy-five (75) state statutes under which

Plaintiffs sought recovery, including claims under the laws of the District of Columbia,

Louisiana, Massachusetts, Vermont, and Wisconsin.  (*See* Defs.' Joint Mem. of Law in Supp. of

Mot. to Dismiss First Am. Compl. at 12-35.)    In addition, Defendants demonstrated that

Plaintiffs' equitable claim was barred by the direct purchaser rule of *Illinois Brick*.  (*Id.* at

36-37.)

---

[5]    Plaintiffs' original and First Amended Class Action Complaints asserted claims for (i) injunctive relief pursuant to Clayton Act § 16, (ii) compensatory and multiple damages for alleged violations of the antitrust and consumer protection statutes of twenty-three (23) states and the District of Columbia, (iii) restitution, disgorgement, and a constructive trust based on a theory of unjust enrichment, and (iv) unspecified relief for alleged violations of the consumer protection acts of all fifty states and the District of Columbia.  (*E.g.,* First Amended Class Action Complaint ¶¶ 79-87.)

Rather than respond to the issues raised in Defendants' motion, Plaintiffs chose to replead and thus filed a Second Amended Class Action Complaint on April 14, 2006. As in their prior complaints, Plaintiffs claim that they and other third-party payors "were and still are forced to pay [or reimburse their members] more for Ovcon than they otherwise would have" as a result of Defendants' agreement (SAC ¶ 75), because Plaintiffs reimburse some or all of their members' costs for Ovcon. (*Id.* ¶¶ 11-12, 63.) Plaintiffs' Second Amended Class Action Complaint asserts three counts:

> ***Count I*** seeks only injunctive relief under Section 16 of the Clayton Act for Defendants' alleged violation of Section 1 of the Sherman Act. (*Id.* ¶¶ 78-85.)

> ***Count II*** seeks compensatory and multiple damages under the antitrust and/or consumer protection statutes of twenty-three (23) so-called "Indirect Purchaser States," including the District of Columbia, Louisiana, Massachusetts, Vermont, and Wisconsin. (*Id.* ¶¶ 87-90.)

> ***Count III*** seeks restitution, disgorgement and constructive trust for alleged unjust enrichment of the Defendants by "the receipt of unlawfully inflated prices." (*Id.* ¶¶ 92-93.)

## ARGUMENT

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) must be granted where plaintiffs fail to affirmatively prove the subject matter jurisdiction of the court. *See, e.g.*, *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); *Brady Campaign v. Ashcroft*, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge*, 185 F. Supp. 2d at 13. Thus, the court must determine whether it has jurisdiction under Article III of the Constitution ***before*** deciding other substantive matters. *See Brady Campaign*, 339 F. Supp. 2d at 73.

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) must be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 43 (D.D.C. 1999), *modified on other grounds*, 99 F. Supp. 2d 1 (D.D.C. 1999). While the Court "should accept the plaintiff's allegations as true and construe those allegations in the light most favorable to the pleader," *ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 214 (D.D.C. 2005), it "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Cephas v. MVM, Inc.*, 403 F. Supp. 2d 17, 20 (D.D.C. 2005). To survive a motion to dismiss, a plaintiff must set forth in its complaint "factual allegations that are neither vague nor conclusory and that cover [] all the elements that comprise the theory for relief." *ASA Accugrade*, 370 F. Supp. 2d at 215 (internal quotation marks omitted). Bare legal conclusions will not suffice. *See id.*

Even construing the allegations in the light most favorable to Plaintiffs, they do not — and cannot — allege any set of facts that would entitle them to relief under the majority of the claims asserted. Count II of Plaintiffs' complaint should be dismissed with the exception of Plaintiffs' claim pursuant to Fla. Stat. Ann. §§ 501.201, *et seq.*, because Plaintiffs have no constitutional standing to assert claims under the laws of states where no named plaintiff resides, thereby rendering the Court without jurisdiction to consider them. Furthermore, plaintiff-United Food, as a trust fund, lacks standing to assert any damages. In addition, even if Plaintiffs were permitted to assert claims under the laws of the District of Columbia, Louisiana, Massachusetts, Vermont, and Wisconsin, those claims must be dismissed because Plaintiffs have failed to adequately plead a cause of action or are otherwise barred from recovery under the substantive

laws of those states.  Finally, Count III should be dismissed in its entirety because it is barred by the direct purchaser rule established by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  At a minimum, Plaintiffs cannot circumvent that rule on behalf of class members in states that have not repealed *Illinois Brick.*

## I.    PLAINTIFFS LACK STANDING TO ASSERT THE MAJORITY OF THEIR CLAIMS

At the most fundamental level, Plaintiffs lack standing to assert many of the claims raised in their complaint.  As detailed below, Plaintiffs simply cannot meet the constitutional requirements necessary to assert claims under state antitrust laws outside of their home states.  Moreover, Plaintiff United Food is a trust fund and, as such, cannot maintain a claim for damages.

