**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

VISTA HEALTHPLAN, INC. and UNITED
FOOD AND COMMERCIAL WORKERS
CENTRAL PENNSYLVANIA HEALTH
AND WELFARE FUND, on behalf of themselves          05 Civ. 2327 (CKK)
and all others similarly situated,

        **Plaintiffs,**

v.

WARNER CHILCOTT HOLDINGS COMPANY
III, LTD., WARNER CHILCOTT CORP.,
WARNER CHILCOTT (US) INC., WARNER
CHILCOTT COMPANY, INC. and BARR
PHARMACEUTICALS, INC.,

        **Defendants.**

_____/

**THIRD PARTY PAYOR PLAINTIFFS' MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO
<u>DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT</u>**

TABLE OF CONTENTS

I.    INTRODUCTION......................................................................................................2

II.   ARGUMENT............................................................................................................2

      A.    Plaintiffs Have Standing to Bring Antitrust and Consumer Protection Claims
            under the Laws of the Illinois Brick-Repealer States.........................................2

      B.    United Food, a Health and Welfare Fund, Has Been Injured
            and Therefore Has Standing...............................................................................6

      C.    Plaintiffs Properly and Adequately Allege the Elements of its Claims..........................8

            1.    District of Columbia's Antitrust Statute............................................................8

            2.    Louisiana's Antitrust Statute...............……….............................................10

            3.    Massachusetts' Consumer Protection Statute.……......................................11

            4.    Vermont's Consumer Protection Statute.……...............................................12

            5.    Wisconsin's Antitrust Statute...........................................................................13

      D.    Plaintiffs State a Claim for Unjust Enrichment.............................................................15

III.  CONCLUSION......................................................................................................17

TABLE OF AUTHORITIES

**Cases**

*Allapattah Services, Inc. v. Exxon Corp.,*
188 F.R.D. 667 (S.D. Fla. 1999).................................................................................................5

*Ascension Technology Corporation v. McDonald Investments, Inc.,*
327 F. Supp 2d 271 (D. Vt. 2003)............................................................................................13

*Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.,*
295 F. Supp. 2d 75, 88 (D.D.C. 2003).....................................................................................13

*California v. ARC Am. Corp.,*
490 U.S. 93, 101-02 (1989)......................................................................................................16

*California v. ARC American Corp.,*
109 S. Ct. 1661 (1989)...............................................................................................................9

*Ciardi v. F. Hoffman-La Roche, Ltd.,*
762 N.E.2d 303 (Mass. 2002)..................................................................................................16

*Fallick v. Nationwide Mutual Ins. Co.,*
162 F.3d 410 (6th Cir. 1998)......................................................................................................4

*Free v, Abbott Labs.,*
739 So.2d 216 (La. 1999).........................................................................................................11

*Free v. Abbott Labs.,*
164 F.3d 270 (5th Cir.1999)......................................................................................................11

*Free v. Abbott Labs.,*
176 F.3d 298 (5th Cir.1999)......................................................................................................11

*Griffen v. Dugger,*
823 F.2d 1476 (11th Cir. 1987)..................................................................................................3

*GTE New Media Services Inc. v. Ameritech Corp.,*
21 F. Supp. 2d 27    (D.D.C. 1998)..........................................................................................10

*Healy v. The Beer Institute,*
109 S. Ct. 2491 (1989)...............................................................................................................9

*In re Brand Name Prescription Drugs Antitrust Litig.*,
123 F.3d 599 (1997)............................................................................9

*In re Buspirone Patent Litigation*,
185 F. Supp. 2d 363 (S.D.N.Y. 2002)................................................3, 4

*In re Cardizem CD Antitrust Litig.*,
105 F. Supp. 2d 618 (E.D. Mich. 2000)...............................................15

*In re Cardizem CD Antitrust Litig.*,
MDL 1278, Order No. 70 (E.D. Mich. May 23, 2003)..........................15

*In re K-Dur Antitrust Litig.*,
338 F. Supp. 2d 517 (D.N.J. 2004).......................................................7

*In re Lorazepam & Clorazepate Antitrust Litg.*,
295 F. Supp.2d 30 (D.D.C. 2003).......................................................7, 9

*In re Lorazepam and Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002)..............................................................5

*In re Prudential Ins. Co. of American Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997).............................................................5

*In re Relafen Antitrust Litigation*,
221 F.R.D. 260 (D. Mass. 2004)...........................................................4

*In re Synthriod Mktg. Litig.*,
188 F.R.D. 295 (N.D. Ill. 1999).............................................................5

*In re Terazosin Hydrochloride Antitrust Litigation*,
160 F. Supp. 2d 1365 (S.D. Fla. 2001)..................................................3

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)..............................................................5, 7

*La Mar v. H&B Novelty Co.*,
489 F.2d 461 (9th Cir. 1973)................................................................4

