this argument.[8] See *Brothers*, 95 N.Y.2d at 299 (concluding that clear statements in the legislative history could support such a conclusion). Rather, it reveals that the impetus for enactment was the New York Legislature's conclusion that recent case law had made it necessary to amend the Donnelly Act to expressly provide for a different interpretation than federal precedent if it wanted to grant indirect purchasers the right to recover for antitrust injuries.

### 2. Donnelly Act - Unilateral Conduct

The Court now addresses Defendants' argument that the Donnelly Act does not include any provision comparable or analogous to Section 2 of the Sherman Act with its prohibitions against monopolization and attempted monopolization, and thus Plaintiff's Donnelly Act claims should be dismissed because they are based on unilateral conduct.

---

[8] A memorandum from the amendment's senate sponsor reveals that the Legislature's intent was to "allow indirect purchasers who are third parties in transactions impacted by illegal monopolies to have legal recourse against these activities." (Andrx State A.G. Reply, Ex. D, New York State Senate Introducer's Memorandum in Support at 1.) It further reveals that, in light of "current state and federal case law governing antitrust litigation", New York indirect purchasers were prevented from "commencing an action against manufacturers for antitrust violations such as price-fixing." *Id.* "Accordingly, for New York indirect purchasers to commence or join an action for antitrust violations a specific statute making standing express under New York law must be enacted." *Id.* at 2. A letter from that same senate sponsor further acknowledges that, although arguments have been made that the legislative history of the Donnelly Act justifies a different interpretation, two courts have recently denied standing to indirect purchasers under that Act. (Andrx State A.G. Reply, Ex. E, James Lack letter to James McGuire, Counsel to the Governor, at 2 citing Robert F. Roach, Asst. Attorney General, Section Chief, Antitrust Bureau, N.Y. Atty. General's Office, *Revitalizing Indirect Purchaser Claims: Antitrust Enforcement Under New York Law*, 12 Pace L. Rev. 9-14 (1993) and *Levine v. Abbott Labs., et al.*, Index No. 117320/95). "Accordingly, for New York indirect purchasers to commence or join an action for antitrust violations a specific statute making standing express under New York law must be enacted." *Id.* at 2.

This Court has examined Plaintiffs' First Amended Complaint and concludes that Excellus has alleged more than unilateral conduct by Defendant Aventis. It is alleged that Defendant Aventis' engaged in a series of agreements and attempted agreements that involved actions undertaken by it and others. (Compl. ¶¶ 62, 100) (referring to Defendants' collusive and concerted action). Defendants' reliance on *State v. Mobil Oil Corp.*, 344 N.E.2d 357, 359, 361 n.4 (N.Y. 1976) is misplaced. There, the court held only that the Donnelly Act did not apply to unilateral price discrimination because such single-firm conduct is not covered by the Sherman Act, on which the Donnelly Act is modeled. See *id.* at 358-360. Unlike the plaintiffs in *Mobil Oil*, Plaintiffs here do not allege that Aventis acted alone.

### C. Duplicate Recovery Arguments

Blue Cross Plaintiffs assert claims on their own behalf and on behalf of their self-funded customers for whom they have authority to pursue and recover plan-related losses; i.e., employer-sponsored health plans that Plaintiffs administer. (Compl. ¶¶ 12-15.) Defendants argue that, to the extent Blue Cross Plaintiffs are asserting claims on behalf of individuals or entities already covered in the State Law Plaintiffs' action or the State Attorneys General's action, Blue Cross Plaintiffs' claims should be dismissed. Defendants have entered into a Class Action Settlement Agreement with the State Law and State Attorneys General Plaintiffs, and the Blue Cross Plaintiffs have filed notices of exclusion from the class settlement on behalf of themselves and those class members on whose behalf they claim they have authority to execute a Notice of Exclusion. Defendants have

not presented the Court with authority supporting a dismissal of the Blue Cross Plaintiffs' claims as duplicate under these circumstances.

