**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VISTA HEALTHPLAN, INC. and UNITED FOOD AND COMMERCIAL WORKERS CENTRAL PENNSYLVANIA HEALTH AND WELFARE FUND, <br><br> on behalf of themselves and all others similarly situated, <br><br>             Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., and BARR PHARMACEUTICALS, INC., <br><br>             Defendants. | Civil Action No. 1:05CV02327 <br><br> Judge Colleen Kollar-Kotelly |

**DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................2

ARGUMENT .....................................................................................................3

    I.      PLAINTIFFS LACK STANDING TO MAINTAIN CLAIMS ON
           BEHALF OF RESIDENTS OF OTHER STATES ................................................3

    II.     PLAINTIFF UNITED FOOD IS A TRUST FUND AND DOES NOT
           HAVE STANDING IN THIS ACTION ..................................................................9

    III.    COUNT II OF PLAINTIFFS' COMPLAINT FAILS TO STATE A
           CLAIM UNDER THE LAWS OF FOUR STATES AND THE DISTRICT
           OF COLUMBIA ...............................................................................................10

           A.      Plaintiffs Lack Standing Under the Antitrust Laws of Louisiana..............11

           B.      Plaintiffs Have Failed to Meet the Statutory Requirements of
                  Massachusetts Consumer Protection Law. ..................................................12

           C.      Plaintiffs Have No Claim Under the Consumer Protection Law of
                  Vermont. ....................................................................................................14

           D.      Plaintiffs Have No Claim Under the Antitrust Laws of Wisconsin...........15

           E.      Plaintiffs Have Failed to Adequately Plead a Claim Under the
                  District of Columbia Antitrust Law. ..........................................................16

    IV.    PLAINTIFFS' ALLEGATIONS OF "UNJUST ENRICHMENT"
           PROVIDE NO BASIS FOR RELIEF ..................................................................17

CONCLUSION.................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Aikens v. Microsoft,*
    159 F. App'x 471 (4th Cir. 2005) ............................................................... 19

*Allee v. Medrano,*
    416 U.S. 802 (1974) ............................................................................... 3

*Association for Disabled Americans, Inc. v. 7-Eleven, Inc.,*
    No. Civ. 3:01-CV-0230-H, 2002 WL 546478, (N.D. Tex. Apr. 10, 2002) .............. 7

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) ............................................................................... 5

*Bowen v. First Family Fin. Servs., Inc.,*
    233 F.3d 1331 (11th Cir. 2000) ................................................................. 8

*Caranci v. Blue Cross & Blue Shield of R.I.,*
    194 F.R.D. 27 (D.R.I. 2000) ..................................................................... 7

*Dash v. FirstPlus Home Loan Owner Trust*
    248 F. Supp. 2d 489 (M.D.N.C. 2003) ......................................................... 7

*Doe v. Blum,*
    729 F.2d 186 (2d Cir. 1984) ..................................................................... 4

*Doe v. Unocal Corp.,*
    67 F. Supp. 2d 1140 (C.D. Cal. 1999) ......................................................... 7

*Easter v. American West Fin.,*
    381 F.3d 948 (9th Cir. 2004) ................................................................... 6

*Fallick v. Nationwide Mut. Ins. Co.,*
    162 F.3d 410 (6th Cir. 1998) ................................................................... 5

*Free v. Abbott Labs., Inc.,*
    176 F. 3d 298 (5th Cir. 1999) ............................................................ 11, 12

*FTC v. Mylan Labs., Inc.,*
    62 F. Supp. 2d 25 (D.D.C. 1999) .............................................................. 18

*FTC v. Mylan Labs., Inc.,*
    99 F. Supp. 2d 1 (D.D.C. 1999) ............................................................... 11

*GTE New Media Services Inc. v. Ameritech Corp.,*
    21 F. Supp. 2d 27 (D.D.C. 1998) .............................................................. 16

ii

*Illinois Brick Co. v. Illinois,*
　　431 U.S. 720 (1977)..................................................................................... 11, 17, 21

*In re Buspirone Patent Litigation,*
　　185 F. Supp. 2d 363 (S.D.N.Y. 2002)................................................................ 5

*In re Cardizem CD Antitrust Litigation,*
　　MDL 1278, Order No. 70 (E.D. Mich. May 23, 2003)................................... 18

*In re Eaton Vance Corp. Securities Litig.,*
　　220 F.R.D. 162 (D. Mass. 2004)......................................................................... 6

*In re Lorazepam & Clorazepate Antitrust Litig.,*
　　289 F.3d 98 (D.C. Cir. 2002).......................................................................... 6, 10

*In re Microsoft Corp. Antitrust Litig.,*
　　241 F. Supp. 2d 563 (D. Md. 2003)................................................................... 19

*In re Microsoft Corp. Antitrust Litig.,*
　　401 F. Supp. 2d 461 (D. Md. 2005)................................................................... 18

*In re New Motor Vehicles Canadian Export Antitrust Litig.,*
　　350 F. Supp. 2d 160 (D. Me. 2004) .................................................... 11, 12, 18

*In re Newbridge Networks Secs. Litig.,*
　　926 F. Supp. 1163 (D.D.C. 1996)..................................................................... 15

*In re Relafen Antitrust Litig.,*
　　221 F.R.D. 260 (D. Mass. 2004)......................................................................... 6

*In re Terazosin Hydrochloride Antitrust Litig.,*
　　160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..................................................... 4, 7, 18

*In re Vitamins Antitrust Litig.,*
　　No. 99-197, MDL 1285, 2001 WL 34088807 (D.D.C. Mar. 13, 2001) ........... 20

*James v. City of Dallas,*
　　254 F.3d 551 (5th Cir. 2001) ......................................................................... 7, 8

*Lewis v. Casey,*
　　518 U.S. 343 (1996)............................................................................................. 5

*Louisiana Power & Light Co. v. United Gas Pipe Line Co.,*
　　493 So.2d 1149 (La. 1986) ............................................................................... 11

*Lujan v. Defenders of Wildlife,*
　　504 U.S. 555 (1992)......................................................................................... 3, 6

*Matte v. Sunshine Mobile Homes, Inc.*,
    270 F. Supp. 2d 805 (W.D. La. 2003) ............................................................... 7

