**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

VISTA HEALTHPLAN, INC. and UNITED
FOOD AND COMMERCIAL WORKERS
CENTRAL PENNSYLVANIA HEALTH
AND WELFARE FUND, on behalf of themselves          05 Civ. 2327 (CKK)
and all others similarly situated,

        **Plaintiffs,**

v.

WARNER CHILCOTT HOLDINGS COMPANY
III, LTD., WARNER CHILCOTT CORP.,
WARNER CHILCOTT (US) INC., WARNER
CHILCOTT COMPANY, INC. and BARR
PHARMACEUTICALS, INC.,

        **Defendants.**
_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

*Page No.*

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     THE PROPOSED SETTLEMENT IS WELL WITHIN THE RANGE
        OF POSSIBLE FINAL APPROVAL AND THUS MERITS
        PRELIMINARY APPROVAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      Preliminarily Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.      The Settlement is the Product of Extensive, Arm's Length
                Negotiations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        C.      The Terms of the Proposed Settlement Are Fair, Reasonable and
                Adequate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    PROPOSED TIMETABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.     NOTICE TO THE SETTLEMENT CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.      THE PROPOSED SETTLEMENT CLASS SATISFIES ALL OF THE
        REQUIREMENTS OF RULE 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.      Antitrust Claims Are Particularly Appropriate for Class Action
                Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.      The Proposed Settlement Class Satisfies The Requirements of Rule
                23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                1.      The Settlement Class is so Numerous that Joinder of
                        all Members is Impracticable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                2.      There Are Questions of Law and Fact Common to
                        All Members of the Settlement Class. . . . . . . . . . . . . . . . . . . . . . . 12

                3.      The Representative Plaintiffs' Claims Are Typical
                        of Settlement Class Members' Claims. . . . . . . . . . . . . . . . . . . . . . . 14

i

4.      The Representative Plaintiffs Will Fairly and
        Adequately Represent the Settlement Class. . . . . . . . . . . . . . . . . . . . . . . 15

C.      The Proposed Class Satisfies the Requirements of Rule 23(b)(3). . . . . . . . . . . 16

        1.      Common Questions Of Law and Fact Predominate. . . . . . . . . . . . . . . 16

        2.      A Class Action Is Superior to Other Available
                Methods for the Fair and Efficient Adjudication of
                This Controversy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I.    INTRODUCTION

On May 15, 2007, Plaintiffs, Vista Healthplan, Inc. and United Food and Commercial Workers Central Pennsylvania and Regional Health and Welfare Fund ("Plaintiffs")[1], individually and as representatives of the proposed Class[2] in this litigation, entered into a Settlement Agreement ("Settlement" or "Settlement Agreement") with Defendants Warner Chilcott and Barr Pharmaceuticals to resolve all issues raised by the Second Amended Complaint ("Complaint") filed in *Vista Healthplan, Inc. v Warner Chilcott Holdings Co. III, Ltd., et al.*, No. 1:05-02327 (the "Action").  Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for Preliminary Approval of Settlement.

As discussed below, the terms of the Settlement are fair, reasonable and adequate, and clearly fall within the range of possible approval.  Plaintiffs therefore request that the Court grant the Motion and enter the proposed Order Conditionally Certifying Settlement Class and Preliminarily Approving Settlement, which is attached as Exhibit 4 to the Motion.

## II.    THE PROPOSED SETTLEMENT IS WELL WITHIN THE RANGE OF POSSIBLE FINAL APPROVAL AND THUS MERITS PRELIMINARY APPROVAL

### A.    Preliminary Approval

Rule 23(e) provides that:

> The court must approve any settlement . . . of the claims, issues , or defenses of a certified class.

Fed. R. Civ. P. 23(e)(1)(A).  It is well-settled that the purpose of preliminary approval of a class action settlement is to determine whether the settlement reasonably falls within the range of possible

---

[1]  Unless otherwise indicated, capitalized terms used herein are used as defined in the Settlement Agreement between the Parties.

[2]  "Class" is used herein to refer to the "Settlement Class" defined in the Settlement Agreement.

approval, so that notifying the class of the proposed settlement is justified. Notice of the settlement is disseminated to the class, following which the court determines whether final approval of the settlement is appropriate. *See* Fed. R. Civ. P. 23(e). *See also Berry v. School Dist. of the City of Benton Harbor*,184 F.R.D. 93, 96 (W.D. Mich.1998); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,163 F.R.D. 200, 209 (S.D.N.Y. 1995).

The Manual for Complex Litigation describes the established framework for a court's preliminary evaluation of a proposed settlement:

> [A Court must] make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing . . . Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members.