### A.    Plaintiffs Lack Standing To Assert Claims On Behalf Of Residents Of Other States.

Plaintiffs — residents of Florida and Pennsylvania — purport in Count II to bring claims on behalf of citizens not only of Florida, but also twenty-one (21) other states and the District of Columbia.  Even for jurisdictions that arguably permit indirect purchaser recovery, Plaintiffs have no constitutional standing to assert claims under the laws of states where no named plaintiff resides.  In the absence of a named representative from each jurisdiction, Plaintiffs' attempt to assert antitrust or consumer protection claims under the laws of the myriad other "Indirect Purchaser States" listed in Count II of the complaint must be rejected.[6]

---

[6]    In addition to Florida, Plaintiffs assert claims on behalf of citizens of Arizona, California, the District of Columbia, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.  As discussed in Section II, *infra*, Plaintiffs' claims under the laws of the District of Columbia, Louisiana, Massachusetts, Vermont, and Wisconsin should also be dismissed for failure to state a claim under the substantive law of each state.

Under Article III of the Constitution, federal courts only have jurisdiction to adjudicate actual "cases" and "controversies." *U.S. Const., art. III, § 2*; *see also Allen v. Wright*, 468 U.S. 737, 750 (1984). To demonstrate a case or controversy, Plaintiffs "must allege **personal** injury fairly traceable to the defendant's allegedly unlawful conduct [] likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *California Ass'n of Physically Handicapped, Inc. v. FCC*, 778 F.2d 823, 825 (D.D.C. 1985). The "injury in fact" must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560.

Plaintiffs here cannot demonstrate an actual case or controversy exists under the laws of twenty-one (21) states and the District of Columbia, *i.e.*, states where Plaintiffs neither reside nor reimburse purchases of Ovcon. Plaintiffs' complaint does not contain a single factual allegation of any conduct occurring in any state. At best, Plaintiffs' complaint can be read to allege that plaintiff-Vista, with its principal place of business in Florida, suffered injury **only** in the State of Florida. Therefore, although Plaintiffs may be able to demonstrate a case or controversy arising from an alleged violation of Florida law, Plaintiffs cannot demonstrate that a case or controversy exists under the laws of any **other** state. Rather, if a case or controversy exists at all under the laws of states other than Florida, it would arise only from absent class members' reimbursements for purchases of Ovcon — and their alleged injury arising therefrom — in those other states, not the claims or alleged injuries of the named Plaintiffs.

Plaintiffs, however, cannot acquire constitutional standing by virtue of the hypothetical claims of absent plaintiffs. Indeed, it is neither necessary nor appropriate for the Court to consider the claims of absent un-named class members: the named Plaintiffs are the only plaintiffs before the Court. *See*, *e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of

9

the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 n.6 (11th Cir. 2000) (affirming dismissal and not considering potential claims of uncertified class members because "[a] plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue") (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)) (internal quotation marks omitted).

Put another way, Plaintiffs can pursue only those claims for which they have standing to bring in their own right; Plaintiffs cannot "borrow" the standing of absent class members. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.") (internal quotation marks omitted); *Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982) (warning that named plaintiffs cannot merely allege that "injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (internal quotation marks omitted); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002) (observing that "[t]he question of constitutional standing [] is a prerequisite to Rule 23 class certification" and should be addressed by a court in a motion to dismiss and not be deferred until class certification "because it goes to the court's jurisdiction"); *Easter v. American West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (noting that a district court should address "the issue of standing before it addresse[s] the issue of class certification").

Against this backdrop, Count II of Plaintiffs' complaint is defective on its face, because it raises claims under the laws of several states where no named plaintiff resides. Plaintiffs' purported standing to seek relief under the laws of one plaintiff's home state — Florida — does not give Plaintiffs constitutional standing to assert claims on behalf of residents of different states pursuant to other states' laws. As the court explained in *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001), "the named plaintiffs cannot rely on unidentified persons within those [other] states to state a claim for relief. Class allegations that others suffered injuries giving rise to claims 'add . . . nothing to the question of standing.'" *Id.* at 1371 (dismissing claims from states without a designated named plaintiff) (quoting *Lewis*, 518 U.S. at 357).[7] Accordingly, Count II should be dismissed to the extent it purports to assert claims under the laws of any state but Florida, because the Court does not have jurisdiction over such claims.

---

[7] Relying on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), some courts have deferred addressing the issue of a plaintiff's constitutional standing until after class certification on the grounds that the issue of standing was "logically antecedent" to class certification. *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 269 (D. Mass. 2004). These decisions, however, are neither persuasive nor controlling and simply misconstrue *Ortiz*. In *Ortiz*, the Supreme Court held that a court could determine class certification before addressing standing where named plaintiffs sought to include in a mandatory settlement class countless individuals who had been exposed to asbestos but had not yet suffered any harm. 527 U.S. at 831; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997). *Ortiz* thus created a "limited exception" to the general rule that "standing is an inherent prerequisite to the class certification inquiry." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002). Thus, a court may defer addressing the issue of standing in only exceptional circumstances, *i.e.*, where the absent class members lack constitutional standing and class certification issues are dispositive of the whole case, as in *Ortiz* and *Amchem*. Indeed, the Supreme Court has never adopted a broad exception to jurisdictional requirements. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101 (1998) ("[N]one of [the exceptions to the general rule that a court must address issues of standing first] even approaches approval of a doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt."). Instead, the Supreme Court has warned that, as a general rule, questions of jurisdiction must be considered before the merits "since if there is no jurisdiction there is no authority to sit in judgment of anything else." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000). Because it is the named Plaintiffs here – not the unnamed class members – that lack standing to assert claims under the laws of states to which they have no connection, the limited exception recognized in *Ortiz* does ***not*** apply. Accordingly, the Court must address the issue of standing prior to any determination of class certification.