*Lilly v. Turboprop East, Inc.*,
2004 WL 540445 (E.D. Pa. 2004)........................................................12

*Louisiana ex rel. Leyoub v. Borden, Inc.,*
No. 94-3640, 1995 WL 59548 (E.D. La. Feb. 10, 1995).....................................................................10

*Louisiana Power & Light Co. v. United Gas Pipe Line Co.,*
493 So.2d 1149 (La. 1986) .................................................................................................................10

*Mack Bristol-Myers Squibb Co.,*
673 So.2d 100 (Fla. 1st DCA 1996)...................................................................................................16

*Meyers v. Bayer AG,*
2006 WL 1228957 (Wisc. Ct. App. May 9, 2006).............................................................................14

*Miller v. French,*
530 U.S. 327 (2000)............................................................................................................................16

*Olstad v. Microsoft Corp.,*
700 N.W.2d 139 (Wisc. 2005)............................................................................................................13

*Payton v. County of Kane,*
308 F.3d 673 (7th Cir. 2002)................................................................................................................4

*Pharmaceutical Research and Manufacturers of America v. District of Columbia,*
406 F. Supp. 2d 56, 67-68 (D.D.C. 2005).............................................................................................9

*Phillips Petroleum Co. v. Shutts,*
105 S. Ct. 2965 (1985).........................................................................................................................4

*Seafarers Welfare Plan v. Philip Morris,*
27 F. Supp. 2d 623 (D. Md. 1998).......................................................................................................6

*Service Employees Int''l v. Abbott Laboratories,*
2005 WL 528323 (N.D. Cal. 2005) .....................................................................................................7

*Sherwood v. Microsoft Corp.,*
2003 WL 21780975 (Tenn. Ct. App. 2004)..........................................................................................3

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,*
171 F.3d 912 (3d Cir. 1999).................................................................................................................7

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,*
1998 WL 212846 (E.D. Pa. 1998).......................................................................................................6

*Sun Dun, Inc. v. Coca Cola Co.,*
770 F. Supp. 285 (D. Md. 1991).................................................................................................8, 9, 10

*Tarpey v. Crescent Ridge Dairy, Inc.*,
713 N.E. 2d 975 (Mass. App. Ct. 1999)............................................................................11

*York v. Sullivan*,
338 N.E.2d 341 (Mass. 1975)..........................................................................................11

## <u>Statutes</u>

F.R.C.P. 8(a) ...................................................................................................................14

Mass. Gen. Laws. Ch. 93A, §§ 9.....................................................................................11

Vt. Stat. Ann.  Tit. 9, §§§§ 2451, et seq .................................................................12, 13

Wis. Stat. §§§§ 133.01...............................................................................................13

Vista Healthplan, Inc. and United Food and Commercial Workers Central Pennsylvania Health and Welfare Fund hereby submit their Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("Joint Motion to Dismiss").  For the reasons set forth below, the Joint Motion to Dismiss should be denied.

## I.  INTRODUCTION

In their Second Amended Class Action Complaint ("SAC"), Plaintiffs allege that Defendants entered into an unlawful agreement to prevent generic Ovcon from reaching the market.  As a result, the Plaintiffs, which are third party payors (an insurer and a health and welfare fund), paid supracompetitive prices for Ovcon.

Defendants seek to dismiss the SAC arguing that Plaintiffs: (1) do not have standing to bring any claims except under Florida's Consumer Protection Act; (2) cannot plead claims under five particular state statutes for various procedural and substantive reasons; and (3) cannot assert an unjust enrichment claim because of the Supreme Court's decision in *Illinois Brick*.

As shown below, Plaintiffs have standing to assert all of their claims, they have alleged all of the elements necessary to set forth violations of each state statute, and *Illinois Brick* does not prevent Plaintiffs from asserting an unjust enrichment claim to disgorge Defendants' ill-gotten gains. Therefore, Plaintiffs respectfully request that the Court deny Defendants' Joint Motion to Dismiss.

## II.  ARGUMENT

### A.  Plaintiffs Have Standing to Bring Antitrust and Consumer Protection Claims Under the Laws of the *Illinois Brick*-Repealer States

Defendants argue that Count II – which seeks damages under the antitrust and consumer protection statutes of the 22 states (plus the District of Columbia) that do not follow *Illinois Brick* – must be dismissed because the SAC does not include a named plaintiff that resides in each and

every one of the 23 jurisdictions.[1]  Defendants' argument relies entirely on a lone district court opinion from the Southern District of Florida – *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001) ("*Hytrin*") – that has not been adopted by any court in this Circuit, or any other Circuit for that matter.[2]

In *Hytrin*, the district court established new "constitutional standing" law, hitherto unknown in multistate class actions jurisprudence, by requiring for the first time that a class member from **each** jurisdiction at issue in the case be added as a named plaintiff.[3]  For several reasons, *Hytrin* does not compel dismissal of Count II.  As an initial matter, there is no question that Plaintiffs have standing to raise some of their claims, and that therefore, subject matter jurisdiction exists in this action.  Defendants themselves concede that, under Count II, Vista can allege a claim under Florida law, and do not dispute that both Plaintiffs have standing for Counts I and III.  *See In re Buspirone Patent Litigation*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) ("*Buspar*") ("There is no question that this Court has jurisdiction over each of the lawsuits and that each of the named plaintiffs has standing to bring at least some claims.").