### D. Declaratory Relief

Defendants argue that the Blue Cross Plaintiffs' claim for declaratory relief in the form of a judgment declaring that the HMRI/Andrx Agreement is a *per se* violation of both the Sherman Act and the Michigan Antitrust Reform Act is moot in light of this Court's *per se* ruling. *See In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 682, 706-707 (E.D. Mich. 2000). This argument is without merit. Defendants have appealed this Court's ruling. The matter has been fully briefed and argued before the Sixth Circuit, but that Court has not yet ruled and thus Plaintiffs' claims are not moot. An actual controversy still exists between these parties on this issue. *See Fleet Aerospace Corp. v. Holderman*, 848 F.2d 720, 723 (6th Cir. 1988) (observing that "[m]ootness is determined by examining whether an actual controversy between the parties exists in light of intervening circumstances.").

### E. Unjust Enrichment Claims

The Blue Cross Plaintiffs assert claims for unjust enrichment under the laws of Massachusetts, Michigan, Minnesota, and New York. (Compl. ¶¶ 258-277.) Defendants argue that: (1) unjust enrichment claims are recoverable only when an adequate remedy at law is unavailable; (2) under Massachusetts law, Plaintiffs must plead the absence of an adequate remedy at law to survive a Rule 12(b)(6) motion to dismiss; (3) under Michigan law, Plaintiffs must plead that payment was made by mistake, coercion, or request by the defendant; (4) under New York law, Plaintiffs must allege that the plaintiffs and defendants were in privity; and (5) Blue Cross Plaintiffs cannot assert unjust

22

enrichment claims under Massachusetts or New York law in an end-run attempt to avoid state antitrust law barring indirect purchasers from recovery.

### 1. Whether Plaintiffs Must Plead Facts Showing the Absence of an Adequate Remedy at Law

#### a. General Arguments

Defendants argue generally that Plaintiffs' equitable claims of unjust enrichment must be dismissed at the pleading stage because Plaintiffs have not and cannot plead facts proving that they have no adequate remedy at law. This argument lacks merit.

This Court has already rejected the argument that Plaintiffs' claims must be dismissed because they fail to allege the absence of an adequate remedy at law. *See In re Cardizem CD Antitrust Litig.* 105 F. Supp.2d at 671, n.25. *See also* Fed. R. Civ. P. 8(e)(2).[7] The additional arguments Defendants raise here do not persuade the Court to alter its prior ruling. *See* 1 *Moore's Federal Practice* § 2.03[2] (Matthew Bender 3d ed.) (observing that "[i]t is not generally a ground for dismissal of a complaint asserting equitable claims that the plaintiff has an adequate remedy at law.").

The decisions Defendants rely upon do not support their argument that Plaintiffs must plead facts showing the absence of an adequate legal remedy to survive a Rule 12(b)(6)

---

[7]Fed. R. Civ. P. 8(e)(2) provides that:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

23

motion on their unjust enrichment claims.[3] The mere fact that this may be an essential element of Plaintiffs' claim thus requiring them to prove the lack of an adequate legal remedy to succeed on the merits does not mean that Plaintiffs are precluded from pleading