*McMahon v. Digital Equip. Corp.*,
    944 F. Supp 70 (D. Mass. 1996) ..................................................................... 12

*Meyers v. Bayer AG*,
    No. 2003AP2840, 2006 WL 1228957 (Wis. Ct. App. May 9, 2006) .............................. 15

*Miller v. Pac. Shore Funding*,
    224 F. Supp. 2d 977 (D. Md. 2002) ................................................................. 7

*Mull v. Alliance Mortgage Banking Corp.*,
    219 F. Supp. 2d 895 (W.D. Tenn. 2002) ........................................................... 7

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................ 3

*Olstad v. Microsoft Corp.*,
    700 N.W. 2d 139 (Wis. 2005) ...................................................................... 15

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ............................................................................. 6, 7

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) .................................................................... 5, 6

*Raines v. Byrd*,
    521 U.S. 811 (1997) ............................................................................. 4, 8

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002) ...................................................................... 7

*Seafarers Welfare Plan v. Philip Morris*,
    27 F. Supp. 2d 623 (D. Md. 1998) ............................................................... 9, 10

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ................................................................................ 8

*State ex rel. Ieyoub v. Borden, Inc.*,
    No. 94-3640, 1995 WL 59548 (E.D. La. Feb. 10, 1995) ............................................ 12

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F. 3d 912 (3d Cir. 1999) ..................................................................... 10

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .............................................................................. 4, 8

*Sun Dun, Inc. v. Coca Cola Co.*,
    770 F. Supp. 285 (D. Md. 1991) ........................................................................ 16

*Tarpey v. Crescent Ridge Dairy, Inc.*,
    713 N.E.2d 975 (Mass. App. Ct. 1999) ........................................................... 13

*Valley Forge Christian Coll. v. Americans United for Separation
    of Church and State, Inc.*,
    454 U.S. 464 (1982) ........................................................................................... 8

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ........................................................................................... 4

*Wilson v. Cont'l Ins. Cos.*,
    274 N.W.2d 679 (Wis. 1979) .......................................................................... 15

*York v. Sullivan*,
    338 N.E.2d 341 (Mass. 1975) ......................................................................... 13

## Statutes

Fla. Stat. Ann. §§ 501.201, *et seq.* ........................................................................ 2

Mass. Gen. Laws ch. 93A, § 9 ............................................................................... 12

Vt. Stat. Ann. tit. 9, § 2451a(a) ............................................................................ 14

## Other Authorities

1 Herbert B. Newberg & Alba Conte,
    *Newberg on Class Actions* § 1:2 (4th ed. 2002) ............................................. 4

*ABA Section of Antitrust Law:  State Antitrust Practice and Statutes* 10-13 (Keith D.
    Shugarman ed., ABA 2004) ............................................................................. 17

*Black's Law Dictionary* 1248 (7th ed. 1999) ....................................................... 14

*Council of the District of Columbia Rep. on Bill 3-107, the District of Columbia Antitrust
    Act of 1980, from the Comm. on the Judiciary to Members of the Council* at 3 ............. 17

# INTRODUCTION

Counts II and III of Plaintiff-third-party payors' Second Amended Class Action Complaint should be dismissed for the reasons set forth in the Defendants' opening brief. Specifically, Plaintiffs simply cannot meet the constitutional requirements necessary to assert claims under state antitrust laws outside of their home states. Therefore, Count II of Plaintiffs' complaint, with the exception of Plaintiffs' claims brought pursuant to Fla. Stat. Ann. §§ 501.201, *et seq.*, should be dismissed.[1] Further, the claims by plaintiff-United Food must also be dismissed because United Food is a trust fund and, as such, does not have standing. Moreover, even if Plaintiffs had standing to assert claims under the laws of states in which they do not reside (and even if plaintiff-United Food had standing), Plaintiffs' claims pursuant to numerous state laws suffer from the same substantive defects as they did in Plaintiffs' prior complaints. Finally, Plaintiffs' generalized equitable claim for "restitution, disgorgement and constructive trust for unjust enrichment" (Count III) is barred by the direct purchaser rule of *Illinois Brick.*

Nothing in Plaintiffs' opposition rebuts these dispositive grounds. Accordingly, Count II, with the exception of Plaintiffs' claims brought pursuant to Fla. Stat. Ann. §§ 501.201, *et seq.*, should be dismissed. Count III of Plaintiffs' Second Amended Class Action Complaint should be dismissed in its entirety.[2]

---

[1]    Plaintiffs do not assert claims under Pennsylvania law, plaintiff-United Food's home state.

[2]    Unless otherwise noted, all *emphasis* herein has been added and internal citations omitted.

## **ARGUMENT**

## I.    **PLAINTIFFS LACK STANDING TO MAINTAIN CLAIMS ON BEHALF OF RESIDENTS OF OTHER STATES**

Plaintiffs have asserted claims under numerous states' laws for which there is no named plaintiff who has incurred an alleged injury under those state laws.[3]  Plaintiffs could not bring a cause of action on behalf of themselves under those states' laws.  It thus makes absolutely no sense to allow them to come into this Court and assert a cause of action on behalf of the residents of those other states.

Plaintiffs purport to justify their overreaching by arguing that because this is a putative class action, this Court can disregard jurisdictional limits and ignore Plaintiffs' lack of standing until class certification.  (Third Party Payor Plaintiffs' Mem. in Opposition ("Pls.' Opp'n") at 3-6.)  The Supreme Court disagrees.  It is well settled that a named plaintiff cannot base his or her individual standing on the injury of putative class members.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *see also Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, C.J., concurring) ("Standing cannot be acquired through the back door of a class action.").  And contrary to Plaintiffs' suggestion that this issue "is premature" (Pls.' Opp'n at 4), the Supreme Court has made clear that "standing is to be determined as of the commencement of suit."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992).  In short, because Plaintiffs' "class action allegation adds nothing to the standing inquiry," *Doe v. Blum*, 729 F.2d 186, 189-90

---

[3]    These states include Arizona, California, the District of Columbia, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

& n.4 (2d Cir. 1984), the named Plaintiffs' standing (or, more appropriately, their lack thereof) should be determined now, and should be decided without any consideration of the possible standing of unidentified putative class members. *See* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 1:2 (4th ed. 2002) ("Significantly, procedural Rule 23 cannot be construed to extend or limit the jurisdiction and venue of federal courts or to abridge, modify, or enlarge any substantive right.").