MANUAL FOR COMPLEX LITIGATION, FOURTH (2004) ("MANUAL") at § 21; *see also In re Vitamins Antitrust Litigation*, 1999 WL 1335318 at *5 (D.D.C. 1999) ("at the preliminary approval stage, the Court's only task is to determine whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preliminary preferential treatment to class representatives or segments of the class, and falls within the range of possible judicial approval.").

A court should therefore preliminarily approve a settlement if it makes two related determinations. First, preliminary approval is appropriate if no basis exists to question the fairness of the settlement, because it "is not the product of collusion between the parties." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1997). *See also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y.

1998) (settlement should be the "result of good faith, arm's length bargaining undertaken by experienced counsel."); *Thomas v. Christopher*, 169 F.R.D. 224, 240 (D.D.C. 1996) (court must determine that proposed settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties"), *aff'd in part, rev'd in part*, 139 F.3d 227, 231 (D.C. Cir. 1998).

Second, a court should grant preliminary approval when the proposed settlement appears to fall within the range of possible approval, *i.e.,* whether the settlement appears to be one that can be found, after a full and fair hearing, to be fair, adequate, and reasonable. *See Thomas v. Albright*, 139 F.3d at 231. There is "'no obligatory test' . . . to determine whether a settlement is fair, adequate and reasonable." *Pigford v. Glickman*, 185 F.R.D. 82, 98 n.13 (D.D.C. 1999) (citing *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 303-04 (D.D.C. 1996). Fact-bound and case-specific, this adequacy inquiry is properly confined to the court's discretion. *See Pigford,* 185 F.R.D. at 98. However, the "trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1997).

Once a proposed settlement has been preliminarily approved, notice of the settlement and the formal fairness hearing is given to the settlement class. Because preliminary approval is a provisional step that merely begins the settlement approval process, any doubts are resolved in favor of preliminary approval. *See In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.").

**B.      The Settlement is the Product of
         Extensive, Arm's-Length Negotiations**

In approving class settlements, courts repeatedly and expressly defer to the judgment of experienced counsel who have conducted arm's-length negotiations. *See, e.g., In re Lease Oil*

3

*Antitrust Litig.,* (No. II), 186 F.R.D. 403, 424-25 (S.D. Tex. 1999) (quoting *Cotton v. Hinton*, 559 F.2d 1325, 1330 (5th Cir. 1977)); *Stewart v. Rubin*, 948 F. Supp. 1077, 1099 (D.D.C. 1996), *aff'd,* 124 F.3d 1309 (D.C. Cir. 1997); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993); *McGuinness v. Parnes*, 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989).   The presumption in favor of such settlements reflects an understanding that vigorous negotiations between seasoned and experienced counsel protects against collusion and advances the fairness concerns underlying Rule 23(e).

Since the filing of this Action, Plaintiffs and Class Counsel have engaged in an extensive investigation relating to the claims and underlying events alleged in the Complaint.  Among other things, Class Counsel has: (1) reviewed and analyzed over 800,000 documents produced by Warner Chilcott, Barr and third parties; (2) engaged in legal research and analysis of a myriad of issues relating to class certification, liability, causation and damages; (3) briefed substantive motions on liability and class certification; (4) deposed 27 different employees of defendants (including the CEOs of both defendants); (5) defended four depositions of Plaintiffs' employees; and (6) retained and consulted with economists and other experts with respect to causation and damages allegedly sustained by the Class as a result of the wrongful conduct alleged in the Complaint.  Class Counsel is therefore thoroughly familiar with issues of class certification, liability, causation and damages with respect to the claims asserted in the Complaint and defenses asserted by Warner Chilcott and Barr.

The Settlement proposed here -- which was negotiated over several months on behalf of the Class by experienced antitrust counsel -- is the product of extensive arm's-length negotiations undertaken in good faith, after substantial factual investigation and legal analysis.  The parties mediated this dispute under the auspices of Magistrate Judge Alan Kay.  Moreover, the course of the

negotiations between the parties as well as the substance of the settlement supports the fairness, reasonableness, and adequacy of the settlement.  MANUAL at § 21.  The arm's-length nature of the negotiations and the participation of experienced advocates throughout the process strongly supports the conclusion that the proposed settlement is fair, reasonable, and adequate, and falls within the range of possible final approval.

C.     **The Terms of the Proposed Settlement**
       **Are Fair, Reasonable and Adequate**

Under the terms of the Settlement Agreement, Warner Chilcott and Barr will each make a product donation of $1.5 million (for a total of $3 million worth of product) to be distributed to various charitable institutions and entities as further outlined in the Settlement Agreement. Additionally, Warner Chilcott and Barr agree to pay $1.1 million ($550,000 each) to Class Counsel as a reasonable attorney's fee and for reimbursement of costs.   Finally, Warner Chilcott and Barr will pay $100,000 ($50,000 each) for costs associated with providing notice to the Class and settlement administration.  Given the facts learned by Class Counsel during discovery of this case, the benefits of the Settlement justify preliminary and, indeed, final approval.