**B.     Plaintiff United Food Is A Trust Fund And Does Not Have Standing In This Action.**

Plaintiff United Food is a trust.  (SAC ¶ 12.)  As such, it only pays for or reimburses its members' costs for Ovcon out of a fund, and has not suffered, and as a matter of law cannot suffer, any damages.  Thus, all claims by United Food must be dismissed.

A trust holds assets for the exclusive purpose of providing benefits to participants.  A trust does not reimburse members' costs from assets it contributes to a fund:  a trust does not contribute to a fund at all. *See Black's Law Dictionary* 1513 (7th ed. 1999) (a trust is a "right, enforceable solely in equity, to the beneficial enjoyment of property to which another person holds the legal title; a property interest held by one person (the *trustee*) at the request of another (the *settlor*) for the benefit of a third party (the *beneficiary*)") (emphasis in original); *id.* at 1519 (a "trustee" is "one who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary").

Given that trusts "merely handl[e] the payments with money provided by others," they "have no genuine stake" in any claim for damages arising from alleged overcharges.  *See Seafarers Welfare Plan v. Philip Morris*, 27 F. Supp. 2d 623, 627 (D. Md. 1998) (quoting *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 1998 WL 212846, at *2 (E.D. Pa. Apr. 22, 1998)).  Indeed, as explained by the court in *Seafarers*, all claims by a trust "suffer[] from the fundamental flaw that the Fund[], as opposed to [its] participants or the pertinent employers, ha[s] not suffered any cognizable damages."  *Id.*     Accordingly, a trust

"simply do[es] not have legal standing to advance such claims, which really belong to the individuals affected."  *Id.*[8]

Plaintiffs' Second Amended Complaint unambiguously alleges that plaintiff-United Food is a "trust . . . established and maintained for the purposes of providing health benefits to eligible participants."  (SAC ¶ 12.)  United Food, as a trustee, lacks standing to assert claims for damages it did not suffer.  Because it did not pay for any alleged overcharges from its own assets when it reimbursed costs from the trust fund — and, in fact, did not contribute to the trust fund at all — all claims asserted by plaintiff-United Food must be dismissed.

## II.    COUNT II OF PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UNDER THE LAWS OF FOUR STATES AND THE DISTRICT OF COLUMBIA

Even if Plaintiffs have standing to assert claims under the laws of states in which they do not reside (and even if United Food could state a claim for damages), Plaintiffs' claims pursuant to the laws of the District of Columbia, Louisiana, Massachusetts, Vermont, and Wisconsin suffer from substantive defects that bar Plaintiffs' claims.

### A.    Plaintiffs Have No Claim Under The Antitrust Laws Of The District Of Columbia.

The antitrust laws of the District of Columbia only reach violations that occur *solely* in *intra*state commerce.  *See Sun Dun, Inc. v. Coca Cola Co.*, 770 F. Supp. 285, 288 (D. Md. 1991) (dismissing D.C. antitrust claim because plaintiff failed to show that its purchases did not involve

---

[8]    Although Plaintiffs' complaint purports to allege claims by plaintiff-United Food on its own behalf (and those similarly situated), not on behalf of its beneficiaries (SAC ¶¶ 84, 88), plaintiff-United Food fails to allege how *it* — rather than its members — suffered any damage.  *Compare In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 51 (D.D.C. 2003) (distinguishing *Seafarers* because plaintiffs, non-trust third-party payors, and not their members, were "forced to eat [Mylan's] price hikes" in light of allegations that "their members' 'copayments were the same without regard to the drugs' cost following Mylan's price increase").  United Food thus has failed to allege any facts demonstrating its standing to sue.  Accordingly, its claims should be dismissed.

an interstate aspect). Indeed, as the court explained in *Sun Dun*, "the only claims . . . to which the D.C. [Antitrust Act] might possibly apply are those for direct and indirect purchases within the District of Columbia which do not involve an interstate link, and which thus do not fall within the scope of federal antitrust law." 740 F. Supp. 381, 397 (D. Md. 1990).

Plaintiffs make no attempt to meet this threshold requirement. To the contrary, Plaintiffs allege that "Ovcon was manufactured and sold in a continuous and uninterrupted flow of commerce across state and national lines," and "Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon *inter*state commerce." (SAC ¶ 19.) Plaintiffs' allegation that Defendants' conduct had a substantial effect on interstate commerce alone requires the dismissal of their D.C. antitrust claim, D.C. Code Ann. §§ 28-4501, *et seq.*

### B.    Plaintiffs Lack Standing Under The Antitrust Laws Of Louisiana.

Plaintiffs here are self-proclaimed "Third-Party Payors." (SAC ¶ 63.) Yet third-party payors do not purchase prescription drugs directly from pharmaceutical companies. *See, e.g.*, *In re Terazosin*, 160 F. Supp. 2d at 1367-68 (listing employee health plans among other indirect purchasers). Plaintiffs merely allege that they reimburse their members or participants for *their* purchases. (*See* SAC ¶ 11 ("Vista pays some or all of the costs of prescription drugs dispensed . . . to its members."); ¶ 12 ("United Food . . . has paid [for] or reimbursed . . . its participants' purchases . . . .").) Plaintiffs do not allege that they, in fact, *purchased* Ovcon, let alone that they purchased Ovcon directly from Warner Chilcott. Plaintiffs thus amount, at best, to *indirect* purchasers. *See Kansas v. UtiliCorp United, Inc.,* 497 U.S. 199, 207 (1990) (explaining that indirect purchasers "are not the immediate buyers from the alleged antitrust violators").