In addition, raising "standing issues" in a multistate class action on a motion to dismiss is

---

[1]  Defendants admit that Vista, a Florida corporation, may bring a claim under Florida's consumer protection statute.

[2]  One state court cites *Hytrin* but it does not actually "follow" *Hytrin's* reasoning that a plaintiff who has standing under at least one statute nevertheless cannot plead a multistate class action under similar state laws. *Sherwood v. Microsoft Corp*., 2003 WL 21780975 (Tenn. Ct. App. 2004).  Rather, the *Sherwood* court cites *Hytrin* to support dismissal of a single-state class action where the plaintiffs were indirect purchasers trying to plead claims belonging to direct purchasers.

[3]  The *Hytrin* court cites *Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987), as support for this novel proposition, but *Griffin*, an employee discrimination case, involved a plaintiff which had not suffered the same injury as the rest of the class.  Even assuming that this general principle is still good law, Plaintiffs in this case, as in *Hytrin*, have alleged that they did suffer the same injury as absent class members, that is, they all paid supracompetive prices for Ovcon.

simply premature.  Where Defendants' conduct "would establish liability under a number of different States' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute."  *Id.* at 377.  Thus, *Hytrin* notwithstanding,  most courts have held that when confronted with standing issues that directly relate to the certification of a multistate class action, it is more appropriate to decide the certification issue before resolving alleged standing challenges.  *Id.*; *see also In re Relafen Antitrust Litigation*, 221 F.R.D. 260, 269-70 (D. Mass. 2004) ("Certification is in this case "logically antecedent" because [defendant's standing] challenge would not arise but for the proposed certification.") (citing cases).[4]

Moreover, one wonders how standing under the other states' laws can be determined before this Court decides what state law or laws will actually govern this multistate class action.  To take just one example, it is entirely possible that, consistent with *Phillips Petroleum Co. v. Shutts*, 105 S. Ct. 2965 (1985), the Court may apply just one state's law to absent class members who reside in *Illinois Brick*-repealer states.  *Buspirone*, 185 F. Supp. 2d at 377 (finding standing challenge

---

[4]  Similarly, in *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998), the Sixth Circuit held that "once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants. Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23."  In reversing the district court, the Sixth Circuit concluded that once the ERISA plaintiff establishes his standing to sue his own plan, "there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Id.* at 424.  This was so, even though it was clear that the ERISA plaintiff suffered no injury related to those other plans, and more importantly, could not have raised those claims in an individual action – the same argument Defendants make here. *See also Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (where plaintiff is injured, class certification issue should be considered before standing); *La Mar v. H&B Novelty Co.*, 489 F.2d 461, 462 (9th Cir. 1973) ("a plaintiff may represent all those suffering an injury similar to his own inflicted by the defendant responsible for the plaintiff's injury.").

premature because, *inter alia*, the parties had not yet briefed the choice of law issues).  It seems pointless to dismiss most of  Count II's claims at this juncture, given the possibility that Plaintiffs will be permitted to assert those claims if the class is later certified.

Finally, even if this argument were raised in connection with a class certification motion, it would be contrary to the policies underlying Rule 23.  The notion that a plaintiff who brings a multistate class action (such as this case) needs to start with 51 plaintiffs (one for each state and the District of Columbia) not only would be impractical, but the requirement would defeat the central purpose of Rule 23, that is, to create an efficient mechanism to litigate an action that involves so many plaintiffs that joinder is impracticable.  Following *Hytrin* in this case would do nothing to change the fact that Plaintiffs currently have standing to bring this case, but it would add considerable expense to this action because, assuming Plaintiffs added the "necessary" other plaintiffs required by *Hytrin*, these additional plaintiffs would all have to produce documents, answer interrogatories and be deposed.  Not surprisingly, courts in this Circuit, and even courts in the Eleventh Circuit where *Hytrin* was handed down, continue to certify nationwide classes without first requiring 51 named plaintiffs who suffered the same type of injury, distinguished only by where they live.  *See, e.g., In re Lorazepam and Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) (certification of third party payor class for settlement purposes)*; Allapattah Services, Inc. v. Exxon Corp.*, 188 F.R.D. 667 (S.D. Fla. 1999) (certifying nationwide class), *aff'd*, 333 F.3d 1248 (11th Cir. 2003); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004) (affirming nationwide settlement of a class of consumers and  third party payors from 50 states); *In re Synthroid Mktg. Litig.*, 188 F.R.D. 295 (N.D. Ill. 1999) (certifying class of consumers for 50 states); *see also In re Prudential Ins. Co. of American Sales Practices Litig.*, 962 F. Supp. 450, 525 (D.N.J.