---

[3] *See Laborers & Operating Eng'rs v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 951 (D. Ariz. 1999) (applying Arizona law and dismissing unjust enrichment claim because the plaintiff fund had not and could not plead or prove an essential element of its unjust enrichment claim; i.e., that it had conferred a benefit on the defendant tobacco companies when it made payments to medical service providers on behalf of fund beneficiaries); *Khoury Factory Outlets, Inc. v. Snyder*, No. 11,568, 1996 WL 74725, at *11 (Del. Ch. Ct. Jan. 8, 1996) (concluding after a trial on the merits that the chancery court did not have subject matter jurisdiction over the plaintiff's claims because, in essence, the parties' dispute was over the terms of a lease and the plaintiff was seeking money damages and replevin of personal property, not the equitable remedies available under an unjust enrichment claim); *Iowa Waste Sys., Inc. v. Buchanan County*, 617 N.W.2d 23 (Iowa Ct. App. 2000) (affirming grant of summary judgment to defendant on plaintiff's unjust enrichment claims because plaintiff had not met its burden of establishing the essential elements of that claim); *Caldwell Wholesale Co. v. Cent. Oil & Supply Co.*, 761 So.2d 884, 888-89 (La. Ct. App. 2000) (reversing decision of trial court granting plaintiff relief on his claim of unjust enrichment after bench trial because the record did not support the conclusion that plaintiff had established the essential elements of an unjust enrichment claim); *Ben Elfman & Son, Inc. v. Criterion Mills, Inc.*, 774 F. Supp. 683 (D. Mass. 1991) (applying Massachusetts law and granting defendant's motion for summary judgment on plaintiff's unjust enrichment claim seeking compensation for services covered under the parties' distributorship agreement because, in light of that express contract, the plaintiff was unable to prove it lacked an adequate remedy at law for its claims); *Eyde v. Empire of Am. Fed. Sav. Bank*, 701 F. Supp. 126, 130 (E.D. Mich. 1988) (applying Michigan law on a motion for summary judgment and dismissing the plaintiff's request for equitable relief in the form of an accounting because discovery provided an adequate legal remedy for determining plaintiff's money damages); *Bombardier Capital, Inc. v. Richfield Housing Center, Inc.*, Nos. 91-CV-750, 91-CV-502, 1994 WL 118294, *8 (N.D. N.Y. March 21, 1994) (granting summary judgment in favor of the plaintiff and dismissing the plaintiff's unjust enrichment claim, observing that "[w]here there is an adequate remedy at law, such as that allowed in this case under plaintiff's breach of contract claim, plaintiffs cannot be permitted also to collect on a theory of unjust enrichment. . . . Plaintiff's unjust enrichment claim is therefore mooted by the granting of summary judgment as to liability on the contract claim"); *Struksnes v. Kevin's Plumbing & Heating, Inc.*, 572 N.W.2d 815, 818 (N.D. 1997) (rejecting unjust enrichment claim on the merits at summary judgment because the undisputed facts did not establish the essential elements of that claim); *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 597 (Tenn. 1998) (rejecting unjust enrichment claim on the merits at summary judgment because the plaintiff was unable to establish the essential elements of that claim).

24

in the alternative both legal and equitable claims for relief. See 1 *Moore's Federal Practice* § 2.03[3]. This Court disagrees with *Stationary Eng'rs Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.*, No C-97-01519 DLJ, 1998 WL 476285, at *18 (N.D. Cal. Apr. 30, 1998) to the extent it holds otherwise.

Further, Plaintiffs are not alleging an alternative unjust enrichment claim based on a breach of an implied-in-law contract when the subject matter of that claim is covered by an express contract. Accordingly, decisions holding that an equitable unjust enrichment claim cannot be pled under those circumstances are easily distinguishable and do nothing to advance Defendants' arguments.[9]

This Court now addresses Defendants' more specific arguments that the Blue Cross Plaintiffs cannot state a claim for relief under Massachusetts, Michigan, and New York law.

---

[9] *See Klusty v. Taco Bell Corp.*, 909 F. Supp. 516 (S.D. Ohio 1995) (observing that "Ohio does not recognize unjust enrichment as an alternative theory of recovery when an express contract covers the same subject"); *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078 (S.D. Ohio 1992) (observing that Ohio law does not recognize extra-contractual remedies where an express contract governs the parties' relationship). *Accord Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326-27 (S.D. Fla. 2000) (observing that, under Florida law, "quantum meruit damages cannot be awarded when an enforceable contract exists" and granting defendant's Rule 12(b)(6) motion on this claim because the plaintiff failed to "allege that an adequate remedy at law does not exist, and nothing in the Amended Complaint or arguments of the parties indicate[d] that such a situation exist[ed]."); *Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. Dist. Ct. App. 1987) (affirming a final judgment in favor of the defendant and observing that, under Florida law "the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy—here, an action on the presumably valid Final Contract."); *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, ___, 2002 WL 246575, at *22 (S.D. Fla. Feb. 20, 2002) (dismissing the plaintiffs' unjust enrichment claims because, under Florida law, "an unjust enrichment claim can only be pled in the alternative if one or more of the parties contest the existence of an express contract governing the subject of the dispute", and neither party had done so).