Ignoring this and other precedent cited in Defendants' opening brief, Plaintiffs contend that enforcing Article III standing in the instant case would follow a "new" and "hitherto unknown" "constitutional standing law" "established" "for the first time" in *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001). (Pls.' Opp'n at 3 (internal quotation marks omitted).) But the requirements of Article III standing can hardly be characterized as "new" or "unknown." *See Raines v. Byrd*, 521 U.S. 811, 820 (1997) (stating Article III reflects a "time-honored concern about keeping the Judiciary's power within its proper constitutional sphere."). Defendants simply request this Court apply the well-settled principles of Article III standing to this case.

In any event, the Supreme Court has never adopted the broad exception to jurisdictional requirements — allowing a named plaintiff to borrow standing of unnamed putative class members — advanced by Plaintiffs here. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("[N]one of [the exceptions to the general rule that a court must address issues of standing first] even approaches approval of a doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt."); *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000) (stating, as a general rule, questions of jurisdiction must be considered before the merits "since if there is no

4

jurisdiction there is no authority to sit in judgment of anything else.") In fact, the Supreme Court has repeatedly cautioned that plaintiffs can pursue only those claims for which they have standing to bring in their own right. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.") (internal quotation marks omitted); *Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982) (warning that named plaintiffs cannot merely allege that "injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted).

Thus, Plaintiffs' reliance on *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002), is unpersuasive. Nowhere did the *Buspirone* court discuss — much less distinguish — this Supreme Court precedent. The *Buspirone* court explained that it did not need to analyze the named plaintiffs' standing because "[i]f certification is granted, the proposed class would contain plaintiffs who have personal standing to raise claims under the laws governing purchases in all of the fifty states." *Id.* at 377. But that reasoning conflicts directly with the Supreme Court's holding that plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Blum*, 457 U.S. at 1001 n.13 (internal quotation marks omitted). The *Buspirone* court's holding is therefore questionable, at best. This Court should not follow it.[4]

---

[4] Plaintiffs' reliance on *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998), and *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), is also misplaced. (Pls.' Opp'n at 4 n.4.) In *Fallick*, the plaintiff brought two claims under ERISA alleging that benefits under his employee benefit plan were improperly calculated. The court held that once the plaintiff personally established constitutional standing *for each claim alleged*, there were no further constitutional requirements for the plaintiff to satisfy in order to represent a class of unnamed

(Continued...)

Furthermore, contrary to *Buspirone*, numerous courts — including the D.C. Circuit Court of Appeals — have cautioned that courts must address Article III standing ***before*** addressing the merits or class certification. *See, e.g., In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002) (observing that "[t]he question of constitutional standing [] is a prerequisite to Rule 23 class certification" and should be addressed by a court in a motion to dismiss and not be deferred until class certification "because it goes to the court's jurisdiction."); *Easter v. American West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (noting that a district court should address "the issue of standing before it addresse[s] the issue of class certification.").[5]

---

parties who suffered similar injuries at the hands of the same defendant but under different employee benefit plans. *Id.* at 423-24. Here, in contrast, Plaintiffs cannot demonstrate standing for ***each claim*** alleged, *i.e.*, Plaintiffs cannot demonstrate injury (and thus standing) under the laws of any state other than Florida.

In *Payton*, the court — relying on an overly expansive reading of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) (*see* note 5, *infra*) — held that the named plaintiffs had standing to represent unnamed plaintiffs who suffered similar injuries as the named plaintiffs but who were injured at the hands of other defendants, *i.e.*, defendants with whom the named plaintiffs had no connection. But, unlike the Plaintiffs here, the named plaintiffs "were personally injured by the operation of the ***very same statute*** that caused injuries to all other members of the proposed class." *Payton*, 308 F.3d at 681. Thus, the court distinguished the case before it from one like the case at bar, noting:

> This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members. That, of course, would be impermissible, in light of the fact that a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs . . .

*Id.* at 682. Here, Plaintiffs attempt to establish standing under various state laws (other than Florida) based on the alleged injuries of unnamed class members. Thus, as the *Payton* court observed, Plaintiffs simply attempt to "piggy-back" on the alleged injuries of unnamed plaintiffs. As such, Plaintiffs lack standing.

5   Plaintiffs assert that "most courts have held" that issues of constitutional standing may be deferred until class certification. (Pls.' Opp'n at 4.) Plaintiffs cite *In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004), in support of this proposition and refrain from any discussion of this case. (Pls.' Opp'n at 4.) Plaintiffs' reluctance to highlight this case is not surprising as it stands in direct conflict with other cases from within this Circuit and the District of Massachusetts which have reasoned that standing issues should be resolved at the motion to dismiss stage and not deferred until class certification. *See In re Lorazepam*, 289 F.3d at 108; *In re Eaton Vance Corp. Securities Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) ("[T]his Court cannot put aside the requirements of Article III simply because a plaintiff decides to file a motion seeking to represent a class."); *see also Lujan*, 504 U.S. at 570 n.5 (noting that "standing is to be determined as of the commencement of suit."). In addition, as discussed in Defendants' opening brief, *In re Relafen* rests on an incorrect interpretation of *Ortiz v.*

(Continued...)