First, antitrust conspiracy cases are complex and difficult, and victory is never guaranteed. *See, e.g., In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (noting "recognized difficulties of proof and requirements of a costly trial on the merits" and approving settlement); *In re Cement & Concrete Antitrust Litig.*, 1981 WL 2039, at *3 (D. Ariz. 1981) (recognizing "complexity and uncertainty" of legal and factual issues in antitrust case and approving settlement); *In re Fine Paper Antitrust Litig.*, 1979 WL 1743, at *2 (E.D. Pa. 1979).  As one court noted in the context of complex litigation, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp.

710, 743-44 (S.D.N.Y. 1970) (citing instances in which settlements were rejected by the court and plaintiffs ultimately lost at trial or recovered less than settlement amount).

Second, the Complaint has not yet even been tested to see whether Plaintiffs state a claim. Defendants' motion to dismiss (which was never ruled upon) argues that the Complaint should be dismissed because, among other things, Plaintiffs lack standing to bring this Action, Plaintiffs fail to state a claim under the antitrust statues of the District of Columbia and several states, and Plaintiffs are barred from bringing an unjust enrichment claim under *Illinois Brick*.    Plaintiffs believe that had the Court ruled on the motion to dismiss, many if not all of their claims would have remained.  Nevertheless, Plaintiffs cannot be certain of that outcome. Furthermore, even if Plaintiffs were to overcome the motion to dismiss, there is no guarantee that Plaintiffs' claims would have survived a motion for summary judgment.

Third, Defendants raised several defenses that, if accepted by the jury, would have made it more difficult for Plaintiffs to secure a favorable verdict as to Defendants' liability.  Among these defenses are: (1)  the Option and Licence Agreement and the Finished Product Supply Agreement between Warner Chilcott and Barr were entered into for legitimate business reasons, namely because Warner Chilcott was allegedly experiencing serious supply problems with its current supplier of Ovcon 35; (2) Ovcon 35 competed with scores of other brand name and generic oral contraceptives; and (3) the Agreements at issue could have had no anticompetitive effect due to Warner Chilcott's heavy promotion and free sampling of Ovcon 35.

Finally, and most important, during discovery and the mediation, Defendants were able to credibly argue that Plaintiffs, as a Class, did not in fact incur aggregate damages as a whole, even without taking into account the effective price discount associated with free sampling by Warner Chilcott. Although Plaintiffs continue to believe that Plaintiffs and the Class did in fact suffer

damages, Plaintiffs would be ignoring reality not to recognize that there was a reasonable possibility that even if Plaintiffs proved liability, a jury would have found that the Class nevertheless suffered little or no damages. Given these facts, the proposed Settlement, wherein Defendants have agreed to donate $3 million worth of contraceptive products, is fair and reasonable, and it falls well within the range of possible final approval.

### III.    PROPOSED TIMETABLE

Plaintiffs propose the following schedule:

1.    No later than 14 business days from the date the Court enters the Order Conditionally Certifying Settlement Class and Preliminarily Approving Proposed Settlement ("Order"), the Direct Notice[3] shall be sent by first-class mail to all members of the Class who are ascertainable with reasonable diligence.

2.    As soon as practicable after the Direct Notice is mailed, Summary Notice[4] shall be published once in *National Underwriter: Life & Health/Financial Services Edition*.

3.    Any member of the Class who wishes to be excluded from the Class, and from participating in the Settlement, must send a letter requesting to be excluded ("Notice of Exclusion") to the Settlement Administrator so that it is received no later than 45 calendar days after Notice is mailed.

4.    Plaintiffs shall file their motion for final approval 14 calendar days prior to the date of the Fairness Hearing.

5.    Any comments and/or objections to the Settlement or related matters must be filed with the Court, and mailed to Lead Counsel and Defendants' Counsel, so that it is received no later

---

[3] The Proposed Direct Notice is attached as Exhibit 2 to the Motion for Preliminary Approval of Settlement.

[4] The Proposed Summary Notice is attached as Exhibit 3 to the Motion for Preliminary Approval of Settlement.

than 45 calendar days after the Direct Notice is mailed.

6.    On a date as soon as possible after October 1, 2007,  a Fairness Hearing shall take place before the Court to consider final approval of the Settlement and related matters.

## IV.    **NOTICE TO THE SETTLEMENT CLASS**

Rule 23(e) provides that when a settlement is proposed in a class action, "the court must direct notice in a reasonable manner to class members who would be bound by the proposed settlement . . ."  The purpose of the notice is to "afford members of the class due process which, in the context of the rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974).

The proposed notice program clearly meets these standards.  The forms of notice that Plaintiffs propose satisfy the requirements of due process by alerting and informing all known and reasonably identifiable Class members of the Settlement, its terms, and the Class members' right to exclude themselves, to object to or comment on the Settlement, and opportunity to appear and be heard at the Court's Fairness Hearing.