As such, Plaintiffs lack standing to sue under the antitrust laws "absent express authority for such relief under *state law*." *Mylan Labs., Inc.*, 62 F. Supp. at 42-43; *see also Illinois Brick*

14

*Co.*, 431 U.S. at 727-28.  That is, the Supreme Court in *Illinois Brick* firmly established that **indirect** purchasers — such as Plaintiffs here — cannot pursue claims for damages arising from an alleged antitrust violation.  *Illinois Brick Co.*, 431 U.S. at 727-28.  The Court, however, left states free to reverse this "direct purchaser rule" by expressly providing indirect purchasers a remedy under state antitrust laws.  *See California v. ARC Am. Corp.*, 490 U.S. 93, 100, 109 (1989) (holding that federal antitrust laws do not "pre-empt state laws permitting indirect purchaser recovery.").  Yet absent such an express state-law remedy, *Illinois Brick* bars indirect purchasers' claims.  *See Mylan Labs., Inc.*, 62 F. Supp. 2d at 44-52.

Notwithstanding this clear precedent, Count II of Plaintiffs' complaint asserts a claim for damages under Louisiana's antitrust statute, La. Rev. Stat. Ann. §§ 51:137, *et seq.*  (SAC ¶ 87(g).)  Louisiana, however, has **not** adopted an *Illinois Brick*-repealer statute.  *See*, *e.g.*, *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 170 (D. Me. 2004) (granting motion to dismiss Louisiana antitrust claim "on the ground that the plaintiffs [were] indirect purchasers"); *Mylan Labs., Inc.*, 99 F. Supp. 2d at 6-7 (denying motion to reinstate plaintiff's claim for damages because indirect purchasers do not have standing).  Instead, Louisiana adheres to the direct purchaser rule set forth by the Supreme Court in *Illinois Brick* and denies third-party payors such as Plaintiffs standing.  *See Free v. Abbott Labs., Inc.*, 176 F.3d 298, 299 (5th Cir. 1999) (affirming dismissal of claims brought pursuant to Louisiana's antitrust statute because indirect purchasers lacked standing to pursue such claims), *aff'd without opinion*, 529 U.S. 333 (2000).[9]  Accordingly, Plaintiffs' antitrust claim under the laws of Louisiana must be dismissed.

---

[9]    Although the Louisiana Supreme Court has not addressed the issue, federal courts applying Louisiana law have consistently held that indirect purchasers may not pursue claims under the Louisiana antitrust laws.  *See, e.g.*, (Continued…)

### C.    Plaintiffs Cannot State A Claim Under The Consumer Protection Laws Of Massachusetts.

Plaintiffs allege that Defendants' conduct violated the consumer protection laws of Massachusetts, Mass. Gen. Laws ch. 93A. (SAC ¶ 87(i).) Chapter 93A creates two causes of action, one for persons "engaged in trade or commerce" who are harmed by the unfair or deceptive acts of other persons engaged in business, *see* Mass. Gen. Laws ch. 93A, § 11, and another for those persons who are not entitled to bring an action under § 11, *see id.*, § 9. Although Plaintiffs fail to set forth the provision upon which their claim is based, in either case, their Massachusetts consumer protection claim cannot stand.

### 1.    *Illinois Brick* Bars Plaintiffs' Claim Under § 11 Of The Massachusetts Consumer Protection Laws.

Plaintiffs, as third-party payors, lack standing to assert a claim for damages under § 11 of the Massachusetts consumer protection laws. *See Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 311-12 (Mass. 2002). Indeed, as Justice Sosman explained in *Ciardi*, "[I]n . . . § 11 . . . , the [Massachusetts] Legislature has made clear that it ***does*** intend to adhere to the principles of *Illinois Brick*." *Id.* at 315 (Sosman, J., dissenting on other grounds).

It is beyond dispute that indirect purchasers' damages claims cannot be brought pursuant to the Massachusetts Antitrust Act, Mass. Gen. Laws ch. 93. *See Boos v. Abbott Labs.*, 925 F. Supp. 49, 51 (D. Mass. 1996)) (citing *Commonwealth v. Massachusetts CRINC*, 466 N.E.2d 792, 796 n.7 (Mass. 1984) (recognizing that the *Illinois Brick* doctrine applies to claims brought under

---

*Free*, 176 F.3d at 299 ("In our best judgment, the Louisiana courts would follow the federal indirect purchaser rule and deny standing to [indirect purchasers]."). Further, as the Fifth Circuit observed, the Louisiana antitrust laws are "virtually identical to the federal antitrust enforcement provision," and Louisiana courts rely on federal court interpretations of the federal antitrust laws such as *Illinois Brick* when interpreting their state antitrust laws. *See id.* Given these circumstances, denying indirect purchasers standing advances the important goals embodied by *Illinois Brick* and therefore allows Louisiana "to enforce a coherent state antitrust law that places the incentive to sue on the party best situated to recover." *See id.* at 301.