-5-

1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).[5]

Based on the above, Plaintiffs have standing to assert both their federal and state claims against Defendants.

**B.    United Food, a Health and Welfare Fund,
        Has Been Injured and Therefore Has Standing**

In the SAC, it is alleged that "United Food has paid or reimbursed for its participants' purchases of Ovcon 35 at supracompetitive prices during the Class Period." SAC at ¶ 12. Despite these allegations, Defendants contend that United Food – a trust fund established for the purpose of providing health benefits to eligible participants – does not have legal standing because trusts can never suffer "injury." For this unusual proposition, Defendants rely on *Seafarers Welfare Plan v. Philip Morris*, 27 F. Supp. 2d 623, 627 (D. Md. 1998), in which certain third party payors attempted to sue tobacco companies to recover costs related to smoking-related illnesses suffered by their participating union members. *Seafarers* relies *entirely* on an earlier tobacco opinion, *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 1998 WL 212846 (E.D. Pa. 1998).

Although not mentioned in Defendants' Joint Motion to Dismiss, *Steamfitters* was in fact appealed to the Third Circuit. Regarding the issue of whether a trust fund could ever suffer a "cognizable injury," the Third Circuit took exception to the district court's conclusions:

---

[5]    Whether Plaintiffs are "adequate representatives" for all the claims they assert on behalf of absent members that reside in other states should await this Court's ruling on class certification. *See Buspar*, 185 F. Supp. 2d at 377 ("When a class action raises common issues of conduct that would establish liability under a number of different States' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute."); A. Conte and H. Newberg, Newberg on Class Actions (4th Ed. 2002) at § 2.7 ("Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.").

> [T]he District Court also dismissed plaintiff's complaint on the ground that the Funds have suffered no cognizable injury. We seriously doubt that this was an appropriate basis for dismissing the complaint. The plaintiffs clearly could not go at will to the employers who funded their health plans for a replenishment any time they needed more money. Increased costs likely necessitate reduced expenditures in other areas, as well as reductions in the Funds' reserves. Simply because they are not the ultimate source of the money used to pay for smoking-related illnesses does not mean that the Funds have suffered no legally cognizable injury.

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc*., 171 F.3d 912, 921 n. 4 (3d Cir. 1999) (choosing not to resolve the "injury" issue because it could affirm the district court on other grounds).[6]

In the SAC, United Food has alleged that it was injured by paying or reimbursing for its members' purchases of Ovcon at supracompetitive prices. Nothing more is needed to be alleged for United Food to have standing in this case. *See Lorazepam & Clorazepate Antitrust Litig*., 295 F. Supp. 2d 30 (D.D.C. 2003) (cited in the Joint Motion to Dismiss) (finding third party payor standing because it paid for prescription drug costs for its members).

---

[6] If Defendants were attempting to also argue that third party payor standing in a pharmaceutical antitrust case is similar to third party payor standing in a tobacco case, this argument has been soundly rejected by various courts. *See, e.g.*, *In re K-Dur Antitrust Litig*., 338 F. Supp. 2d 517, 543 (D.N.J. 2004) ("To the extent that "Third-Party Payors have pled that they reimbursed insured members for the costs of K-Dur products themselves, and not for any alleged health costs relating to consumption of the drug, . . . they appear to have sufficiently pled a direct injury to survive a motion to dismiss."); *In re: Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 531 (3d Cir. 2004) ("It is well recognized that a purchaser in a market where competition has been wrongfully restrained has suffered an antitrust injury, and in this case, TPP's are such purchasers."); *Service Employees Int'l v. Abbott Laboratories*, 2005 WL 528323 (N.D. Cal. 2005) (Smoking cases are easily distinguishable because health care providers are not consumers in the tobacco market; paying artificially inflated prices for a pharmaceutical provides sufficient injury to have standing under the Sherman Act.).

**C.    Plaintiffs Properly and Adequately Allege the Elements of Their State-Law Claims**

**1**.    **District of Columbia's Antitrust Statute**

In Count II, Plaintiffs allege that Defendants' agreement is in violation of the District of Columbia's antitrust statute, D.C. Code §§ 28-4501, *et seq*.  Defendants argue that the statute reaches only conduct that occurs solely in intrastate commerce.  They cite a federal Maryland case, *Sun Dun, Inc. v. Coca Cola Co.*, 770 F. Supp. 285, 288 (D. Md. 1991), which, on a motion for summary judgment, dismissed plaintiffs' claims because they involved an "interstate link."  Even if this issue were ripe for review on a motion to dismiss,[7] Defendants should not be relying on *Sun Dun* because the Maryland court incorrectly interpreted D.C. law.  Thus, although Plaintiffs do in fact allege that Defendants' unlawful conduct had a substantial effect upon interstate commerce, the D.C. antitrust statute is nevertheless applicable.