25

### b. Specific Arguments (Massachusetts, Michigan, and New York)

The Massachusetts decision Defendants rely upon does not support the argument that Plaintiffs must plead facts showing the absence of an adequate legal remedy to survive a Rule 12(b)(6) motion on an unjust enrichment claim. In *Ben Elfman & Son, Inc. v. Criterion Mills, Inc.*, 774 F. Supp. 683 (D. Mass. 1991), the district court applied Massachusetts law and granted the defendant's motion for summary judgment on the plaintiff's unjust enrichment claim seeking compensation for services covered under the parties' distributorship agreement. It did not hold, as Defendants contend, that a plaintiff must plead the absence of an adequate remedy at law to survive a Rule 12(b)(6) motion. Rather, an unjust enrichment claim is stated under Massachusetts law, similar to Michigan and New York law, when the plaintiff pleads that the receipt of a benefit by the defendant from the plaintiff under circumstances in which it is inequitable for the defendant to retain that benefit. See *Brandt v. Wand Partners*, 242 F.3d 6, 16 (1st Cir. 2001) (citing *White v. White*, 346 Mass. 76 (1963); *Nat'l Shawmut Bank of Boston v. Fidelity Mut. Life Ins. Co.*, 318 Mass. 142 (1945); and *Keller v. O'Brien*, 425 Mass. 774 (1997)).

Defendants' argument that Plaintiffs' unjust enrichment claims must be dismissed under Michigan law is likewise without merit. This Court has observed that a plaintiff need not plead direct payments to the defendant; rather "the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct." *In re Cardizem CD Antitrust Litig.*, 105 F. Supp.2d at 671. Here, the Blue Cross Plaintiffs plead that their detriment and Defendants' benefit are related and flow from Defendants' illegal conduct. Moreover, contrary to Defendants' assertions otherwise, Michigan law

26

does not require the plaintiff to plead that the payment was by mistake, coercion, or request. Rather, those are merely examples of unjust enrichment claims. *See Estate of McCallum*, 395 N.W.2d 258, 261 (Mich. App. 1986) (observing that the essential elements of an unjust enrichment claim under Michigan law are: "(1) receipt of a benefit by the defendant from the plaintiff and (2) which benefit it is inequitable that defendant retain.").

Defendants' argument that New York law requires privity also fails. The required elements for an unjust enrichment claim under New York law are: (1) defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) defendant's retention of the benefit would be unjust. *See Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 669 (S.D.N.Y. 2000). Privity of contract is not a required element. *See id.* The court in *Metropolitan Electric Manufacturing Co. v. Herbert Construction Co.*, 583 N.Y.S.2d 497, 498 (N.Y. App. Div. 1992), did not hold otherwise. Rather, the *Metropolitan Electric* Court dismissed the plaintiff's unjust enrichment claim based on a quasi-contract theory against defendants who were not in privity with the subcontractor who ordered and refused to pay for goods supplied by the plaintiff. The Court observed that absent privity between these defendants and the subcontractor or evidence that these defendants "by their actions, assumed an obligation to pay for the goods" ordered by the subcontractor, the "plaintiff's sole remedy" was against the subcontractor. *Id.* at 498.

### 2. Whether the Blue Cross Plaintiffs' Unjust Enrichment Claims Constitute An Impermissible "End-Run" Around the Indirect Purchaser Bar Applied In Massachusetts and New York Antitrust Statutes

Defendants also argue that Blue Cross Plaintiffs cannot assert unjust enrichment claims under Massachusetts and New York law in an end-run attempt to avoid state

27

antitrust law barring indirect purchasers from recovery.[10] The gist of Defendants' argument is that this Court should not allow state antitrust laws (which are harmonized in many states with federal antitrust law) to be circumvented by Plaintiffs' common-law unjust enrichment claims which seek to remedy the same anti-competitive conduct that would give rise to a state antitrust claim. Plaintiffs should not, they argue, be allowed to cloak their antitrust claims in unjust enrichment clothing in an end-run around laws that bar recovery for indirect purchasers.