In any event, the decisions in *In re Terazosin*, 160 F. Supp. 2d at 1370-72, and *Association for Disabled Americans, Inc. v. 7-Eleven, Inc.*, No. Civ. 3:01-CV-0230-H, 2002 WL 546478, at *4 (N.D. Tex. Apr. 10, 2002), are directly on point and entirely consistent with Supreme Court precedent. Both of those cases held that named plaintiffs do not have standing to assert the state law claims of putative class members when those named plaintiffs did not incur an injury under those state laws. *In re Terazosin*, 160 F. Supp. 2d at 1370-72; *ADA*, 2002 WL 546478, at *5 (dismissing state law claims for which no named class representative had standing and noting, as here, "the plaintiffs have presented absolutely no evidence of their standing to assert a claim under the laws of any state other than Florida."); *see also James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (holding that "at least one named Plaintiff must have standing to seek [] relief on *each of the claims* against" a defendant). This case is no different. The named Plaintiffs have asserted no injuries under the laws of several of the so-called "indirect purchaser states," nor have Plaintiffs pointed to any persuasive authority permitting the issues of constitutional standing to be ignored. Thus, Count II of Plaintiffs' complaint should be dismissed to the extent it purports to assert claims under the laws of any state but Florida, the *only* state claims for which Plaintiffs could conceivably assert standing.[6]

---

*Fibreboard Corp.*, 527 U.S. 815 (1999). There, the Supreme Court established a "limited exception" to the general rule that standing may be addressed before class certification where the absent class members lack constitutional standing and class certification issues are dispositive of the whole case. *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002). Indeed, *In re Relafen* stands in conflict with numerous post-*Ortiz* courts that have addressed Article III standing *before* analyzing class certification issues. *See, e.g., Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 822-23 (W.D. La. 2003); *Dash v. FirstPlus Home Loan Owner Trust*, 248 F. Supp. 2d 489, 503-04 (M.D.N.C. 2003); *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 995-96 (D. Md. 2002); *Mull v. Alliance Mortgage Banking Corp.*, 219 F. Supp. 2d 895, 909 n.10 (W.D. Tenn. 2002); *Caranci v. Blue Cross & Blue Shield of R.I.*, 194 F.R.D. 27, 32 (D.R.I. 2000); *Doe v. Unocal Corp.*, 67 F. Supp. 2d 1140, 1142 (C.D. Cal. 1999).

[6] Plaintiffs falsely suggest that Defendants have "concede[d]" that "Plaintiffs have standing to raise some of their claims." (Pls.' Opp'n at 3.) *Nowhere* in Defendants' opening brief do Defendants "concede" that Plaintiffs have suffered cognizable injury or have standing to assert any claim. Furthermore, Plaintiffs' contention that
(Continued...)

Finally, Plaintiffs bemoan that meeting the requirements of Article III standing would "add considerable expense to this action" because any additional named plaintiffs, *i.e.*, named plaintiffs with standing to pursue claims under the laws of states other than Florida, "would all have to produce documents, answer interrogatories and be deposed." (Pls.' Opp'n at 5.) Thus, Plaintiffs argue that Article III standing should bend to the expediency of class-wide adjudication of the instant case. (*Id.*) Plaintiffs' argument, however, is wholly without merit.

Article III standing does not bend to expediency and the Supreme Court has warned against such a results-oriented approach to issues of standing. *See Raines*, 521 U.S. at 820 (stating that an Article III standing analysis cannot be abandoned "for the sake of convenience and efficiency" and cautioning courts to "put aside the natural urge to proceed directly to the merits"); *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 476 (1982) (stating that Article III standing "is not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit."). Instead, the requirements of Article III are "inflexible and without exception," *Steel Co.*, 523 U.S. at 95, because "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). Thus, Plaintiffs'

---

Defendants "do not dispute" that Plaintiffs have standing to assert a claim for unjust enrichment in Count III, (*id.*), is simply mystifying. Defendants clearly contend — as detailed in Defendants' opening brief — that Plaintiffs lack standing to assert a claim for unjust enrichment by virtue of the direct purchaser rule of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). (*See* Defs.' Mem. at 21-25.) In addition, Defendants assert that plaintiff-United Food has no standing to assert *any* claim because, as a trust fund, it has not suffered — and cannot suffer — any injury. (*See id.* at 12-13.) Defendants have merely not moved to dismiss at this stage in the litigation Plaintiffs claims under Florida law. Yet, even if Plaintiffs had standing to pursue some claims (*e.g.*, Florida state law claims), Plaintiffs would not "be relieved of personally meeting the requirements of constitutional standing" with respect to other claims simply because "[other] persons described in the class definition would have standing themselves to sue." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 n.6 (11th Cir. 2000) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)) (internal quotation marks omitted); *see also James*, 254 F.3d at 563.

contention that the "policies underlying Rule 23" should trump constitutional standing requirements is simply without merit.

In sum, Plaintiffs' opposition presents no authority permitting the named Plaintiffs to acquire constitutional standing by virtue of the hypothetical claims of absent plaintiffs. Accordingly, Count II of Plaintiffs' Second Amended Class Action Complaint should be dismissed to the extent it purports to assert claims under the laws of any state but Florida, because the Court does not have jurisdiction over such claims.

## II.    PLAINTIFF UNITED FOOD IS A TRUST FUND AND DOES NOT HAVE STANDING IN THIS ACTION

Plaintiff-United Food has failed to explain (much less allege) how, as a *trust fund*, it has suffered or could suffer any damages as a matter of law.  Indeed, Plaintiffs' opposition ignores the fact that, as a trust, the money United Food used to pay or reimburse for Ovcon was not its own.  That is, United Food is merely a pass-through for payments by its participants.  United Food therefore has not suffered — and cannot suffer — individual injury.  (*See* Defs.' Mem. at 12-13 (citing *Seafarers Welfare Plan v. Philip Morris*, 27 F. Supp. 2d 623 (D. Md. 1998).) Rather, any injury would be suffered by its members, not United Food.  United Food thus has no standing to maintain a cause of action.[7]

Nevertheless, United Food baldly asserts in its opposition that "*it* was injured by paying or reimbursing for its members' purchases of Ovcon at supracompetitive prices." (Pls.' Opp'n at 7.)  Any excessive costs paid out of the fund, however, would not — and could not — harm

---

[7]    Indeed, Plaintiffs' opposition is most telling for what it does not dispute.  It does not dispute that: (1) as a trust fund, United Food holds assets for the exclusive purpose of providing benefits to its participants; (2) the money United Food uses to pay for Ovcon is not its own; and, (3) United Food does not contribute to the fund at all. (Pls.' Opp'n at 6; *see also* Defs.' Mem. at 12.)