Plaintiffs propose that Class Counsel shall provide those members of the Class who have been identified by reasonable means with notice by first-class mail of the conditional certification of the Class, and of the date of the Court's final hearing on the fairness, adequacy and reasonableness of the proposed settlement.  Notice shall also be given by publication once in *National Underwriter: Life & Health/Financial Services Edition*.   *National Underwriter* is one of the most widely-read publications directed to entities who are likely to be Third Party Payors of Ovcon 35.

The content of the notice and the proposed method of dissemination plainly fulfill the

requirements of Federal Rule of Civil Procedure 23(e), 23(c)(2), and due process, and thus should be approved.

## V.    THE PROPOSED SETTLEMENT CLASS SATISFIES ALL OF THE REQUIREMENTS OF RULE 23

Rule 23 governs the issue of class certification, whether the proposed class is a litigation class or, as here, a settlement class.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997);  *Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998).  All the criteria for certification of a class for litigation purposes, except manageability, apply to conditional certification for settlement purposes.   Thus, a settlement class should be conditionally certified for settlement purposes where the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy – are satisfied as well as one of the three subsections of Rule 23(b).  *See Thomas v. Christopher*, 169 F.R.D. 224, 236 (D.D.C. 1996).  The proposed Class meets these requirements.[5]

### A.    Antitrust Claims Are Particularly Appropriate for Class Action Treatment

Class actions are widely recognized as being particularly appropriate for the litigation of antitrust cases because anti-competitive conduct "presumably impact[s] all purchasers in the affected market, so that common questions on the issue of liability predominate."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 22 (D.D.C. 2001) (citing *In re Plastic Cutlery Antitrust Litig.*, Civ. No. 96-CV-728, 1998 WL 135703, at *2 (E.D. Pa. Mar. 20, 1998)).

Additionally, the claims of Third Party Payors may involve a small amount of damages, creating a disincentive to bring an individual suit.  As the Supreme Court noted in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997):

---

[5]  As provided in the Settlement Agreement, Defendants have agreed to class certification for settlement purposes only.  In the event that the Settlement Agreement is terminated, all of the parties shall be restored to the respective positions existing immediately before the execution of the Settlement Agreement.

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

(quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)); *see also Minn. v. U.S. Steel Corp.*, 44 F.R.D. 559, 572 (D. Minn. 1968) ("Few are the individual claimants with a sufficient interest at stake or resources to bring a suit requiring proof of a conspiracy among business corporations."). Without the class action device, most of the victims of Defendants' alleged anticompetitive conduct in this case, a number of whom could not afford independent representation, would be deprived of a fair adjudication of their claims. "Although a given institution could conceivably have a claim substantial enough to warrant a separate action, the relatively small claims in many cases might render litigation impracticable." *In re Ampicillin Antitrust Litig.*, 55 F.R.D. 269, 278 (D.D.C. 1972); s*ee also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996). Not surprisingly, therefore, federal courts have routinely certified classes in antitrust cases involving monopolies[6] and horizontal agreements between competitors.[7]

---

[6]*See, e.g., In re Lorazepam & Clorazepate Antitrust Litig.*, 204 F.R.D. 12 (D.D.C. 2001) (Chief Judge Hogan certified class of direct purchasers of generic anti-anxiety drugs); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001); *In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000); *Panache Broadcasting of Pa., Inc. v. Richardson Electronics, Ltd.*, 1999 WL 342392 (N.D. Ill. 1999); *Thompson v. Midwest Found. Indep. Physicians Ass'n*, 117 F.R.D. 108 (S.D. Ohio 1987); *Weiss v. York Hosp.*, 548 F. Supp. 1048 (M.D. Pa. 1982); *In re Ampicillin Antitrust Litig.*, 55 F.R.D. 269, 273 (D.D.C. 1972).

[7]*See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, Case No. 99-MDL-1317, slip op. (S.D. Fla. Sep. 20, 2001); *In re Monosodium Glutamate Antitrust Litig.*, Civ. No. 00-M.L.-1328 (PAM) (D. Minn. June 8, 2001); *In re Magnetic Audiotape Antitrust Litig.*, Case No. 99-1580, 2001 WL 619305 (S.D.N.Y. June 1, 2001); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999); *Seb v. Rubenstein*, 188 F.R.D. 310 (N.D. Ill. 1999); *In re Commercial Tissue Products Antitrust Litig.*, 183 F.R.D. 589 (N.D. Fla. 1998); *In re Plastic Cutlery Antitrust Litig.*, 1998 WL 135703 (E.D. Pa. 1998); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231 (E.D.N.Y. 1998); *In re Medical X-Ray Film Antitrust Litig.*, 1997 WL 33320580 (E.D.N.Y. 1997); *In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18 (N.D. Ga. 1997); *In re Citric Acid Antitrust Litig.*, File No. C-95-2963, 1996 WL 655791 (N.D. Cal. 1996); *In re High Fructose Corn Syrup Antitrust Litig.*, 936 F. Supp. 530 (C.D. Ill. 1996); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996); *In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995); *In re Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94