Massachusetts' antitrust law). Moreover, given that § 11's application is to be guided by interpretations of the Massachusetts Antitrust Act and, by association, *Illinois Brick*, indirect purchasers are precluded from recovery under that provision. *Ciardi*, 762 N.E.2d at 311-12 (allowing indirect purchasers to assert claims under § 9 given the absence of a provision parallel to that included in § 11). For this reason, to the extent that Plaintiffs attempt to assert a claim under § 11 of the Massachusetts consumer protection laws, Mass. Gen. Laws ch. 93A, § 11, that claim must be dismissed.[10]

### 2. Plaintiffs' Failure To Provide Statutory Notice Mandates Dismissal Of Their Claim Under § 9 Of The Massachusetts' Consumer Protection Laws.

Plaintiffs likewise fail to state a claim under § 9. Section 9 explicitly requires Plaintiffs to provide advance, written notice of their claims prior to filing a complaint. "At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." Mass. Gen. Laws ch. 93A,

---

[10]    Moreover, even if Plaintiffs could assert a claim for damages under § 11, it must nevertheless be dismissed because Plaintiffs have failed to show that the challenged conduct occurred "primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, § 11. In determining whether conduct occurred "primarily and substantially within the commonwealth," courts consider "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 799-800 (Mass. 2003) (holding plaintiff could not state a claim under § 11 where "all the conduct that c[ould] be said to be unfair or deceptive, and the underlying negotiations, occurred" outside of Massachusetts).

It is clear on the face of Plaintiffs' complaint that the "center of gravity" of this case is ***not*** Massachusetts. None of the named parties to this action are alleged to be incorporated or doing substantial business in Massachusetts. (*See* SAC ¶¶ 11-16, 18-20.) Nor is there a single factual allegation about any conduct in Massachusetts. Thus, Plaintiffs' conclusory allegation that "the conduct complained of . . . occurred 'primarily and substantially' within Massachusetts" (SAC ¶ 89), is both inconsistent with Plaintiffs' factual allegations and unavailing. *See, e.g., American Mgmt. Servs., Inc. v. George S. May Int'l Co.*, 933 F. Supp. 64, 67-68 (D. Mass. 1996) (granting motion to dismiss where plaintiffs alleged no actions or effects in Massachusetts); *Fink v. DeClassis*, 745 F. Supp. 509, 516-17 (N.D. Ill. 1990) (granting motion to dismiss where transaction giving rise to the cause of action occurred in Illinois and defendant conducted little business activity in Massachusetts).

§ 9(3).  The purposes of the notice requirement are twofold:  (1) "to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct"; and (2) "to operate as a control on the amount of damages which the complainant can ultimately recover."  *Spring v. Geriatric Auth. of Holyoke*, 475 N.E.2d 727, 736 (Mass. 1985).  Thus, state and federal courts have strictly construed the Massachusetts Legislature's requirement that a demand letter precede the filing of a consumer protection claim.

For example, in *City of Boston v. Aetna Life Ins. Co.*, 506 N.E.2d 106 (1987), the Massachusetts Supreme Judicial Court unambiguously stated that failure to "***allege*** the sending of a demand letter is fatal to [a] Sec. 9 claim."  *Id.* at 109.  Similarly, in *Spring*, the Massachusetts Supreme Judicial Court upheld a motion notwithstanding the verdict on a consumer protection claim where the plaintiff failed to allege and prove the existence of a demand letter meeting all of the elements set forth in the statute.  475 N.E.2d at 735.  There, the court held that "a demand letter listing the specific deceptive practices claimed is a prerequisite to suit and [is] a ***special element [that] must be alleged and proved***."  *Id.* (emphasis in original).  Federal courts have likewise recognized the necessity of sending a demand letter.  *See, e.g.*, *McMahon v. Digital Equip. Corp.*, 944 F. Supp 70, 77 (D. Mass. 1996) (dismissing plaintiff's consumer protection claim on a motion to dismiss because plaintiff did "not allege[] that she sent a 30 day demand letter . . . a prerequisite to bringing a suit under Mass. Gen. Laws ch. 93A, Sec. 9").

Plaintiffs here do not allege that they served Defendants with any advance notice or demand for relief prior to filing their original complaint on December 5, 2005, or their two amended complaints.  In fact, Plaintiffs admit that notice has ***not*** been provided in accordance with the statute.  (*See* SAC ¶ 89 (asserting "such notice ***will be sent*** as required by the Court").)

18

Plaintiffs' failure to serve proper notice — the very "prerequisite to suit" under Massachusetts law — entitles Defendants to dismissal of Plaintiffs' Massachusetts consumer protection law § 9 claims.

**D.    Plaintiffs Are Not "Consumers" Under The Consumer Protection Laws Of Vermont.**

On the face of Plaintiffs' complaint, Plaintiffs are not "consumers" as defined under the consumer protection laws of Vermont and, as such, cannot state a claim for relief.

Under Vermont's antitrust law, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*, only a "consumer" who sustains damages may sue.  *See* Vt. Stat. Ann. tit. 9, §§ 2461(b), 2451a(a).  A "consumer" is defined as "any person who ***purchases*** . . . goods . . . not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household . . . [or] for the use or benefit of his or her business."  *Id.* at § 2451a(a).