D.C. Code. § 28-4502 provides that "Every contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce all ***or any part of which*** is within the District of Columbia is declared to be illegal."  If § 28-4502 applies to a restraint of trade that affects commerce, of which only part of the affected commerce is within the District of Columbia, it is clear that the Act was intended to also apply to conspiracies that affected interstate commerce.

Defendants do not contend that the Act cannot reach commerce occurring outside the District of Columbia; rather they argue that, based on *Sun Dun*, it would violate the Commerce Clause if the Act was so applied.  The *Sun Dun* court reached  its conclusion based on its belief that the Supreme Court forbids state regulation of antitrust conduct that even touches upon interstate commerce, or,

---

[7]  Needless to say, based on *Sun Dun*, the Court could simply find that this issue should not be resolved until Defendants file a motion for summary judgment and Plaintiffs have had an opportunity to conduct discovery on this issue.

as the court put it, conduct that has "an interstate link."  Specifically, the *Sun Dun* court held that the only way the D.C. antitrust statute could apply to antitrust conduct would be if the conduct had no interstate connection and thus fell outside the "scope of the federal antitrust law."  That is, without doubt, an incorrect statement of current law.

In *Healy v. The Beer Institute*, 109 S. Ct. 2491 (1989), the Supreme Court reaffirmed that the Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." It would follow, therefore, if the state statute regulates commerce that does not take place wholly outside the state's borders, then the statute does not violate the Commerce Clause.

Not surprisingly, this Court in *In re Lorazepam & Clorazepate Antitrust Litg.*, 295 F. Supp. 2d 30, 47-50 (D.D.C. 2003), held that, based on *Healy,* the test of whether a state statute violates the Commerce Clause is not whether there is any "interstate link" (as *Sun Dun* proposes) but whether the statute applies "to sales that take place wholly outside the state. . . ."  *Id.* at 47-48.  This Court then concluded that the Illinois Antitrust Act passed constitutional muster because:

> The Illinois Antitrust Act extends not only to illegal antitrust activity that occurs wholly within Illinois, but also to activity which may have effects in that state and which may have occurred, in part, outside of Illinois.

*Id.* at 48.  *See also In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997) (noting that the reach of the Commerce Clause has been "reinterpreted" so that a "state cannot regulate sales that take place wholly outside it."); *Cf. Pharmaceutical Research and Manufacturers of America v. District of Columbia*, 406 F. Supp. 2d 56, 67-68 (D.D.C. 2005) (invalidating a D.C. statute based on *Healy* because the statute at issue "effectively [sought] to regulate transactions that occur wholly out of state" and therefore was "a per se invalid

extraterritorial reach in violation of the Commerce Clause . . . .").

This Court should decline Defendants' invitation to follow *Sun Dun*, and instead follow its own decisions which have correctly interpreted the D.C. Antitrust Statute to apply to conduct that affects interstate commerce as long as that commerce is not "wholly out of state." *See, e.g., GTE New Media Services Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 44-45 (D.D.C. 1998) (denying a motion to dismiss a claim under both the federal and D.C. antitrust laws because conduct both affected interstate commerce (impacted users "across the nation") and intrastate commerce (impacted users "in the District of Columbia")); *Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F. Supp. 2d 75, 88 (D.D.C. 2003) (granting injunction against a regional air carrier under the District of Columbia Antitrust Act while noting that there is "no dispute about whether interstate commerce is affected here.").

## 2.      Louisiana's Antitrust Statute

In *Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 493 So.2d 1149 (La. 1986), the Louisiana Supreme Court decided that Louisiana's antitrust statute "was intended to be sweeping in its breadth." *Id*. at 1154.  As to its adherence to federal antitrust jurisprudence, the Louisiana high court held that "federal analysis is not controlling." *Id*. at 1158.  In *Louisiana ex rel. Leyoub v. Borden, Inc.*, No. 94-3640, 1995 WL 59548, *2 (E.D. La. Feb. 10, 1995), the court rejected an argument that Louisiana antitrust law bars indirect purchaser suits, stating "that [plaintiffs] may be indirect purchasers who are precluded from suing under the federal antitrust laws, does not bar their recovery under state law . . . .  The Louisiana antitrust statute affords a cause of action to 'any person who is injured.'"  The Louisiana courts have never held to the contrary.