This Court is not convinced by Defendants' argument that federal and state antitrust laws lay waste to common-law claims of unjust enrichment. The mere fact that some states require harmonization of similar state and federal antitrust statutes is not enough to convince this Court that Plaintiffs' unjust enrichment claims cannot survive Defendants' Rule 12(b)(6) motion to dismiss. With the exception of the district court decision in *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380-81 (S.D. Fla. 2001), which this Court believes decided this issue incorrectly, the cases Defendants rely upon are distinguishable and do not support their broad argument that the *Illinois Brick* standing rule should be applied to equitable claims of unjust enrichment merely because they arise from the same nucleus of facts that give rise to Plaintiffs' antitrust and unfair competition claims.[11]

---

[10] As discussed above, indirect purchasers do not have standing to sue for antitrust damages under the Massachusetts Antitrust Act, and prior to December 23, 1998, New York's Donnelly Act similarly precluded such recovery for indirect purchasers.

[11] See *Free v. Abbott Labs., Inc.*, 176 F.3d 298, 301 (5th Cir. 1999) (predicting that Louisiana's highest court would follow *Illinois Brick* and deny antitrust standing to indirect purchasers under Louisiana's antitrust laws because the *Illinois Brick* rule "places the incentive to sue on the party best suited to recover"); *Boos v. Abbott Labs., Inc.*, 925 F.

28

Supp. 49, 54 (D. Mass. 1996) (holding, in a case that did not present common-law unjust enrichment claims, that even if a common-law antitrust claim existed prior to enactment of Massachusetts' antitrust act, such claims were now preempted by that act; and certifying to Supreme Judicial Court of Massachusetts the question whether indirect purchasers had standing to sue under that state's consumer protection act although barred under the state's antitrust act); *Ciardi v. F. Hoffman La Roche, Ltd.*, 436 Mass. 53, 762 N.E.2d 303 (Mass. S. Ct. 2002) (answering certified question and holding that indirect purchasers can assert claims for price-fixing or other anticompetitive conduct under Massachusetts's consumer protection act, G.L.c. 93A, even though they have no standing to bring such claims under the Massachusetts Antitrust Act, G.L.c. 93, § 1-14A); *Stifflear v. Bristol-Myers Squibb Co.*, 931 P.2d 471 (Colo. App. 1996) (holding that Colorado's Antitrust Act does not allow indirect purchasers standing to sue); *Vacco v. Microsoft Corp.*, 793 A.2d 1048 (Conn. 2002) (holding that Connecticut's antitrust and unfair trade practices acts do not allow indirect purchaser standing); *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (Ill. 1990) (refusing to construe Illinois' consumer fraud act in a manner that would allow a private cause of action for discriminatory pricing when the legislature has refused to allow similar actions under the state's antitrust act); *Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. 1996) (same); *Comes v. Microsoft Corp.*, No. 82311, 2000 WL 33176061, at *6 (Iowa Dist. Ct. July 11, 2000) (holding that the *Illinois Brick* standing rule applies to Iowa's competition law because the state and federal statutes have similar language and the Iowa statute requires harmonization of state and federal antitrust law), rev'd, 646 N.W.2d 40 (Iowa 2002) (holding that indirect purchasers do have standing to sue under Iowa's competition law even though federal antitrust law is to the contrary and further holding that Iowa's statute requiring harmonization of state and federal antitrust law was intended to supplement rather than displace state antitrust remedies); *Arnold v. Microsoft Corp.*, No. 00-CI-00123, 2001 WL 193765, at *3 (Ky. Cir. Ct. July 21, 2000) (holding that the *Illinois Brick* standing rule applies to Kentucky's antitrust act); *Ireland v. Microsoft Corp.*, No. 00CV-201515 (Mo. Cir. Ct. Jan. 24, 2001) (holding *Illinois Brick* standing rule applies to Missouri's antitrust and merchandising practices acts); *Keiffer v. Mylan Labs.*, No. BER-L-365-89-EM, 1989 WL 1587726 (N.J. Super. Ct. Sept. 9, 1989) (holding *Illinois Brick* standing rule applies to New Jersey's antitrust and consumer fraud acts); *Tip Top Farms, Inc. v. Dairylea Cooperative, Inc.*, 497 N.Y.S.2d 99, 105 (N.Y. App. Div. 1985) (holding, in a suit alleging federal rather state law antitrust claims, that an indirect purchaser plaintiff cannot obtain a remedy from a direct purchaser under state-law breach of contract or money had and received claims because "to allow the indirect purchaser to recover from the direct purchaser the amount of the illegal overcharges that had been passed on to it, pursuant to a cost-plus requirements contract that did not fall within an exception to the *Illinois Brick* rule, would severely impair the private enforcement of the Federal antitrust laws"); *Reliance Nat'l Ins. Co. v. Royal Indem. Co.*, No. 99 Civ. 10920 NRB, 2001 WL 984737, *15 (S.D.N.Y. Aug. 24, 2001) (holding, in insurance coverage declaratory judgment action, that the New York legislature enacted a comprehensive regulatory scheme regarding insurance contracts that "supplants ordinary common law remedies"); *Major v. Microsoft Corp.*, No. CJ-2000-1704, at 2, 8-9, 2002 WL 1585849 (Okla. Dist. Ct.