United Food itself. To the contrary, any increase in costs paid by the trust would be borne by

United Food *members* who, in turn, would increase their contributions to the fund.[8]

Similarly, any reduction in the price of Ovcon would not benefit United Food. *See*

*Seafarers*, 27 F. Supp. 2d at 627-28 (quoting *Steamfitters Local Union No. 420 Welfare Fund v.*

*Philip Morris, Inc.*, No. 97-5344, 1998 WL 212846, at *3 (E.D. Pa. Apr. 22, 1998)) ("The

money in their hands can only be used to pay benefits on behalf of others, and, since all are non-

profit entities, plaintiffs [the Funds] cannot claim to have suffered any economic loss in the form

of lost profits.").[9] Thus, *even if* United Food paid supracompetitive prices on behalf of its

beneficiaries, which it did not, it has suffered *no harm* itself. *Id.* Accordingly, all claims by

United Food must be dismissed.

## III. COUNT II OF PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UNDER THE LAWS OF FOUR STATES AND THE DISTRICT OF COLUMBIA

Even if Plaintiffs have standing to assert claims under the laws of states in which they do

not reside (and even if United Food could state a claim for damages), Plaintiffs' claims pursuant

to the laws of the Louisiana, Massachusetts, Vermont, Wisconsin, and the District of Columbia

suffer from substantive defects that bar Plaintiffs' claims.

---

[8]  Plaintiffs reliance on *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30 (D.D.C. 2003), is of no avail. *Lorazepam* did not involve trust funds at all. Moreover, the third-party payors in that case (again, not trusts) had specifically set forth how they — rather than their participants — were harmed. *Id.* at 51 (noting, in distinguishing *Seafarers*, that non-trust third-party payors were "forced to eat [Mylan's] price hikes" in light of allegations that their "members' 'copayments were the same without regard to the drugs' cost following Mylan's price increase.'"). No similar allegation has been made by United Food here.

[9]  Plaintiffs rely on *dicta* from a footnote in *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999), in an attempt to distinguish *Seafarers*. While not resolving the issue, the court in *Steamfitters* speculated that "[i]ncreased costs likely necessitated reduced expenditures in other areas, as well as reductions in the Funds' reserves." *Id.* at 921 n.4. The court overlooked, however, that any reduction in expenditures or reserves by the funds would not harm the funds themselves, but rather their members. Regardless, United Food offers no allegation that it has suffered such harm in this case.

### A.  Plaintiffs Lack Standing Under the Antitrust Laws of Louisiana.

Louisiana has *not* adopted an *Illinois Brick*-repealer statute; that is, Louisiana has not repealed *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which held that only *direct* purchasers — unlike Plaintiffs here — may sue for damages arising from an alleged antitrust violation. *Id.* at 727-28. Thus, Plaintiffs lack standing under the antitrust laws of Louisiana. *See, e.g., FTC v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 6-7 (D.D.C. 1999).

In response, Plaintiffs argue that this Court should reach a different conclusion than every court that has addressed the applicability of *Illinois Brick* to Louisiana's antitrust statute and allow their damages claim to proceed. *See, e.g., Free v. Abbott Labs., Inc.*, 176 F. 3d 298, 299 (5th Cir. 1999), *aff'd without opinion,* 529 U.S. 333 (2000) (denying indirect purchasers standing to assert claims under Louisiana's antitrust statute); *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 350 F. Supp. 2d 160, 170 (D. Me. 2004) (same); *FTC v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999). Plaintiffs offer no reason — much less a compelling reason — for this Court to disregard this established precedent.

Indeed, although the Louisiana Supreme Court has not expressly addressed whether Louisiana's antitrust statute precludes recovery by indirect purchasers, these federal courts have engaged in a careful analysis of this issue and have concluded that the Louisiana Supreme Court would follow the Supreme Court's decision in *Illinois Brick* and preclude indirect purchaser recovery. *See, e.g., Free*, 176 F.3d at 299-301; *In re New Motor Vehicles,* 350 F. Supp. 2d at 170; *accord Mylan Labs.,* 99 F. Supp. 2d at 6-7 (noting that it would not "ignore the holding of a federal appellate court in a case directly on point."). Moreover, in doing so, these courts rejected the very arguments Plaintiffs offer here *and distinguished as irrelevant* the two cases upon which those arguments are based. *See Free*, 176 F.3d at 299-301 & n.5 (distinguishing *Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 493 So.2d 1149, 1154 (La. 1986),

11

and *State ex rel. Ieyoub v. Borden, Inc.*, No. 94-3640, 1995 WL 59548 (E.D. La. Feb. 10, 1995));

*In re New Motor Vehicles*, 350 F. Supp. 2d at 170 (same).[10]

As explained in Defendants' opening brief, neither the Louisiana legislature nor the

Louisiana courts have repealed the ruling of *Illinois Brick*; in fact, the Supreme Court of

Louisiana declined the opportunity to do so, a fact noted by Plaintiffs. (*See* Pls.' Opp'n at 11

(citing *Free v. Abbott Labs. Inc.*, 739 So.2d 216 (La. 1999).) Consequently, the Court should

follow the reasoning of the many federal cases that have already addressed this issue and dismiss

Plaintiffs' Louisiana antitrust claims for lack of standing.

**B.     Plaintiffs Have Failed to Meet the Statutory Requirements of Massachusetts Consumer Protection Law.**

Plaintiffs fail to state a claim under § 9 of Massachusetts' consumer protection law.

Section 9 explicitly requires Plaintiffs to provide advance, written notice of their claims prior to

filing a complaint. *See* Mass. Gen. Laws ch. 93A, § 9(3).[11]

Plaintiffs concede that they have not met this statutory prerequisite to their claim. *See,*

*e.g.*, *McMahon v. Digital Equip. Corp.*, 944 F. Supp 70, 77 (D. Mass. 1996) (holding that a "30

day demand letter . . . [is] a prerequisite to bringing a suit under Mass. Gen. Laws ch. 93A, Sec.

9."). They assert, nevertheless, that their claim should be allowed to proceed because Plaintiffs

---

10   In *Free*, the Fifth Circuit distinguished *Louisiana Power* because it did not address the scope of § 137, the remedy provision at issue in *Free* and *Illinois Brick*, but rather, § 122, a separate provision with a different purpose. *See Free*, 176 F.3d at 299-301. Further, as the Fifth Circuit explained, "the federal district court [in *Borden*] noted, while discussing an issue of diversity jurisdiction, the absence of Louisiana caselaw interpreting whether § 137 provides a remedy for indirect purchasers[, but it] contains no holding on the issue before us [whether indirect purchasers have standing under the Louisiana antitrust statute]." *Id.* at n.5.