**B.**    **The Proposed Settlement Class Easily Satisfies the Requirements of Rule 23(a)**

    **1.**    **The Settlement Class Is So Numerous That
Joinder of All Members Is Impracticable**

Under Rule 23(a)(1) the class must be so numerous that joinder of all members is "impracticable." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 477 (W.D. Pa. 1999). A complaint need not allege the exact size of the proposed class nor the identity of the class members. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992); *In re VMS Sec. Litig.*, 136 F.R.D. at 473; *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522, 524 (N.D. Ill. 1988). Instead, "a finding of numerosity may be supported by common sense assumptions." *Scholes*, 143 F.R.D. at 184; *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989); *In re Chlorine and Caustic Soda Litig.*, 116 F.R.D. at 625. "Impracticable" does not mean impossible; showing a strong hardship or inconvenience may be sufficient. *In re Flat Glass Antitrust Litig.*, 191 F.R.D. at 477 (citing *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143 (E.D. Pa. 1979)). In reviewing the practicability of joinder under Rule 23(a)(1), the size of the proposed class is a key factor. "In the District of Columbia, numbers of class members from 20 to 400 have sustained the numerosity requirement." *Vargas v. Meese*, 119 F.R.D. 291, 293 (D.D.C. 1987). 3B J. Moore, Moore's Federal Practice ¶ 23.05[1] (2d. ed. 1987) (modern trend is that twenty-one or fewer plaintiffs will be insufficient, between twenty-one and forty plaintiffs will receive a mixed response, and with over forty plaintiffs the courts always find that the requirement of numerosity has been met).

Numerosity cannot be seriously contested in this case. Warner Chilcott's sales of Ovcon 35 are in the tens of millions of dollars per year, and the proposed Class likely numbers in the

---

C 897, 1994 WL 663590 (N.D. Ill. 1994); *In re Carbon Dioxide Antitrust Litig.,* 149 F.R.D. 229 (M.D. Fla. 1993); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D. Miss. 1993); *In re Infant Formula Antitrust Litig.*, No. M.L. 878, 1992 WL 503465 (N.D. Fla. 1992); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677 (N.D. Ga. 1991).

thousands. Classes numbering in the hundreds "have routinely satisfied the numerosity requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. at 477 (citing *Eisenberg*, 766 F.2d at 785-86; *Hedges Enters., Inc. v. Continental Group, Inc.*, 81 F.R.D. 461, 465 (E.D. Pa. 1979)).  Further, Settlement classes numbering in the thousands have been found not to pose manageability concerns and have been certified. *In re Vitamins Antitrust Litig., v. Chinook Group Ltd.,* 2001 WL 856292 at *2 (D.D.C. 2001). *See, e.g., In re Newbridge Networks Sec. Litig.,* 926 F. Supp. 1163, 1175-76 (D.D.C. 1996) (certifying class consisting of " thousands" of members).

Moreover, members of the Class sought are geographically dispersed throughout the United States.  *See Pigford v. Glickman*, 182 F.R.D. 341, 348 (D.D.C. 1998).  "Joinder of this number of geographically dispersed entities would be impracticable because some members would be unable to assume the financial burdens associated with litigating individual antitrust lawsuits, and because some members have relatively small claims, rendering it unlikely and unfeasible, in an economic sense, for them to bring individual claims." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. at 477. Accordingly, the numerosity requirement is satisfied.

### 2. There Are Questions of Law and Fact Common to Each Member of the Settlement Class

Rule 23(a)(2) requires only that there be some questions of law or fact common to the class. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Accordingly, the commonality requirement has been aptly characterized as a "low hurdle easily surmounted." *Scholes*, 143 F.R.D. at 185 (quotations and citations omitted); *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Antitrust cases, by their nature, deal with common legal and factual issues. *See, e.g. Ballard*

*v. Blue Shield of S.W. Va., Inc.* 543 F.2d 1075, 1080 (4th Cir. 1976) ("Class actions are frequently maintained in antitrust cases because of the many questions of law and fact that are common to the members of the class."); *Jennings Oil Co. v. Mobil Oil Corp.*, 80 F.R.D. 124, 128 (S.D.N.Y. 1978) ("The monopolization claims are contingent upon a showing of monopoly power and an examination of the manner in which such power was acquired or maintained.  These issues, along with others, are questions that are undoubtedly common to all members of the putative class.") (citations omitted).  Also, "[t]he weight of authority in antitrust cases indicates that the question of the existence of a conspiracy in restraint of trade is one that is common to all potential plaintiffs, and the importance of this question usually warrants treating them as a class." *Sebo v. Rubenstein,* 188 F.R.D. 310, 314 (N.D. Ill. 1999) (citation omitted).