However, Plaintiffs — as third-party payors — are not "consumers" because they do not and did not "purchase" Ovcon for their own benefit.  Rather, Plaintiffs merely reimburse their participants' purchases.  (*See* SAC ¶ 11 ("Vista pays some or all of the costs of prescription drugs dispensed . . . to its members."); ¶ 12 ("United Food . . . has paid [for] or reimbursed . . . its participants' purchases . . . .").)  Indeed, Plaintiffs — an insurance company and a trust fund — do ***not*** allege that they, in fact, purchased Ovcon for their own benefit.  Therefore, Plaintiffs' Vermont consumer protection claim, Vt. Stat. Ann. tit. 9 §§ 2451, *et seq.*, must be dismissed.

**E.    Plaintiffs Have No Claim Under The Antitrust Laws Of Wisconsin.**

Wisconsin limits the scope of its antitrust laws to encompass only those activities that have a substantial connection within the state.  *See Olstad v. Microsoft Corp.*, 700 N.W. 2d 139, 158 (Wis. 2005).  Thus, while the Wisconsin antitrust act may reach interstate commerce in some circumstances, a plaintiff must make specific factual allegations that demonstrate how the

challenged conduct had an impact within that state.  Here, Plaintiffs' conclusory allegations are clearly insufficient to state a claim under Wisconsin law.

The Wisconsin Supreme Court recently has interpreted the Wisconsin Antitrust Act to apply to conduct only if that conduct has a substantial *intra*state connection.  *See id.*  Thus, to state a claim under the Wisconsin Antitrust Act a plaintiff must allege one of two things:  (1) that "actionable conduct, such as the formation of a combination or conspiracy, occurred within this state, even if its effects are felt primarily outside Wisconsin"; or, (2) that "the conduct complained of 'substantially affects' the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state."  *Id.*    In setting forth this standard, the court cautioned that the importance of demonstrating a substantial impact in the state cannot be understated because "[o]perating with lesser standards" would "undermine the validity of our antitrust statute, and create the spectacle of Lilliputian harassment in Wisconsin courts."  *Id.*

Plaintiffs here have not pled a single factual allegation from which any conduct or effect in Wisconsin can be inferred.  In fact, none of the parties has any stated connection to Wisconsin. Plaintiffs are a Florida insurance company with a principal place of business in Florida, and a Pennsylvania trust fund with a principal place of business in Pennsylvania.  (SAC ¶¶ 11-12.) The Warner Chilcott Defendants include two Delaware corporations with their principal places of business in New Jersey, a privately-owned entity organized under the laws of Bermuda with its principal place of business in New Jersey, and an entity organized and doing business under the laws of Puerto Rico.  (*Id.* ¶¶ 13-16.)  Defendant Barr is alleged to be a Delaware corporation with its principal place of business in New York.  (*Id.* ¶ 18.)

Plaintiffs thus offer nothing more than a ***bare legal conclusion*** that the conduct at issue "'substantially affected' the people of Wisconsin and had impacts in Wisconsin . . . as those terms are understood under Wisconsin . . . law." (SAC ¶ 89.) But merely quoting this statutory requirement without offering any supporting factual allegations is insufficient to satisfy either Federal Rule of Civil Procedure 8(a) or the requirements of Wisconsin law. *See In re Newbridge Networks Secs. Litig.*, 926 F. Supp. 1163, 1168 (D.D.C. 1996) (in considering a motion to dismiss, the court need not "accept legal conclusions cast in the form of factual allegations"); *see also Qualls v. Rumsfeld*, 412 F. Supp. 2d 40, 42-43 (D.D.C. 2006) (the "Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint"); *Wilson v. Cont'l Cos.*, 274 N.W.2d 679, 683 (Wis. 1979) (holding a plaintiff's "bare conclusion[s] do not fulfill "a plaintiff's duty of stating the elements of a claim in general terms"). Because Plaintiffs have failed to plead any factual allegation from which any conduct or effect in Wisconsin can be inferred, Plaintiffs' claim under the Wisconsin Antitrust Act, Wis. Stat. §§ 133.01, *et seq.*, must be dismissed.

## III. PLAINTIFFS CANNOT CIRCUMVENT *ILLINOIS BRICK'S* STANDING LIMITS BY ALLEGING A GENERALIZED UNJUST ENRICHMENT CLAIM

Count III of Plaintiffs' Second Amended Class Action Complaint pleads a common law claim for restitution, disgorgement and constructive trust for unjust enrichment. (SAC ¶¶ 92-93.) Plaintiffs' "unjust enrichment" claim, however, falls squarely within the *Illinois Brick* ban against recovery by indirect purchasers.[11]

---

[11] Nowhere in Count III do Plaintiffs identify either the statutory or the common law basis for this claim. However, because there is no federal common law of "unjust enrichment," *see, e.g., In re New Motor Vehicles*, 350 F. Supp. 2d at 211 n.90, and because disgorgement or unjust enrichment is an improper remedy under Clayton Act § 16, *see Mylan Labs., Inc.*, 62 F. Supp. 2d at 41-42, Defendants will presume that in asserting an "unjust enrichment" claim in Count III, Plaintiffs intended to state a claim pursuant to the common law of the fifty states. For the reasons stated herein, Plaintiffs' claim must fail.