Further, Defendants' reliance on *Free v. Abbott Labs.*, 176 F.3d 298 (5th Cir.1999), *aff'd by*

-10-

*equally divided court*, 529 U.S. 333 (2000), is misplaced. In an earlier decisions, *Free v. Abbott Labs.*, 164 F.3d 270 (5th Cir.1999), the Fifth Circuit recognized that no ultimate Louisiana authority existed and certified the indirect purchaser standing issue to the Louisiana Supreme Court. The Louisiana Supreme Court declined to hear the issue in *Free v, Abbott Labs.*, 739 So.2d 216 (La. 1999).

Thus, the Court should not dismiss the Louisiana state law claim.

### 3.    Massachusetts' Consumer Protection Statute

In Count II, Plaintiffs allege a claim under § 9 of the Massachusetts' Consumer Protection Act, Mass. Gen. Laws. Ch. 93A, § 9. Defendants argue that this claim must be dismissed because Plaintiffs did not send a "written demand for relief" thirty days prior to filing this action, as provided for in subsection (3) of § 9. The Massachusetts Supreme Court, however, has held that failing to send a written demand is not necessarily fatal to a § 9 claim. In *York v. Sullivan*, 338 N.E.2d 341, 346-47 (Mass. 1975), the court held that: (1) the thirty-day requirement is not jurisdictional; (2) demand before suit is often a fruitless ceremony; and (3) even if dismissal were proper for failing to file a demand for relief, the dismissal should be without prejudice. *See also Tarpey v. Crescent Ridge Dairy, Inc.*, 713 N.E.2d 975 (Mass. App. Ct. 1999) (permitting demand to be made ***after*** commencement of case).

We agree with Defendants that the Court should analyze the demand-for-relief requirement in view of its underlying policy objectives: (1) to encourage negotiation and settlement; and (2) to allow a defendant to make a settlement offer to operate as a control on the amount of damages which a plaintiff can recover. *Tarpey*, 713 N.E.2d at 983. Given the circumstances of this case and the underlying purposes of the demand requirement, we think giving notice under the Massachusetts law

was, and continues to be, a futile exercise. Before the complaint was filed, it would have been impossible (if not unethical) to discuss settlement for the Class prior to conducting any discovery on the Defendants. Moreover, since we filed, Defendants have not once requested to have settlement negotiations with Plaintiffs. Thus, it is unclear what would be accomplished at this point by sending the demand. For these reasons, Plaintiffs request that the Court find that the demand requirement be waived or satisfied in light of its objectives. *See, e.g.*, *Lilly v. Turboprop East, Inc*., 2004 WL 540445 (E.D. Pa. 2004) (finding failure to file a demand letter "not fatal" to plaintiff's claim because "the policy objectives behind the demand letter requirement" were satisfied).[8]

### 4. Vermont's Consumer Protection Statute

Defendants next contend that, because Plaintiffs "do not allege that they, in fact, purchased Ovcon for their own benefit," we cannot state a claim under Vermont's consumer protection statute, Vt. Stat. Ann. Tit. 9, §§ 2451, *et seq*. By arguing that "Plaintiffs merely reimburse their participants' purchases," Defendants appear to be focusing on the word "purchase" in the statute. This argument fails for the simple reason that Plaintiffs do in fact allege that "Vista pays some or all of the costs of" Ovcon for its members and that United Food "has paid or reimbursed" for its member's purchases. SAC at ¶¶ 12 & 13. Thus, Plaintiffs have specifically alleged that they "paid for" or "purchased" Ovcon, satisfying any "purchase" requirement.

Defendants also seem to get hung up on the phrase "for their own benefit." Plaintiffs do not

---

[8] As stated in the SAC, should the Court believe the notice requirement is still necessary, Plaintiffs are certainly willing to send Defendants a demand for relief. We assume Defendants are forcefully arguing for the demand to be sent so that they can issue a "tender of settlement"; otherwise, they would simply be wasting the Court's time on this issue. If the Court chooses this path, we would respectfully recommend that the Court simply hold the Massachusetts claim in abeyance until we send our demand, receive their tender of settlement, and either settle this action, or notify the Court of an impasse thereby allowing the Massachusetts claim to go forward.

dispute that they did not actually ingest the Ovcon that was purchased, but Defendants overlook the fact that the Vermont Antitrust Act is not limited to purchases made for the purchaser's own benefit. Instead, it also expressly applies to any person (which includes entities like Plaintiffs)[9] "who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods and services not for resale . . . ***but for the use or benefit of his or her business or in connection with the operation of his or her business***." Vt. Stat. Ann. tit. 9 § 2451a(a) (emphasis added). Certainly, it cannot be disputed that Plaintiffs, who provide comprehensive health benefits to their members, have sufficiently alleged that they paid for Ovcon in connection with their businesses or in connection with the operation of their businesses. Thus Plaintiffs have sufficiently alleged a claim under Vermont's Antitrust Statute.