29

The Supreme Court has cautioned that federal statutes should not be construed to displace a court's traditional equitable jurisdiction absent "the 'clearest command' or an 'inescapable inference' to the contrary. . . ." *Miller v. French*, 530 U.S. 327, 336 (2001) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979)). This cannon of construction is equally applicable under Massachusetts and New York law. *See Eyssi v. City of Lawrence*, 618 N.E.2d 1358, 1361, n.8 (Mass. 1993) (observing that Massachusetts courts follow "the rule of interpretation whereby statutes are not construed to abrogate common law rights in the absence of explicit statutory language"). *See also* N.Y. Stat. Law § 301(b) (providing that "[t]he common law is never abrogated by implication, but on the contrary it must be held no further changed than the clear import of the language used in a statute absolutely requires"). Defendants have not shown the required explicit statutory language abrogating Plaintiffs' equity-based unjust enrichment claims. Accordingly, this Court is not convinced

---

May 24, 2002) (reaffirming its previous holding "that the *Illinois Brick* direct purchaser rule was incorporated into Oklahoma law when Oklahoma enacted its Antitrust Reform Act" in 1998 and further holding that indirect purchasers cannot bring claims under the Oklahoma Consumer Protection Act that are predicated on the same factual allegations underlying a state antitrust claim because Iowa law requires harmonization of state and federal antitrust law), aff'd 60 P.3d 511 (Okla. Ct. App. 2002); *Siena v. Microsoft Corp.*, No. 2000-472-Appeal, (PC 00-1647), at 6 (R.I. S. Ct. May 9, 2002) (holding that, under Rhode Island's antitrust law, only direct purchasers or the Attorney General as *parens patriae*, has standing to litigate antitrust violations); *Abbott Labs., Inc. v. Segura*, 907 S.W.2d 503, 507 (Tex. 1995) (holding that indirect purchasers cannot recover under the Texas Deceptive Trade Practice-Consumer Protection Act when claims are based upon allegations that would require a similar ruling under that state's antitrust laws which do not allow indirect purchasers standing to sue); and *Blewett v. Abbott Labs.*, 938 P.2d 842, 844 (Wash. Ct. App. 1997) (holding *Illinois Brick* standing rule applies to Washington's consumer protection act because the act is modeled on federal antitrust law and "the Legislature has instructed courts to be guided by federal law when construing" that act).

that the state antitrust laws at issue here exclude Plaintiffs' common-law claims seeking equitable relief for Defendants' unjust enrichment at Plaintiffs' expense. There are additional reasons why the Court finds Defendants' arguments unpersuasive.

First, Defendants ignore the fact that Plaintiffs' state-law antitrust and unjust enrichment claims present "wholly separate causes of action." *In re Lorazepam & Chlorazepate Antitrust Litig.*, 202 F.R.D. 12, 20 (D. D.C. 2001) (rejecting the defendant's argument that a successful petition by the F.T.C. to disgorge profits under Section 13(b) of the Federal Trade Commission Act deprived direct purchasers of standing to sue for damages under the antitrust laws). The former provides a remedy at law; the latter provides an equitable remedy that can be awarded only after Plaintiffs have convinced the Court that they lack an adequate legal remedy. *See* 1 *Moore's Federal Practice* § 2.03[3] (Matthew Bender 3d ed.) (observing that "[w]hile a complaint may seek both legal and equitable relief, a court may not grant equitable relief unless it first determines that the party seeking equitable relief has no adequate legal remedy.").