11   Plaintiffs do not challenge Defendants' claim that they have no cause of action as indirect purchasers under Section 11 of the Massachusetts Consumer Protection Act. (*See* Pls.' Opp'n at 11-12; *see also* Defs.' Mem. at 16-17.)

are now willing to send a demand letter, if the Court so requires. (Pls.' Opp'n at 11, 12 n.8.) This is not the law.

Plaintiffs' failure to send a written demand for relief prior to filing their Massachusetts claim necessitates its dismissal. Plaintiffs' cited authorities do not suggest otherwise. In *Tarpey v. Crescent Ridge Dairy, Inc.*, 713 N.E.2d 975 (Mass. App. Ct. 1999), the court merely allowed a plaintiff to send a demand letter, wait thirty days, and ***add*** a chapter 93A claim to an already pending case. Similarly, in *York v. Sullivan*, 338 N.E.2d 341 (Mass. 1975), the court did not allow a plaintiff to assert a chapter 93A claim without first sending a demand letter. Indeed, in that case, a sufficient demand letter had been sent. Neither case excused a plaintiff from serving a demand letter ***before*** asserting a claim under chapter 93A of the Massachusetts Consumer Protection Act, as Plaintiffs request here.

Plaintiffs also argue that they should be excused from serving a demand letter because it was, and is, an exercise in futility. (Pls.' Opp'n at 12.)[12]  This, however, is not a judgment Plaintiffs are entitled to make for themselves; the Massachusetts legislature mandates that a demand letter must be sent before a suit is commenced under chapter 93A regardless of whether Plaintiffs think such a demand would be worthwhile. Given Plaintiffs' acknowledged failure to satisfy the Massachusetts notice requirements in this case, Plaintiffs' claim under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, *et seq.*, must be dismissed.

---

[12]  Plaintiffs attempt to excuse their failure to meet the statutory requirements by claiming that it would have been "impossible (if not unethical) to discuss settlement for the Class prior to conducting any discovery on the Defendants." (Pls.' Opp'n at 12.)  However, the very same section of the Massachusetts consumer protection law that mandates notice explicitly allows claims to be brought as class actions. *See* Mass Gen. Laws ch. 93A § 9.

### C. Plaintiffs Have No Claim Under the Consumer Protection Law of Vermont.

Plaintiffs are not "consumers" as defined under the consumer protection laws of Vermont and, as such, cannot state a claim for relief. *See* Vt. Stat. Ann. tit. 9, § 2451a(a). In their opposition, Plaintiffs blithely argue that Defendants are "hung up" on the statutory language of the consumer protection law of Vermont. (Pls.' Opp'n at 12.) Yet, there is a good reason for Defendants' attention to the plain language of the statute: only ***purchasers*** of Ovcon may state a claim for relief. *See* Vt. Stat. Ann. tit. 9, §2451a(a).

Plaintiffs attempt to shoe-horn their claim within this statutory requirement by alleging in their opposition that they are, in fact, "purchasers" of Ovcon. (Pls.' Opp'n at 12.) They are not. Indeed, by their own admission, Plaintiffs — as third-party payors — merely pay or reimburse the actual purchasers of Ovcon, *i.e.*, ***their members***. (*See id.* at 12-13; Pls.' Second Am. Compl. ("SAC") ¶¶ 11-12, 63.) Plaintiffs cite no authority for the proposition that merely reimbursing others for their purchases renders Plaintiffs "purchasers" under Vermont's consumer protection law. *Cf. Black's Law Dictionary* 1248 (7th ed. 1999) (defining "purchase" as "[t]he act or an instance of buying.").

Because Plaintiffs do not purchase Ovcon themselves, they are not "consumers" of Ovcon under the terms of the Vermont statute and therefore fail to state a claim. Accordingly, Plaintiffs' claim pursuant to Vermont's consumer protection law should be dismissed.[13]

---

[13] Further, even if Plaintiffs were deemed to have purchased Ovcon, they cannot assert a claim because they did not purchase Ovcon for the use or benefit, or in connection with the operation, of their businesses. Vt. Stat. Ann. tit. 9, §2451a(a). Here, Plaintiffs do not purchase prescription drugs for the benefit of their businesses, they merely ***reimburse*** their members' purchases. (*See* SAC ¶¶ 11-12.) Nor do Plaintiffs use Ovcon in connection with the operation of their health plan or trust. Therefore, Plaintiffs' Vermont consumer protection claim must be dismissed.

**D.**    **Plaintiffs Have No Claim Under the Antitrust Laws of Wisconsin.**

Plaintiffs fail to state a claim under Wisconsin antitrust law because they have failed to plead any factual allegations demonstrating how the challenged conduct had an impact within Wisconsin. *See Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005).

In response, Plaintiffs argue that a ***bare legal conclusion*** that the conduct at issue "substantially affected" the people of Wisconsin (SAC ¶ 89) is sufficient to satisfy the legal standard set forth by the Wisconsin Supreme Court in *Olstad*. Plaintiffs, however, confuse legal conclusions with factual allegations. Plaintiffs' Second Amended Complaint does not contain a single factual allegation relating to conduct in or effecting Wisconsin. And Plaintiffs' "bare conclusion" that the alleged conduct "substantially affected" (*id.*) the people of Wisconsin does not fulfill the "plaintiff[s'] duty of stating the elements of a claim in general terms." *Wilson v. Cont'l Ins. Cos.*, 274 N.W.2d 679, 683 (Wis. 1979). Lacking any factual allegation connecting the alleged conduct to any affect on Wisconsin consumers, Plaintiffs fail to state a claim under Wisconsin law. *See Olstad*, 700 N.W. 2d at 158; *see also In re Newbridge Networks Secs. Litig.*, 926 F. Supp. 1163, 1168 (D.D.C. 1996) (in considering a motion to dismiss, the court need not "accept legal conclusions cast in the form of factual allegations.").