In this case, there are several issues of law and fact common to each Class member, including, among others:

a.     whether Defendants entered into an agreement not to compete in the sale of Ovcon 35 and its generic equivalents;

b.     whether Defendants' agreement not to compete was unlawful;

c.     whether Defendants' unlawful conduct caused Plaintiffs and the other members of the Class to pay more for Ovcon 35 and its generic equivalents than they would have paid absent Defendants' conduct; and

d.     whether Defendants' conduct caused Plaintiffs and the Class damages, and if so, the appropriate measure of damages.

Based on the above, it is clear that the commonality requirement is satisfied in this case.

### 3.    The Representative Plaintiffs' Claims Are Typical of Third Party Payor Class Members' Claims

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."  Typicality focuses on "whether the individual claim of the class representatives has the essential characteristics common to the claims of the class."  *In re Flat Glass Antitrust Litig.*, 191 F.R.D. at 479.  A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."  *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) *(*quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)), *cert. denied*, 506 U.S. 1051 (1993); *In re VMS Sec. Litig.*, 136 F.R.D. at 475.  "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  1 H. Newberg & A. Conte, Newberg On Class Actions § 3.13, at 3-76 (3d ed. 1992) ("Newberg"); *see also NASDAQ*, 169 F.R.D. at 511 (factual differences among class members do not defeat class certification where all claims arise from the same price-fixing conspiracy); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 699 (N.D. Ga. 1991) (typicality requirement satisfied even though the 12.5 million class members purchased tickets for an enormous number of different routes, at diverse times, at a multitude of varying prices, and on diverse terms).  Courts have construed the typicality requirement liberally.  *See Scholes*, 143 F.R.D. at 185; *Mersay v. First Republic Corp. of Am.*, 43 F.R.D. 465, 468 (S.D.N.Y. 1968).

In this case, Plaintiffs' claims are unquestionably typical of the claims of the Class it seeks to represent.  Plaintiffs contend that they were injured in their business or property by Defendants' antitrust violations.  Plaintiffs' claims are typical because their claims, just like the absent Class

members' claims, all arise from the same course of conduct – Warner Chilcott's alleged monopolization of the Ovcon 35 market and Defendants' alleged conspiracy to restrain trade – and all are based on the same legal theory (that such conduct violates Sections 1 of the Sherman Act). Thus, the typicality requirement is satisfied.

### 4.    The Representative Plaintiffs Will Fairly and Adequately Represent the Settlement Class

The final requirement of Rule 23(a) is that the representative parties fairly and adequately represent the class.  Fed. R. Civ. P. 23(a)(4).

> Two criteria for determining the adequacy of representation are generally recognized:  (1) the named representative must not have antagonistic or conflicting interests with unnamed members of the class, and (2) the representatives must appear to be able to vigorously prosecute the interests of the class through qualified counsel.

*Nat'l Ass'n of Reg'l. Med. Program v. Mathews,* 551 F.2d 340, 345 (D.C. Cir. 1976) (citations omitted), *cert. denied*, 431 U.S. 954 (1977); *see Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (holding that where it is unlikely that segments of the class would have interests conflicting with the class representative, and where the interests of the class have been competently urged at each level of the proceeding, the test of Rule 23(a)(4) has been met).

Here, the interests of the Class Representatives, Vista and United, are aligned with the interests of the other Class members because they have all been injured by the same allegedly anticompetitive conduct.  Plaintiffs do not have any interests antagonistic to those of the other Class members.  The central issues for the conspiracy claims -- the existence, duration and effect of Warner Chilcott's allegedly anticompetitive agreement with Barr -- are common to the claims of the Class Representatives and the other members of the proposed Class.  Plaintiffs have the same interest as each of the other Class members in proving each of these elements.  Proof of these elements by

the Plaintiffs will necessarily support the claims of the other Class members.

The Class Representatives are represented by qualified and experienced lawyers who have successfully prosecuted several antitrust class actions, so "there is no ground for supposing that plaintiffs will not adequately represent the class." *In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. at 306.[8]

### C.     The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

Once the four prerequisites of Rule 23(a) are met, the Class must also satisfy at least one provision of Rule 23(b). *Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir.), *cert. denied*, 525 U.S. 1033 (1998). Pursuant to Rule 23(b)(3), class certification is appropriate where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *see Thomas*, 139 F.3d at 234; *In re VMS Sec. Litig.*, 136 F.R.D. at 479. As the Supreme Court has recently observed, "predominance [of common issues] is a test readily met in certain cases . . . involving violations of antitrust laws." *Amchem Products. v. Windsor*, 521 U.S. 591, 625 (1997). Here, the proposed settlement Class clearly satisfies Rule 23(b)(3).