### A.     Plaintiffs Cannot Re-label Their Damages Claim To Avoid *Illinois Brick*.

As a threshold matter, Plaintiffs cannot simply re-label their damages claim as a request for "restitution" or "unjust enrichment" to avoid the reach of *Illinois Brick*.  Despite the many labels Plaintiffs employ in Count III — restitution, disgorgement, and constructive trust — this Count amounts to nothing more than a claim for monetary relief.  Plaintiffs allege that the challenged supply agreement caused them to reimburse their "participants' purchases of Ovcon 35 at supra-competitive prices"; that is, Plaintiffs allege that they were overcharged *for their participants' purchases* of Ovcon.  (SAC ¶ 12; *see also id.* ¶¶ 1, 11, 75-76.)  But a claim to recover "overcharges" as a result of "supracompetitive" prices is plainly a claim for damages, not restitution.  *See*, *e.g.*, Dobbs, Law of Remedies § 4.1(1) (1993) ("Restitution measures the remedy by the defendant's gain . . . damages [] measures the remedy by the plaintiff's loss."); *Kloth v. Microsoft Corp.*, 2006 WL 998087, at *7 (4th Cir. Apr. 18, 2006) (holding that indirect purchaser claims for injuries arising from "supra-competitive prices" were "barred by *Illinois Brick*").  Moreover, Plaintiffs' claim for disgorgement is similarly nothing more than an attempt to recover monetary damages barred by *Illinois Brick*.  *See First Nat'l Bank v. Warren*, 796 F.2d 999, 1000 (7th Cir. 1986) (observing that disgorgement or restitution is not a form of equitable relief when "the plaintiff seeks money for its own coffers"); *Mylan*, 62 F. Supp. 2d at 32 (explaining that "restitution and/or disgorgement on behalf of indirect purchasers" is barred by *Illinois Brick*).

Count III of Plaintiffs' complaint is therefore nothing more than an attempt to side-step *Illinois Brick's* bar against indirect purchasers' recovery of damages.  Plaintiffs, however, cannot

circumvent *Illinois Brick* by disguising a damages claim as a request for common law restitution or unjust enrichment.[12]

**B.    *Illinois Brick* Bars Plaintiffs' Common Law Claims.**

In any event, no matter how Plaintiffs' remedy under Count III is characterized, *Illinois Brick* bars Plaintiffs' claim.    As this Court observed in *Mylan*, *Illinois Brick* precludes both federal antitrust ***and*** common law claims by indirect purchasers "***absent express authority for such relief under state law***."    62 F. Supp. 2d at 43; *see also In re New Motor Vehicles*, 350 F. Supp. 2d. at 211 ("Certainly no restitutionary remedy can escape the limitations the United States Supreme Court imposed on federal antitrust recovery in *Illinois Brick*.").    In *Mylan*, several states sought recovery in restitution on behalf of indirect purchasers.    The court examined the law of each of the states at issue, and dismissed those claims for disgorgement on behalf of indirect purchasers where the state antitrust laws did not expressly authorize them.    *See* 62 F. Supp. 2d at 44-53.    And, even with regard to the states where the disgorgement claims were allowed to proceed, the court required those claims to be pursued under the state antitrust laws, ***not*** under general unjust enrichment principles.    *See id.*

Similarly, in *In re Terazosin*, the court rejected indirect purchaser-plaintiffs' unjust enrichment claim under the common law of the fifty states with respect to each state that did not allow indirect purchasers to sue under that state's antitrust laws.    *See* 160 F. Supp. 2d at 1379-80. The court explained that:

---

[12]    *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 666 (1974) (plaintiffs cannot bring claims that "may be labeled 'equitable' in nature," if "in practice [they would] resemble a money judgment"); *Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979) ("A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money."); *see also The Daisy Group, Ltd. v. Newport News, Inc.*, 999 F. Supp. 548, 552 (S.D.N.Y. 1998) (cautioning that disgorged profits sought "as restitution for unjust enrichment," are, in fact, "a rough proxy measure of plaintiff's damages") (internal quotation marks omitted).

> *Illinois Brick* expressed concerns that indirect purchaser actions would lead to complex apportionment disputes among injured parties, undermine the efficient enforcement of antitrust laws, or expose defendants to the risk of multiple liability. ***The end payors' unjust enrichment claim raises identical concerns . . . State legislatures and courts that adopted the Illinois Brick rule against indirect purchaser antitrust suits did not intend to allow "an end run" around the policies allowing only direct purchasers to recover.***

*Id.* at 1380; *see also In re Microsoft Corp. Antitrust Litig.*, 241 F. Supp. 2d 563, 565 (D. Md. 2003) (barring indirect purchasers from recovering on their unjust enrichment claim for antitrust violations where they could not recover under state antitrust law).

Because *Illinois Brick* precludes both federal antitrust and common law claims by indirect purchasers absent express contrary state authority, Plaintiffs' sole remedy is under those state statutes that have expressly repealed *Illinois Brick* (so-called *Illinois Brick*-repealer statutes). In fact, Count II of the complaint already purports to seek relief under those statutes. (SAC ¶ 87.) Count III is therefore facially defective in the many states in which indirect purchaser actions are ***not*** available under relevant state antitrust laws. *See, e.g., Free*, 176 F.3d at 301 & n.7 (observing that the majority of states "have decided to follow the *Illinois Brick* road"). Therefore, at a minimum, Plaintiffs' common law claim for "restitution, disgorgement and constructive trust" (Count III) must be dismissed to the extent it purports to state claims under the common law of states that adhere to the direct purchaser rule of *Illinois Brick*.