### 5.    Wisconsin's Antitrust Statute

Plaintiffs also allege a claim under Wisconsin's Antitrust Statute, Wis. Stat. §§ 133.01. Defendants maintain that Plaintiffs have not alleged that Defendants' conduct "had an impact within" the State. In paragraph 89 of its SAC, however, Plaintiffs expressly allege that "the conduct complained of herein has substantially affected the people of Wisconsin and had impacts in Wisconsin." SAC at ¶ 89. Wisconsin's Supreme Court has held that this is precisely what needs to be alleged to survive a motion to dismiss. *See Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wisc. 2005) ("A civil plaintiff filing an action under Wisconsin's antitrust act must allege that . . . (2) the conduct complained of "substantially affects" the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominately or exclusively

---

[9] Vermont law defines "person" to include corporations and business entities. *See Ascension Technology Corporation v. McDonald Investments, Inc.*, 327 F. Supp 2d 271, 275-76 (D. Vt. 2003)

outside this state.").

Recently, in *Meyers v. Bayer AG*, 2006 WL 1228957 (Wisc. Ct. App. May 9, 2006), the Wisconsin Court of Appeals relied on *Olstad* to reverse a trial court's decision to dismiss a complaint that had alleged an illegal agreement between drug manufacturers to prevent generic Cipro from coming to market. Bayer, like Defendants here, argued that simply alleging that Wisconsin consumers had paid inflated prices for Cipro due to defendants' conduct was insufficient. Bayer requested the court to hold that plaintiffs should be required to "assert specific harm, such as the number of prescriptions involved or the price paid for those prescriptions." The court of appeals rejected Bayer's argument. Accepting as true the facts alleged, the court held that it was sufficient for plaintiffs to allege that an unlawful agreement existed which inflated the price of Cipro for consumers, and that the Class encompasses consumers from Wisconsin who purchased Cipro during the class period. In this case, Plaintiffs have likewise alleged an illegal agreement which increased the price for Ovcon for all third party payors, and that the proposed class includes third party payors from Wisconsin. Under Rule 8(a) of the Federal Rules of Civil Procedure and the teachings of *Olstad*, nothing more needs to be alleged.[10]

---

[10] The plaintiffs in *Meyers* also alleged that "there are thousands of Wisconsin consumers who purchased Cipro." Similarly, Plaintiffs have alleged that there are thousands of class members, including some in Wisconsin, which purchased Ovcon. Plaintiffs thus believe they have alleged sufficient contacts with Wisconsin. Although it may be overkill, Plaintiffs note that they are currently aware (as probably are defendants) of third party payors who have their principal place of business in Wisconsin and which purchased Ovcon during the class period. To the extent that the Court thinks it necessary to identify a class member from Wisconsin in the SAC, Plaintiffs could comply by amending by interlineation if so required.

-14-

**D.**    **Plaintiffs State a Claim for Unjust Enrichment**

In Count III, Plaintiffs allege facts stating a claim for unjust enrichment against Defendants under the common law of the fifty states and the District of Columbia. Specifically, Plaintiffs allege that: (i) Barr should be forced to disgorge all payments made by Warner Chilcott to keep generic Ovcon off the market; and (ii) Defendants should be forced to disgorge all profits resulting from their unlawful conduct. Defendants main attack on Count III is that "it must be dismissed to the extent it purports to state claims under the common law of states that adhere to the direct purchaser rule of *Illinois Brick*."[11]  At least one court has held otherwise, concluding that plaintiffs must be permitted to allege unjust enrichment claims – even in states that do not permit indirect purchaser actions under their state antitrust statutes because of *Illinois Brick.*

In *In re Cardizem CD Antitrust Litig.*, MDL 1278, Order No. 70 (E.D. Mich. May 23, 2003) (attached hereto as Ex. "A"), the defendants also tried to argue that plaintiffs should not "be permitted to cloak their antitrust claims in unjust enrichment clothing in an end-run around laws that bar recovery for indirect purchasers." In fact, Judge Edmunds reviewed some of the same cases that Defendants have cited (e.g., *Hytrin*), but after careful analysis of defendants' conduct and of current Supreme Court precedent, she was nonplused with defendants' argument:

> [I am] **not** convinced by Defendants' argument that federal and state antitrust law lay waste to common-law claims of unjust enrichment.

---

[11]  Even though it is beyond dispute that Plaintiffs can bring unjust enrichment claims for those states that do not follow *Illinois Brick*, Defendants nevertheless seek to have these claims dismissed as well. Defendants argue that in the *Illinois Brick*-repealer states, Plaintiffs' "exclusive remedy" is each state's antitrust statute for anticompetive conduct. Yet Defendants do not cite one case from any of the jurisdictions at issue that actually holds that a plaintiff cannot assert an unjust enrichment claim for unlawful anticompetitive conduct. *Cf. In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, (E.D. Mich. 2000) (rejecting argument that indirect purchasers who asserted state antitrust claims could not also plead unjust enrichment claims in the alternative).