Second, and equally important, the concerns that led to adoption of the no-standing rule in *Illinois Brick* and its progeny are absent under Plaintiffs' equitable claims of unjust enrichment.[12] The *Illinois Brick* Court's decision flows from its concerns that private antitrust enforcement would be hindered if courts were forced to sort out and apportion damages from overcharges that may have been passed on from direct to indirect purchasers. The Court was also concerned that, if both direct and indirect purchasers had

---

[12] To the extent the *Terazosin* Court holds otherwise, this Court disagrees. *See Terazosin*, 160 F. Supp. 2d at 1380.

31

antitrust standing and could sue for the same overcharges, the potential for duplicative recoveries for the same antitrust injury would exist. Those concerns are not present here.

Plaintiffs seek to disgorge Defendants of their ill-gotten gains rather than be compensated for actual overcharges that may have been passed along a chain of distribution from direct to indirect purchasers. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 352. Plaintiffs allege here that the Defendants' illegal conduct allowed HMRI, the branded manufacturer, to preserve its monopoly profits and to use those profits to fund over $89 million in payments to Andrx, the generic manufacturer, and thus induced Andrx to delay market entry of its and others' generic versions of Cardizem CD. Their claim is based upon the equitable principle that seeks to prevent the injustice of a person's retention of a benefit under circumstances that make it inequitable for him to do so. Accordingly, efficient antitrust enforcement is not threatened. Even if it were, there is no need to determine the amount of overcharges passed on from direct to indirect purchasers. Rather, all Plaintiffs seek the same remedy; disgorgement of the tens of millions of dollars that HMRI paid to Andrx in connection with the HMRI/Andrx Agreement. Theirs is an integrated claim arising from their common-law right to have Defendants disgorge the amounts in which they were unjustly enriched at Plaintiffs' expense. The duplicative recovery problem that concerned the Court in *Illinois Brick* is absent here. If Plaintiffs' succeed on their unjust enrichment claims, they will share equally in the disgorged funds.[13]

---

[13]Defendants' misapprehend the nature of Plaintiffs' unjust enrichment claims which seek disgorgement. As the Fifth Circuit Court of Appeals observed in *S.E.C. v. Huffman*, 996 F.2d 800 (5th Cir. 1993), "disgorgement is not precisely restitution. Disgorgement wrests ill-gotten gains from the hands of a wrong-doer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs. Disgorgement does not aim to compensate the victims of the wrongful acts, as restitution does. Thus, a

Moreover, their equitable claims will succeed only if Plaintiffs can prove there is no adequate remedy at law.

### F. BCBS Plaintiffs' Tortious Interference Claims

BCBS Plaintiffs assert claims of tortious interference with contractual relations (Compl., Count XIII, ¶¶ 278-287) and with prospective business advantage (Compl., Count XIV, ¶¶ 288-299) against Defendants under the laws of Massachusetts, Michigan, Minnesota and New York. Defendants move to dismiss these claims because: (1) as to Count XIII, Plaintiffs have not and cannot allege that Defendants caused a breach of Plaintiffs' contracts with prescription benefit managers ("PBMs") and/or pharmacists; and (2) as to Count XIV, Plaintiffs have not and cannot allege that Defendants caused the prescription benefit managers and/or pharmacists to disrupt or terminate any prospective business relationship with Plaintiffs. This Court agrees with Defendants and dismisses the BCBS Plaintiffs' tortious interference claims asserted in Counts XIII and XIV of their First Amended Complaint.

BCBS Plaintiffs do not dispute that they must allege a breach of contract as an element of their state law claims of tortious interference with contractual relations (Count XIII). See *United Truck Leasing Corp. v. Geltman*, 551 N.E.2d 20, 21 (Mass. 1990); *Jim-Bob, Inc. v. Mehling*, 443 N.W.2d 451, 462 (Mich. Ct. App. 1989); *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998); and *NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.*, 664 N.E.2d 492, 495 (N.Y. 1996). Plaintiffs, however, have made no such allegation

---

disgorgement order might be for an amount more or less than that required to make the victims whole." *Id.* at 802 (internal citations omitted).