Plaintiffs' reliance on *Meyers v. Bayer AG*, No. 2003AP2840, 2006 WL 1228957 (Wis. Ct. App. May 9, 2006), is also unavailing. Contrary to Plaintiffs' argument, *Meyers* does not relieve Plaintiffs of their obligation to offer more than bare legal conclusions in support of their complaint. *Meyers* was a class action complaint brought solely on behalf of Wisconsin consumers. In finding that the Wisconsin plaintiffs had met the pleading requirements set forth in *Olstad*, the Court noted that "[t]he facts alleged [by the Wisconsin plaintiffs] involve ***in-state transactions*** by ***in-state residents***." *Id.* at ¶ 9 n.5. Specifically, the *Meyers* plaintiffs "identified

[Wisconsin] class members [who] purchased Cipro during the class period" and alleged that "there are thousands of Wisconsin consumers who purchased Cipro." *Id.* at ¶ 10.

In contrast, Plaintiffs here purport to represent a class of third-party payors from twenty-two states and the District of Columbia, but the only named Plaintiffs are from Florida and Pennsylvania. (*See* SAC ¶¶ 11-12.) Unlike *Meyers*, there is no Wisconsin plaintiff before this Court. In addition, Plaintiffs offer none of the specific factual allegations present in *Meyers*. There is no claim that Ovcon was sold in Wisconsin or that any third-party payor reimbursed purchases of Ovcon in Wisconsin. There is not one factual allegation that ties this case to Wisconsin in any way.[14] As a result, Plaintiffs' claim under the Wisconsin Antitrust Act, Wis. Stat. §§ 133.01, *et seq.*, must be dismissed.

### E. Plaintiffs Have Failed to Adequately Plead a Claim Under the District of Columbia Antitrust Law.

Plaintiffs contend that the adequacy of their pleading under the D.C. antitrust laws should be determined by *GTE New Media Services Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27 (D.D.C. 1998).[15] The *GTE* court, however, did not consider the legislative intent behind the D.C. statute, which clearly indicates that the purpose of the act was to "'permit a cause of action based on a defendant's ***significant contact*** with the District, or based on a ***significant effect*** within the District of a defendant's activities, even though such defendant may be engaged in

---

14  Although Plaintiffs suggest for the first time in their opposition that "some" of the class members are from Wisconsin (Pls.' Opp'n at 14 n.10), that allegation is conspicuously absent from their Second Amended Complaint. Moreover, Plaintiffs' claim that they are "aware" of third-party payors from Wisconsin does not remedy the deficiencies in their complaint. Plaintiffs filed their ***Second*** Amended Complaint ***after*** Defendants had fully briefed for this Court the inadequacy of their Wisconsin claim and nevertheless chose not to name a Wisconsin entity as a party to this action or to allege (other than in conclusory fashion), that any Wisconsin consumers were substantially affected by Defendants' alleged conduct.

15  The *GTE* court neither discussed nor distinguished *Sun Dun, Inc. v. Coca Cola Co.*, 770 F. Supp. 285 (D. Md. 1991) (limiting scope of the D.C. antitrust statute to claims with a sufficient nexus to the District of Columbia).

extraterritorial activity.'" *ABA Section of Antitrust Law: State Antitrust Practice and Statutes* 10-13 (Keith D. Shugarman ed., ABA 2004) (*quoting Council of the District of Columbia Rep. on Bill 3-107, the District of Columbia Antitrust Act of 1980, from the Comm. on the Judiciary to Members of the Council* at 10).[16] On its face, Plaintiffs' complaint does not sufficiently allege "significant contact" or "significant effect" in the District of Columbia.[17]

Although Plaintiffs' D.C. antitrust claim remains inadequately pled, Defendants submit that the Court may defer ruling on the applicability of the D.C. statute pending presentation at the summary judgment stage of any evidence by Plaintiffs regarding whether Defendants' conduct in fact had a significant connection to the District of Columbia.

## IV. PLAINTIFFS' ALLEGATIONS OF "UNJUST ENRICHMENT" PROVIDE NO BASIS FOR RELIEF

Regardless of the label, Plaintiffs' unjust enrichment claim boils down to nothing more than a claim for damages for an alleged antitrust violation. It is therefore exactly the type of claim that the Supreme Court disallowed under the antitrust laws over a quarter century ago. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977).

---

[16] The D.C. Local Antitrust Study concluded that the D.C. Council should adopt local antitrust legislation for, *inter alia*, the following reasons: (1) "the United States Department of Justice and the Federal Trade Commission have not actively pursued antitrust enforcement in the District of Columbia primarily because of their first concern with national or regional problems;" and (2)"even though the great majority of intra-District matters subject to typical antitrust investigation would not be economically significant when measured by federal agency standards, there is no reason to conclude local restraints of trade therefore do not warrant the presence of a ***purely local antitrust enforcement program***." *Council of the District of Columbia Rep. on Bill 3-107, the District of Columbia Antitrust Act of 1980, from the Comm. on the Judiciary to Members of the Council* at 3.

[17] To satisfy venue, Plaintiffs allege that "(1) Warner Chilcott and Barr transact business and are found within this District; and (2) a substantial portion of the affected trade and commerce described below has been carried out in this District." (SAC ¶ 10.) These wholly conclusory allegations are insufficient to state a claim under D.C. law.

Clearly, Plaintiffs' claims in those states that follow the direct purchaser rule of *Illinois Brick* are barred whether brought under the antitrust laws or some undefined theory of common law "unjust enrichment" or "restitution." *See FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 42-43 (D.D.C. 1999), *modified on other grounds*, 99 F. Supp. 2d 1 (D.D.C. 1999) (holding that plaintiffs "should not be allowed to circumvent *Illinois Brick*" by seeking common law disgorgement rather than damages on behalf of indirect purchasers "***absent express authority for such relief under state law***."); *see also In re New Motor Vehicles*, 350 F. Supp. 2d. at 211 ("Certainly no restitutionary remedy can escape the limitations the United States Supreme Court imposed on federal antitrust recovery in *Illinois Brick*."); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1379-80 (S.D. Fla. 2001) (rejecting indirect purchaser-plaintiffs' unjust enrichment claim under the common law of the fifty states with respect to each state that did not allow indirect purchasers to sue under that state's antitrust laws).