### 1.     Common Questions of Law and Fact Predominate

Rule 23 requires only that common issues predominate, not that they be dispositive of the entire litigation. *See, e.g.*, *Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 4 (D.D.C. 1992) ("common issues need not be exclusive, but must only predominate over individual concerns"). The Supreme Court has recognized that "predominance is a test readily met in certain cases alleging consumer or

---

[8] So as not to burden the Court with numerous attachments, the Class Representatives have not attached any firm resumes as exhibits to this Memorandum. If the qualifications of Plaintiffs' counsel becomes an issue, appropriate evidence of their experience with antitrust class actions and other complex litigation will be provided.

securities fraud or *violations of the antitrust laws*." *Amchem Prods., Inc.*, 521 U.S. at 625 (emphasis added). *See Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 427 (D.N.M. 1988) ("[t]he common questions of law, the elements of the monopolization claim . . . dwarf, rather than merely predominate over, any individual questions"); *Chevalier v. Baird Sav. Ass'n*, 72 F.R.D. 140, 149 (E.D. Pa. 1976) ("[I]n Section 1 Sherman Act cases, the existence *vel non* of a conspiracy has been recognized as an overriding issue common to the plaintiff class."). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *NASDAQ*, 169 F.R.D. at 517 (citations omitted).

Courts addressing monopolization and conspiracy claims have readily concluded that the existence and scope of the anti-competitive conduct and its impact on purchasers predominate over any individual issues. This Court, in another pharmaceutical antitrust class action, observed that "[a]ntitrust actions involving common question of liability for monopolization and price-fixing have frequently been held to predominate for the preliminary stage of class certification." *In re Lorazepam & Clorazepate Antitrust Litig.*, 204 F.R.D. 12 (D.D.C. 2001). In that case, the plaintiffs alleged that defendants unlawfully monopolized, conspired to monopolize, and fixed prices in the market for generic anti-anxiety drugs. *Id.* at *9. Chief Judge Hogan certified a class of purchasers, finding that the following common questions were presented: (1) the definition of the relevant markets; (2) whether defendants had monopoly power in those markets; (3) whether that market power was willfully maintained by exclusionary means; (4) whether defendants conspired to monopolize and fix prices; (5) the success and impact of the defendants' monopolization, conspiracy to monopolize, and conspiracy to fix prices; and (6) the legality of the defendants' actions. *Id.* at *63; *see also Stephenson v. Bell Atlantic Corp.*, 177 F.R.D. 279, 286-87 (D. N.J. 1997) (certifying monopoly claims under both federal and state antitrust law and finding that common questions were

presented); *Davis v. S. Bell Tel. & Tel. Co.*, Case No. 89-2839-CIV, 1993 WL 593999, at *20-26 (S.D. Fla. 1993) (granting class certification in monopolization case and noting that "[t]he complexity of these [individual] issues pales in comparison with the complexity of the issues related to proof of antitrust violation").  *See also In re Ampicillin Antitrust Litig.*, 55 F.R.D. at 273 (finding commonality where "[e]ach of the class actions allege[d] that the defendants' violations of Sections 1 and 2 of the Sherman Act [h]ad caused the price of ampicillin and other semisynthetic penicillins to be maintained at high, arbitrary and noncompetitive levels throughout the United States, all to the injury of plaintiffs and the particular class members"); 4 Newberg § 18.26, at 18-83 to 18-86 ("[i]n antitrust suits, the issue of conspiracy, monopolization, and conspiracy to monopolize have been viewed as central issues which satisfy the predominance requirement").

In this case, there are multiple issues of antitrust violation, impact and damages that can be proved with class-wide evidence.  Thus, the questions of law or fact common to the members of the Class predominate over questions affecting only individual Class members' complaints, and the Class should be conditionally certified for settlement purposes.

### 2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Controversy

A class action is a superior device for adjudicating the effects of Defendants' actions on Third Party Payors' purchases of Ovcon 35.  Neither the parties nor the judicial system would benefit from duplicative litigation in this matter.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94 C 897, 1994 WL 663590, at *5 (N.D. Ill. 1994); *In re Amino Acid Lysine Antitrust Litig.*, No. 95 C 7679, M.L. NO. 1083, slip op. at 17 (N.D. Ill. February 15, 1996).  Prosecution of this action as a class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated."  *Fifth Moorings Condo., Inc. v. Shere*, 81

F.R.D. 712, 719 (S.D. Fla. 1979) (quoting 1966 Advisory Committee Notes to Rule 23, 39 F.R.D. 69, 102-03 (1966)); *accord United Nat'l Records, Inc. v. MCA, Inc.*, 101 F.R.D. 323 (N.D. Ill. 1984). "What would be unmanageable is the institution of numerous individual lawsuits." *Scholes*, 143 F.R.D. at 189. Moreover, "[t]he cost associated with individual claims may require claimants with potentially small amounts to abandon otherwise valid claims simply because pursuing those claims would not be economical. This in turn would result in unjustly enriching the Defendants; precisely the result antitrust laws are designed to remedy." *Potash*, 159 F.R.D. at 699.