### C.    Plaintiffs' Exclusive Remedy Should Lie In The Antitrust Laws.

Finally, even with regard to states that have adopted *Illinois Brick*-repealer statutes, or with regard to the states where courts have construed the state antitrust laws to allow indirect purchaser claims, Count III is improper. As the Court in *Mylan* observed, in those states, Plaintiffs' exclusive remedy should lie in the state antitrust laws, ***not*** in some undefined and unsupported claim for unjust enrichment. *See* 62 F. Supp. 2d at 44-53. Indeed, several courts

have held that when state law provides an express remedy, parties are limited to that remedy. *See*, *e.g.*, *Fascione v. CNA Ins. Cos*., 754 N.E.2d 662, 666 (Mass. 2001) ("[W]here a statute creates a new right and prescribes the remedy for its enforcement, the remedy prescribed is exclusive.") (internal quotation marks omitted); *Lubner v. City of Los Angeles*, 53 Cal. Rptr. 2d 24, 28 (Cal. Ct. App. 1996) ("[W]here a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive."); *see also Trade 'N Post, L.L.C. v. World Free Duty Ams., Inc.*, 628 N.W.2d 707, 713 (N.D. 2001) (finding that where a statute prescribes a specific remedy, that statutory remedy is exclusive); *Wyman v. Terry Schulte Chevrolet, Inc*., 584 N.W. 2d 103, 107 (S.D. 1998) (same); *Monroe Beverage Co. v. Stroh Brewery Co*., 559 N.W.2d 297, 298-99 (Mich. 1997) (same); *Winney v. Ransom & Hastings, Inc*., 542 A.2d 269, 270 (Vt. 1988) (same); *Hawkins v. Dep't of Welfare*, 197 S.W. 2d 98, 99 (Ky. 1946) (same); *Steves v. Robie*, 31 A.2d 797, 799 (Me. 1943) (same).

Here, the third-party payor-Plaintiffs have pursued, in Count II, the very remedies provided for in the *Illinois Brick*-repealer statutes. Plaintiffs' Count III is therefore either disallowed by state law, or duplicative of Count II. Either way, it should be dismissed in its entirety.[13]

---

[13] Even if Plaintiffs' equitable claim could circumvent *Illinois Brick*, Plaintiffs could not proceed under the common law of all states. Under well-established choice of law principles, the law of New Jersey or New York governs Plaintiffs' unjust enrichment claim. In determining the applicable law, the court must "evaluate the governmental policies underlying the applicable conflicting laws and . . . determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C. Cir. 1988) (internal quotation marks omitted) (applying the Restatement (Second) of Conflict of Laws' modified governmental interest analysis). Where, as here, "the claim for restitution does not stem from any relationship between the parties, the place where the benefit or enrichment was received 'will usually be [the contact] of greatest importance with respect to most issues.'" *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 341 (S.D.N.Y. 2005) (applying New Jersey law to unjust enrichment claim and granting summary judgment dismissing such claim where there was no direct connection between plaintiffs and
(Continued…)

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully submit that Count II of Plaintiffs' Second Amended Class Action Complaint should be dismissed to the extent it purports to assert claims under the laws of any state except Florida because Plaintiffs have failed to adequately plead a cause of action or otherwise lack standing to assert claims under the state law, and Count III should be dismissed in its entirety because it is barred by the direct purchaser rule established by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Finally, all claims asserted on behalf of plaintiff-United Food should be dismissed for lack of standing.

Date:   May 3, 2006                          Respectfully submitted,


  /s/ Peter C. Thomas                                /s/  Karen N. Walker

Peter C. Thomas (D.C. Bar # 495928)          Karen N. Walker (D.C. Bar # 412137)
SIMPSON THACHER & BARTLETT LLP               Mark L. Kovner (D.C. Bar #  430431)
555 11th Street, N.W.                        Chong S. Park (D.C. Bar # 463050)
Suite 725                                    KIRKLAND & ELLIS LLP
Washington, D.C.  20004                      655 Fifteenth Street, N.W.
(202) 220-7700                               Washington, District of Columbia  20005
(202) 270-7702 (fax)                         (202) 879-5000
                                             (202) 879-5200 (fax)

Charles E. Koob, *pro hac vice*
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York  10017-3954
(212) 455-2000
(212) 455-2502 (fax)


*Counsel for Warner Chilcott Holdings*          *Counsel for Barr Pharmaceuticals, Inc.*
*Company III, Ltd., Warner Chilcott*
*Corporation, Warner Chilcott (US) Inc., and*
*Warner Chilcott Company, Inc.*

---

defendants, and New Jersey-based defendant allegedly received enrichment and created allegedly deceptive communications in New Jersey); *see also Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430, 434-35 (D. Del. 2003) (applying California law where restitution claim did not stem from any relationship between the parties and the alleged benefit was received, and defendant's principal place of business was located, in California); Restatement (Second) of Conflict of Laws § 221, cmt. d.