> [Defendants cannot] support their broad argument that the *Illinois Brick* standing rule should be applied to equitable claims of unjust enrichment merely because they arise from the same nucleus of facts that give rise to Plaintiffs' antitrust and unfair competition claims.

*Id.* at 28 (e.s.).

In reaching her conclusion that *Illinois Brick* is **not** a universal preemption rule, Judge Edmunds first took note of *Miller v. French*, 530 U.S. 327, 340 (2000), in which the Supreme Court cautioned that a federal statute should not be construed to displace a court's traditional equitable jurisdiction absent the "clearest command" or an "inescapable inference" to the contrary. *See also California v. ARC Am. Corp.*, 490 U.S. 93, 101-02 (1989) ("Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies."). Defendants here, like defendants in *Cardizem*, have failed to show that any state which has chosen to follow *Illinois Brick* (by not permitting indirect purchaser claims under their state antitrust statute) also expressly chose to abrogate their citizens' equity-based unjust enrichment claims. Simple inaction on the part of the various states' legislatures in not "repealing" *Illinois Brick* cannot, as a matter of law, amount to the "clearest command" to abrogate equitable jurisdiction. As Judge Edmunds held, "[t]he mere fact that some states require harmonization of similar state and federal antitrust statutes is not enough to convince this Court that Plaintiffs' unjust enrichment claims cannot survive Defendants' Rule 12(b)(6) motion to dismiss." *Cardizem*, at 28.[12]

Most important to Judge Edmunds, however, is the fact that:

---

[12] It is simply incontrovertible that *Illinois Brick* does not act as a universal preemption rule regarding other statutory claims even if based on antitrust conduct. Several states that follow *Illinois Brick* to prevent indirect actions under their antitrust statutes, ***do not*** follow *Illinois Brick* to prevent indirect purchaser claims under their consumer protection laws. *See, e.g.*, *Ciardi v. F. Hoffman-La Roche, Ltd.*, 762 N.E.2d 303 (Mass. 2002); *Mack Bristol-Myers Squibb Co.*, 673 So.2d 100 (Fla. 1st DCA 1996).

> the concerns that led to adoption of the no-standing rule in *Illinois Brick* and its progeny are absent under Plaintiffs' equitable claims of unjust enrichment. The *Illinois Brick* Court's decision flows from its concerns that private antitrust enforcement would be hindered if courts were forced to sort out and apportion damages from overcharges that may have been passed on from direct to indirect purchasers. Additionally, the Court was also concerned that, if both direct and indirect purchasers had antitrust standing and could sue for the same overcharges, the potential for duplicative recoveries for the same antitrust injury would exist.

*Id.* at 31 & 32. Ultimately, Judge Edmunds held that seeking ill-gotten gains (the payments made by a brand-name drug company to a generic drug company to keep a generic product off the market) rather than seeking to be compensated for actual overcharges does not implicate *Illinois Brick's* concerns. Likewise, here, Plaintiffs are seeking Defendants' ill-gotten gains – (i) ***the payments*** Warner Chilcott made to Barr; and (ii) ***the profits*** that both Defendants made by virtue of keeping the generic off the market.

In sum, because Plaintiffs have stated the elements for unjust enrichment, and because these claims are not subject to (much less barred by) the limitations imposed by *Illinois Brick*, Defendants' Joint Motion to Dismiss Count III should be denied.

### III. CONCLUSION

For the foregoing reasons, Defendants' Joint Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

/s/ Kevin B. Love
Kevin B. Love (pro hac vice)
**HANZMAN, CRIDEN & LOVE, P.A.**
7301 S.W. 57th Court, Suite 515
South Miami, Florida 33143
Telephone: (305) 357-9000
Facsimile: (305) 357-9050

-17-

/s/ L. Kendall Satterfield
L. Kendall Satterfield (Bar # 393953)
Michael G. McLellan (Bar # 489217)
**FINKELSTEIN, THOMPSON & LOUGHRAN**
1050 30th Street, N.W.
Washington, D.C. 20007
Phone: (202) 337-8000
Facsimile (202) 337-8090

Jay Shapiro
**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
150 W. Flagler Street, Suite 2200
Miami, Florida 33130
Phone: (305) 789-3200
Facsimile (305) 789-3229

Marc A. Wites
**WITES & KAPETAN, P.A.**
4400 North Federal Highway
Lighthouse Point, FL 33064
Phone: (954) 570-8989
Facsimile (954) 428-3929

Joseph C. Kohn
William E. Hoese
Joshua Snyder
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Phone: (215) 238-1700
Facsimile: (215) 238-1968

Eric L. Young
**KENNEY LENNON & EGAN**
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
Phone: (610) 940-9099
Facsimile: (610)-940-0284

***Attorneys for Plaintiffs***

-18-