33

nor have they provided any response as to their ability to do so. Accordingly, their claims in Count XIII are dismissed.

Likewise, despite their assertions to the contrary, BCBS Plaintiffs have not alleged and have not persuaded the Court that they can allege facts required to state a claim for tortious interference with prospective business advantage against Defendants. Plaintiffs have not and cannot allege that Defendants' conduct caused the prescription benefit managers and/or pharmacists to terminate or breach any current or prospective business

relationship with Plaintiffs as required under Michigan,[14] Massachusetts,[15] Minnesota,[16] and New York law.[17]

---

[14] Under Michigan law, to assert a claim for tortious interference with a business relationship or expectancy with a third party, Plaintiffs must allege:

> (1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.*, 438 N.W.2d 349, 354 (Mich. Ct. App. 1989).

[15] Under Massachusetts law, to state a claim for intentional interference with advantageous business relations, the plaintiff must allege and prove:

> (1) the existence of a business relationship or contemplated contract of economic benefit; (2) defendant's knowledge of such relationship; (3) the defendant's intentional and improper interference with that relationship; and (4) the plaintiff's loss of advantage as a direct result of the defendant's conduct.

*Trent Partners and Assoc., Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 112 (D. Mass. 1999) (citing and applying Massachusetts law).

[16] Under Minnesota law, the plaintiff states a claim of tortious interference with prospective business relations by alleging and showing that: "one intentionally and improperly interfere[d] with another's prospective business relation by (1) inducing a third person not to enter into or to continue the prospective relation, or (2) preventing the other from continuing the prospective relationship." *Hough Transit, Ltd. v. Nat'l Farmers Org.*, 472 N.W.2d 358, 361 (Minn. Ct. App. 1991).

[17] Under New York law, to state a claim for tortious interference with prospective business relations, the plaintiff must allege "that [the] plaintiff was actually and wrongfully prevented from entering into or continuing in a specific business relationship as a result of [the] defendants' conduct." *Korn v. Princz*, 641 N.Y.S.2d 283, 283 (N.Y. App. Div. 1996) (internal citations omitted).

35

BCBS Plaintiffs allege that they were harmed by Defendants' intentional anti-competitive conduct which was designed to preclude Plaintiffs from reaping the cost-saving benefits they otherwise would reap under business arrangements they had with PBMs and pharmacists (requiring the substitution of less costly generics in place of the more expensive branded drug Cardizem CD). BCBS Plaintiffs, however, do not allege facts showing that Defendants' conduct caused any third party PBMs or pharmacists to terminate any current or prospective business relationship with BCBS Plaintiffs and thus cannot allege any harm flowing therefrom. See PPX Enter., Inc. v. Audiofidelity Enter., Inc., 818 F.2d 266, 270 (2d Cir. 1987) (applying New York law, holding that the plaintiff "failed to establish an essential element of its claim for tortious interference with prospective economic advantage", and rejecting an argument that "'interference' with the benefits derived from a relationship that leaves the relationship itself unchanged in any way can also constitute interference with the underlying business relations."). Similar to the plaintiff in PPX Enterprises, BCBS Plaintiffs allege that Defendants' intentional anti-competitive conduct interfered with the benefits Plaintiffs derived or could derive from their current or prospective business relationships with third party PBMs and pharmacists. They do not allege facts showing that Defendants' conduct caused these third parties to discontinue their business relationships with BCBS Plaintiffs. Accordingly, BCBS Plaintiffs' claims in Count XIV are dismissed.[18]

---

[18] In light of this Court's dismissal of BCBS Plaintiffs' claims of tortious interference in Counts XIII and XIV, there is no need to discuss Defendants statute of limitation arguments as to those claims or the availability of punitive damages under those claims.

36

III. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part.

_____
Nancy G. Edmunds
U.S. District Judge

Dated: **23 MAY 2003**