Ignoring — indeed not even mentioning — this precedent, Plaintiffs' opposition is based entirely on one simple proposition: "[a]t least one court has held otherwise." (Pls.' Opp'n at 15.) That is, Plaintiffs rely solely on an unpublished decision, *In re Cardizem CD Antitrust Litigation*, MDL 1278, Order No. 70 (E.D. Mich. May 23, 2003), in which the court permitted third-party payor plaintiffs to assert an unjust enrichment claim in addition to Massachusetts and New York state antitrust claims. But to the extent that *In re Cardizem* suggested that unjust enrichment claims could be brought in addition to claims based on state antitrust laws, it conflicts with *Mylan Labs.*, 62 F. Supp. 2d at 43, *In re Terazosin*, 160 F. Supp. 2d at 1380, and numerous other courts that have addressed the issue.[18]

---

[18] *See also In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005) ("[T]he specific bar on indirect purchaser recovery incorporated into South Carolina's antitrust statutes prohibits Plaintiff's general (Continued...)

In short, *In re Cardizem* is not persuasive authority on this issue.[19]  Thus, at a minimum,

Plaintiffs' common law claim for "restitution, disgorgement and constructive trust" (Count III)

must be dismissed to the extent it purports to state claims under the common law of states that

adhere to the direct purchaser rule of *Illinois Brick*.

Similarly, Plaintiffs' claim that they can bring unjust enrichment claims for those states

that do not follow *Illinois Brick* (Pls.' Opp'n at 15 n.11), ignores the Court's decision in *Mylan*

and fails to address state law holding that general equitable remedies such as restitution and

disgorgement are foreclosed by the specific requirements of a state's statutory scheme.  (*See*

Defs.' Mem. at 24-25 (citing cases).)  As the *Mylan* court reasoned, even in states that do not

follow *Illinois Brick*, Plaintiffs' exclusive remedy should lie in the state antitrust laws, ***not*** in

some undefined and unsupported claim for unjust enrichment.  *See* 62 F. Supp. 2d at 44-53

(permitting disgorgement claims only if expressly allowed under state antitrust laws, ***not*** under

general unjust enrichment principles); *see also In re Vitamins Antitrust Litig.*, No. 99-197, MDL

---

common-law [unjust enrichment] claim."); *Aikens v. Microsoft*, 159 F. App'x 471, 477 (4th Cir. 2005) ("[T]o the extent that the plaintiffs cannot sue for monetary damages under Louisiana antitrust law, they cannot employ a subsidiary unjust enrichment claim to circumvent this rule."); *In re Microsoft Corp. Antitrust Litig.*, 241 F. Supp. 563, 565 (D. Md. 2003) ("[A] claim for damages for antitrust violations cannot be asserted under the Kentucky Consumer Protection Act where they cannot be asserted under Kentucky's version of the Sherman Act.  This same reasoning equally applies to a common law claim for unjust enrichment arising from antitrust violations.").

[19] The *In re Cardizem* court found that the policies underlying the direct purchaser rule of *Illinois Brick* were not implicated because, there, plaintiffs did not seek recovery of alleged overcharges.  Thus, the court found that it would not be "forced to sort out and apportion damages from overcharges that may have been passed on from direct to indirect purchasers."  *In re Cardizem*, at 31-32.  Here, however, Plaintiffs clearly — despite the re-characterization of their claims in their opposition — seek to recover "overcharges" as a result of alleged "supracompetitive" prices.  (*See* SAC ¶ 12; *see also id.* ¶¶ 1, 11, 75-76, 92-93.)  As shown in Defendants' opening brief, a claim to recover "overcharges" as a result of "supracompetitive" prices is plainly a claim for damages, not restitution.  (Defs.' Mem. at 22.)  In addition, and equally important here, because Plaintiffs seek to recover alleged overcharges, "[t]he end payors' unjust enrichment claim raises ***identical*** concerns" as those identified by the Supreme Court in *Illinois Brick*, including concerns regarding "complex apportionment disputes among injured parties" and "expos[ing] defendants to the risk of multiple liability."  *In re Terazosin*, 160 F. Supp. 2d at 1380.  Thus, contrary to the court's finding in *In re Cardizem*, the policies underlying the direct purchaser rule of *Illinois Brick* are clearly implicated here.

1285, 2001 WL 34088807 (D.D.C. Mar. 13, 2001) (dismissing claim for unjust enrichment under Alabama law because the Alabama antitrust statute was limited to actual damages). Because the third-party payor-Plaintiffs have pursued, in Count II, the very remedies provided for in the *Illinois Brick*-repealer statutes, Plaintiffs' common law claim is either disallowed by state law, or duplicative of Count II. Plaintiffs offer no persuasive authority to the contrary. Thus, Count III should be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' Opening Memorandum, Defendants respectfully submit that Count II of Plaintiffs' Second Amended Class Action Complaint should be dismissed to the extent it purports to assert claims under the laws of any state except Florida because Plaintiffs have failed to adequately plead a cause of action or otherwise lack standing to assert claims under the state law, and Count III should be dismissed in its entirety because it is barred by the direct purchaser rule established by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Finally, all claims asserted on behalf of plaintiff-United Food should be dismissed for lack of standing.

Date:  May 30, 2006                              Respectfully submitted,


____/s/ Peter C. Thomas____                      ____/s/ Karen N. Walker____
Peter C. Thomas (D.C. Bar # 495928)              Karen N. Walker (D.C. Bar # 412137)
SIMPSON THACHER & BARTLETT LLP                   Mark L. Kovner (D.C. Bar # 430431)
555 11th Street, N.W.                            Chong S. Park (D.C. Bar # 463050)
Suite 725                                        KIRKLAND & ELLIS LLP
Washington, D.C. 20004                           655 Fifteenth Street, N.W.
(202) 220-7700                                   Washington, District of Columbia 20005
(202) 220-7702 (fax)                             (202) 879-5000
                                                 (202) 879-5200 (fax)

Charles E. Koob, *pro hac vice*
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
(212) 455-2502 (fax)

*Counsel for Warner Chilcott Holdings*          *Counsel for Barr Pharmaceuticals, Inc.*
*Company III, Ltd., Warner Chilcott*
*Corporation, Warner Chilcott*
*(US) Inc., and*
*Warner Chilcott Company, Inc.*