The words of Judges Will and Robson in *In re Folding Carton Antitrust Litig.* are instructive:

> We are further of the opinion that the alternative methods of adjudication inevitably involve duplicative, expensive, and time consuming suits without any countervailing benefits. Conversely, the class action embodies an efficient and fair balance of the interests of the plaintiffs, the class members, and the defendants, all of whom will have their claims and the claims against them adjudicated in one lawsuit. While such litigation presents some problems to counsel and the court, these burdens are not nearly as onerous to the judicial system as a series of extended suits against the defendants.

> The public at large likewise will benefit from a class action and expeditious adjudication of the issues involved, since class actions reenforce the regulatory scheme by providing an additional deterrent beyond that afforded either by public enforcement or by single-party private enforcement.

75 F.R.D. at 733 (citations and quotations omitted).

Thus, the alternatives to a class action here are either: (1) no recourse for possibly thousands of individual Class members throughout the United States who have been allegedly damaged by Defendants' anticompetitive conduct, or (2) a multiplicity of scattered suits, resulting in the inefficient, and possibly inconsistent administration of justice. Certification of the Class in this action is plainly the superior, and in all likelihood the only, method by which most, if not all, Class members can seek to remedy their injuries.

This Settlement satisfies all the requirements of Rule 23. Numerosity, commonality, typicality, and adequacy are all present in this case, with common questions predominating, and class treatment is the optimum way to handle this matter. Therefore, the Court should conditionally certify the proposed Settlement Class.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant its Motion for Preliminary Approval of Settlement with Warner Chilcott and Barr, and: (1) conditionally certify this case as a class action on behalf of the proposed Third Party Payor Class; (2) establish a date for a hearing on approval of the proposed settlement; (3) approve the forms of Direct Notice and Summary Notice; (4) direct that the Direct Notice and Summary Notice be disseminated as requested; and (5) establish a deadline for potential Class members to request exclusion from the Settlement Class or to file any objections to the proposed Settlement. A proposed Order granting the Motion for Preliminary Approval is attached as Exhibit 4 to the Motion.

Dated: June 12, 2007                                  Respectfully submitted,


                                                      s/ Kevin B. Love
                                                      Kevin B. Love (specially admitted)
                                                      Joshua A. Migdal
                                                      HANZMAN CRIDEN & LOVE, P.A.
                                                      7301 S.W. 57th Court, Suite 515
                                                      South Miami, Florida 33143
                                                      Telephone: (305) 357-9000
                                                      Facsimile: (305) 357-9050

                                                      L. Kendall Satterfield (Bar # 393953)
                                                      Michael G. McLellan (Bar # 489217)
                                                      FINKELSTEIN, THOMPSON & LOUGHRAN
                                                      1050 30th Street, N.W.
                                                      Washington, D.C.  20007
                                                      Phone: (202) 337-8000
                                                      Facsimile (202) 337-8090

Jay Shapiro
**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
150 W. Flagler Street, Suite 2200
Miami, Florida 33130
Phone: (305) 789-3200
Facsimile (305) 789-3229

Marc A. Wites
**WITES & KAPETAN, P.A.**
4400 North Federal Highway
Lighthouse Point, FL 33064
Phone: (954) 570-8989
Facsimile (954) 428-3929

Joseph C. Kohn
William E. Hoese
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Phone: (215) 238-1700
Facsimile: (215) 238-1968

Eric L. Young
**KENNEY LENNON & EGAN**
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
Phone: (610) 940-9099
Facsimile: (610)-940-0284

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing were served via e-mail on this

12th day of June 2007, on the following persons:

Peter C. Thomas, Esq.                    Karen N. Walker, Esq.
Simpson Thacher & Bartlett LLP           Mark L. Kovner, Esq.
North Building                           Kirkland & Ellis LLP
601 Pennsylvania Avenue, N.W.,           655 Fifteenth Street, N.W.
Washington D.C. 20004                    Washington D.C. 20005
Telephone: (202) 220-7700                Telephone: (202) 879-5000
Facsimile: (202) 220-7702                Facsimile: (202) 879-5200

***Counsel for Warner Chilcott***           ***Counsel for Barr Pharmaceuticals***


                                         s/ Kevin B. Love
                                         Kevin B. Love


L:\103\PLEADINGS\Final Memo Prelim. Approval.wpd