UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VISTA HEALTHPLAN, INC. and UNITED
FOOD AND COMMERCIAL WORKERS
CENTRAL PENNSYLVANIA HEALTH
AND WELFARE FUND, on behalf of
themselves and all others similarly situated,

    Plaintiffs,

     v.

WARNER HOLDINGS COMPANY III,
LTD., *et al.*,

    Defendants.

Civil Action No. 05-2327 (CKK)

**MEMORANDUM OPINION**
(November 15, 2007)

    This matter comes before the Court on Plaintiffs' Motion for Final Approval of Settlement and Request for Attorneys' Fees, Costs and Incentive Awards in this putative class action. The parties previously moved for conditional certification of the class and preliminary approval of the settlement, which the Court granted by Order dated June 27, 2007. Plaintiffs filed their Motion for Final Approval on October 23, 2007. On November 6, 2007, the Court held a fairness hearing related to the settlement, as required by Federal Rule of Civil Procedure 23(e). The arguments and representations made on the record during that fairness hearing are hereby expressly incorporated and made a part of this Memorandum Opinion.

    Upon a searching review of Plaintiffs' Motions for preliminary and final approval of the settlement and certification of the class, the arguments and representations made and the exhibits submitted at the fairness hearing, the relevant statutes and caselaw, and the entire record herein,

the Court shall grant Plaintiffs' [101] Motion for Final Approval of Settlement and [103] Request

for Attorneys' Fees, Costs and Incentive Awards.

## I: BACKGROUND

### A.    Factual and Procedural Background

Plaintiffs, Vista Healthplan, Inc. ("Vista") and United Food and Commercial Workers

Central Pennsylvania and Regional Health and Welfare Fund ("United Food"), brought this

putative class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and

a class of Third Party Payors who purchased, reimbursed, and/or paid for Ovcon 35 during the

period April 22, 2004 through June 27, 2007 (the date on which the Court entered its Order

preliminarily approving the settlement in this action).[1]  Plaintiffs named as Defendants to this

action Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner

Chilcott (US) Inc., Warner Chilcott Company, Inc. (together "Warner Chilcott") and Barr

Pharmaceuticals, Inc. ("Barr").  Plaintiffs filed their Second Amended Class Action Complaint

("SAC") on April 14, 2006, alleging that Defendants participated in an unlawful conspiracy to

prevent a generic version of Warner Chilcott's Ovcon 35 from reaching the market.  SAC ¶¶ 1-2.

In particular, Plaintiffs allege that Defendants agreed that Warner Chilcott would pay Barr $20

million in exchange for Barr's agreement not to market its generic version of Ovcon 35 for five

years.  *Id.* ¶¶ 2-7.  Plaintiffs further allege that Defendants' agreement denied Plaintiffs and other

Class Members the benefits of competition and of cheaper generic versions of Ovcon 35, such

that members of the Class paid supracompetitive prices for Ovcon 35 and suffered antitrust

---

[1] In the interest of consistency with the parties' filings and the Settlement Agreement, the Court refers to the class of Third Party Payors at issue in this Memorandum Opinion as the "Class."

injury. *Id.* ¶ 8. Plaintiffs assert that Defendants' conduct violated Section 1 of the Sherman Act, 15 U.S.C. § 1, the antitrust and/or consumer protection statutes of certain states, and the unjust enrichment laws of the fifty states. *Id.* ¶¶ 77-93.

The Court entered a scheduling order regarding fact and expert discovery between the parties to this action. Pursuant to that scheduling order, since Plaintiffs commenced this action in December 2005, Plaintiffs and Class Counsel have engaged in extensive investigation relating to the claims and underlying events alleged in Plaintiffs' Second Amended Class Action Complaint. In particular, Class Counsel (1) reviewed and analyzed over 800,000 documents produced in this action; (2) researched and analyzed issues relating to class certification, liability, causation, and damages; (3) briefed substantive motions on class certification and liability; (4) deposed 27 employees of Defendants; (5) defended four Plaintiff depositions; and (6) retained and consulted with economists and other experts with respect to causation and damages. Pls.' Mem. of Law in Support of Mot. for Final Approval of Settlement and Request for Attorneys' Fees, Costs and Incentive Awards (hereinafter "Final Mem.") at 5-6; Mot. for Final Approval, Ex. B (10/23/07 Aff. of Kevin B. Love in Support of Mot. for Final Approval) (hereinafter "Love Aff.") ¶ 6. After a year of conducting discovery, the parties began serious discussions regarding possible resolutions of their dispute. Final Mem. at 6; Love Decl. ¶ 7. The Court initially referred this action to Magistrate Judge Alan Kay on November 27, 2006. *See* Order, Docket No. [78], Nov. 27, 2006. Several months later, after numerous meetings in person and via telephone, the parties agreed to settle this action. Final Mem. at 6; Love Decl. ¶ 7. The parties then finalized the terms of the proposed settlement over the course of a month, and the Settlement Agreement was executed on May 15, 2007. Final Mem. at 6; Love Decl. ¶ 7.

3

On June 27, 2007, the Court entered an order conditionally approving certification of the

Class, preliminarily approving the settlement and providing the form and manner of notice to the

Class.  In particular, the Court's June 27, 2007 Order defined the Class as:

> All Third Party Payors in the United States who purchased, reimbursed, and/or
> paid for Ovcon 35 at any time from April 22, 2004 through the date of the Order
> preliminarily approving the proposed settlement of this Action.  Excluded from
> the Class are Defendants, their subsidiaries, affiliates, officers, and directors, and
> government entities.

> "Third Party Payors" shall mean any non-governmental entity that is: (i) a party to
> a contract, issuer of a policy, or sponsor of a plan, which contract, policy, or plan
> provides prescription drug coverage to natural persons; and (ii) is also at risk,
> pursuant to such contract, policy, or plan to provide prescription drug benefits, or
> to pay or reimburse all or part of the cost of prescription drugs dispensed to
> natural persons covered by such contract, policy, or plan.

> A self-funded health benefit plan for employees of a government entity that
> satisfies the definition of "Third Party Payors" shall not be considered a
> government entity.

Order, Docket No. [100] at ¶ 3.

> B.     *The Terms of the Settlement Agreement*

Pursuant to the Settlement Agreement, Warner Chilcott and Barr will each donate

branded combined hormonal contraceptive products with a retail value of $1,500,000 (for a total

of $3,000,000) throughout the United States to (1) primary care physicians not currently

receiving samples of the donated products who prescribe combined hormonal contraceptives, (2)

university health centers or clinics, or (3) charitable organizations providing reproductive

healthcare services to women.  Warner Chilcott and Barr will pay all costs associated with their

respective donations, and are required to provide certification to Class Counsel of their respective

compliance with the Settlement Agreement's product donation requirements on the one-, two-,

and three-year anniversaries of the Settlement Agreement's Effective Date.  In addition, Warner

Chilcott and Barr each agreed to pay $550,000, for a total value of $1,100,000, into a Fees Fund

to be used to pay reasonable attorneys' fees and costs.  Finally, Warner Chilcott and Barr each

paid $50,000, for a total of $100,000, into a Costs Fund, which was used to pay the expenses

associated with providing notice to the Class, settlement administration, and any Court-approved

incentive payments.  *See* Pls.' Mot. for Prelim. Approval of Settlement, Ex. A (Settlement

Agreement), Section II; Final Mem. at 6-7.

      C.    *Form and Manner of Notice to the Class*

      The Court's June 27, 2007 Order approved Plaintiffs' proposed form and manner of

giving notice to the Class and found mailing of notices to all potential members of the Class, as

well as publication of notice in *National Underwriter: Life & Health/Financial Services Edition*

to be the "best means of providing notice practicable under the circumstances . . . in full

compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and

due process."  Order, Docket No. [100] at ¶¶ 6-9.  The Order accompanying this Memorandum

Opinion and the Affidavit of Charlene Young Regarding Mailing of Notice of Pendency of Class

Action, Proposed Settlement and Fairness Hearing, filed in support of Plaintiffs' Motion for

Final Approval describe in detail the manner in which notice was actually provided to members

of the Class.  *See* Final Mem. at 7-8, Ex. C (9/20/07 Young Decl.) (hereinafter "Young Aff.").  In

particular, the Settlement Administrator–Complete Claim Solutions–caused notices to be printed

and, on July 13, 2007, mailed notices to 41,561 potential Class Members, using a database

created and regularly used in notifying Third Party Payor class members in settlements of large

pharmaceutical antitrust class actions.  Young Aff. ¶¶ 4-6.  In addition, the Settlement

Administrator published notice in the July 23, 2007 issue of *National Underwriter: Life & Health/Financial Services Edition*.  *Id.* ¶ 7.

The notice program apprised Class Members as to the content of the settlement and their rights under the settlement, including the right to opt-out or object.  Final Mem. at 8; Young Aff., Exs. 1 and 2.  The deadline for objecting to or opting-out of the settlement was August 27, 2007.  Final Mem. at 8.  The Settlement Administrator received fifty (50) discrete requests to opt-out of the settlement, and a list of those opting-out from the settlement is attached as Exhibit A to the accompanying Order.  Young Aff. ¶ 14.  In addition, Class Counsel received one objection to the settlement.  Love Aff. ¶ 19, Ex. 3 (8/7/07 Letter from M. McTigue).[2]  The nature of the objection is discussed in greater detail below.

D.    *Joint Motion for Final Approval and Fairness Hearing*

On October 23, 2007, Plaintiffs filed their Motion for Final Approval of Settlement and Request for Attorneys' Fees, Costs and Incentive Awards.  As required by Federal Rule of Civil Procedure 23(e), the Court held a fairness hearing on the record on November 6, 2007.  Counsel for all parties appeared at the hearing.  No objectors appeared at the hearing, despite being advised of their opportunity to do so via the notice campaign.

## II: LEGAL STANDARD

A class may be certified for settlement purposes only, and such "settlement-only" classes have become increasingly prominent.  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 618

---

[2] Although the objection letter is directed to the Clerk of Court, United States District Court for the District of Columbia, and correctly addressed, the Court did not receive a copy of the objection letter and was therefore unaware of the objection until Plaintiffs filed their Motion for Final Approval on October 23, 2007.

(1997).  Settlement-only class certification nevertheless obligates a Court to consider whether the proposed class meets the requirements of Federal Rule of Civil Procedure 23, although the Court need not determine whether the case, if tried, would present management problems.  *Id.* at 620; *Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998).  As proponents of class certification, Plaintiffs have the burden of establishing that each of the elements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions.  *Amchem*, 521 U.S. at 614; Fed. R. Civ. P. 23; *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006).  The four prerequisites to a class action lawsuit under Rule 23(a) are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  These four requirements are referred to as numerosity, commonality, typicality, and adequacy of representation.  In addition, Plaintiffs must demonstrate that the class is maintainable under Rule 23(b).  In the instant case, Plaintiffs seek certification under Rule 23(b)(3) and, as such, must show that "questions of law or fact common to the members of the class predominate over any questions only affecting individual members, and that class action is superior to other methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  These requirements are referred to as predominance and superiority.

Approval of a proposed class action settlement lies within the discretion of the District Court.  *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) ("*Vitamins II*") (citing *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)).  Pursuant to

Federal Rule of Civil Procedure 23(e), "[t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal or compromise is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(C).  In considering whether to approve a proposed class action settlement, the Court must strike a balance between a rubber stamp approval and "the detailed and thorough investigation that it would undertake if it were actually trying the case." *United States v. District of Columbia*, 933 F. Supp. at 47.  Furthermore, there is a long-standing judicial attitude favoring class action settlements, and the Court's "discretion is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases."  *Vitamins II*, 305 F. Supp. 2d at 103 (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999); citing *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993)).

### III:  DISCUSSION

The Court first concludes that the Class meets the requirements for certification pursuant to Rule 23(a) and (b)(3), before turning to approval of the settlement pursuant to Rule 23(e), and finally to Plaintiffs' Request for attorneys' fees, costs and incentive awards.

A.    *Rule 23(a) Requirements*

1.    *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)1).  The numerosity requirement "imposes no absolute limitations," but rather "requires examination of the specific facts of each case."  *Gen. Tele. Co. of the NW v. EEOC*, 446 U.S. 318, 330 (1980).  Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class

has at least forty members. *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003); *Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996), *aff'd in part and rev'd in part*, 139 F.3d 227 (D.C. Cir. 1998). A plaintiff need not provide the exact number of potential class members to satisfy the requirement, so long as there is a reasonable basis for the estimate provided. *Bynum*, 214 F.R.D. at 32-33; *Pigford*, 182 F.R.D. at 347. Here, Plaintiffs assert that Warner Chilcott's sales of Ovcon 35 were approximately $70 million per year and that the proposed Class numbers in the thousands. Final Mem. at 18. Plaintiffs further assert that members of the Class are geographically dispersed throughout the United States. *Id.* In light of the lack of any information to the contrary, the Court concludes that joinder would be impracticable, and that the numerosity requirement of Rule 23(a)(1) is satisfied.

        *2.    Commonality*

      Rule 23(a)(2) requires that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) ("*Lorazepam I*") (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *see also Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006). Significantly, "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum*, 214 F.R.D. at 33. Plaintiffs' claims raise a number of common issues of law and fact, including: (1) whether Defendants entered into an agreement not to compete in the sales of Ovcon 35 and its generic equivalents; (2) whether Defendants' agreement was unlawful; (3) whether Defendants' conduct caused members of the

Class to pay more for Ovcon 35 than they would have paid absent Defendants' agreement; and (4) whether Defendants' conduct caused members of the Class damages, and if so, the appropriate measure of damages. SAC ¶ 65. The Court therefore concludes that the commonality requirement of Rule 23(a)(2) is met.

> 3. *Typicality*

Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement aims at ensuring "that the class representatives have suffered injuries in the same general fashion as absent class members." *In re Vitamins Antitrust Litigation*, 209 F.R.D. 251, 260 (D.D.C. 2002) ("*Vitamins I*") (quoting *Thomas*, 139 F.3d at 238). The facts and claims of each class member do not have to be identical to support a finding of typicality, *see Thomas*, 139 F.3d at 238, rather "[t]ypicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff," *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 304 (E.D. Mich. 2001). The typicality requirement is satisfied "if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Lorazepam I*, 202 F.R.D. at 27 (quoting *Pigford*, 182 F.R.D. at 349). Here, Plaintiffs claim that they were injured in their business or property by Defendants' conduct. Final Mem. at 21. Plaintiffs' claims and those of absentee members of the Class all arise from the same course of conduct (Defendants' agreement) and all are based on the same legal theory (that Defendants' conduct violates Section 1 of the Sherman Act). Plaintiffs are Third Party Payors who purchased, reimbursed, and/or paid for Ovcon 35 during the Class Period. As their claims can only be

described as typical of the Class, the Court finds that the commonality requirement is satisfied.

### 4.    *Adequacy*

Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (internal quotation omitted). The Court has been presented with no evidence whatsoever that Plaintiffs' interests are in any way antagonistic to those of absentee members of the Class.[3] Rather, the central issues for Plaintiffs' conspiracy claims–the existence, duration, and effect of Defendants' agreement–are central and common to the claims of all Class members. Final Mem. at 22. Plaintiffs thus have the same interest as all absentee Class members in proving these elements and establishing liability and damages. *Id.*

With respect to the adequacy of class counsel, Lead Counsel has successfully served as lead or co-lead counsel in several national class actions and class action settlements, as well as other complex cases litigated on behalf of consumers. *See* Love Aff. ¶¶ 2-3, Ex. 1 (Hanzman Criden & Love, P.A. Firm Resume). Lead Counsel's professional competence and diligence

---

[3] The Court notes that, as discussed below, pursuant to the Settlement Agreement and upon Court approval, the named Plaintiffs will receive incentive awards. No objections to these incentive awards have been raised, and the Court therefore concludes that the payment of the incentive awards does not, in and of itself, make Plaintiffs' interests antagonistic to those of absentee class members. In particular, the Court notes that it is within the Court's discretion to grant the incentive awards, and that Plaintiffs had no assurance of receiving such awards during the pendency of this litigation.

have been favorably commented upon by a number of courts before whom counsel has appeared.
Love Aff. ¶ 3, Ex. 1 at 4-6.  Lead Counsel and other Class Counsel have devoted substantial time
and energy to litigating this action through settlement.  *See* Love Aff. ¶ 3, 6; Pl.'s Mot. for Final
Approval, Exs. D-I (10/23/07 Aff. of Kevin B. Love in Support of Mot. for Attys Fees and
Costs); (6/21/07 Aff. of Jay B. Shapiro in Support of Mot. for Attys Fees and Costs); (6/22/07
Aff. of L. Kendall Satterfield in Support of Mot. for Attys Fees and Costs); (6/21/07 Aff. of
William E. Hoese on Behalf of Kohn, Swift & Graf, P.C. in Support of Mot. for Attys Fees and
Costs); (6/26/07 Aff. of Marc A. Wites of Wites & Kapetan, P.A. in Support of Mot. for Attys
Fees and Costs); (6/27/07 Aff. of Eric L. Young in Support of Mot. for Attys Fees and Costs).
The Court has no grounds for questioning the continued adequacy of class counsel.  As such, the
Court shall appoint Class Counsel pursuant to Rule 23(g) and concludes that the adequacy
requirement of Rule 23(a)(4) has been satisfied.

   B.     *Rule 23(b) Requirements*

   Plaintiffs seek to certify the proposed class pursuant to Federal Rule of Civil Procedure
23(b)(3).  The Court therefore turns to considering whether common questions predominate over
non-common questions and whether class resolution is superior to other methods of adjudication.
Fed. R. Civ. P. 23(b)(3).

   1.     *Predominance*

   In order to satisfy Rule 23(b)(3), Plaintiffs must show that the common issues identified
by the Court above as sufficient under Rule 23(a)(2) predominate over any non-common issues.
*Vitamins I*, 209 F.R.D. at 262.  Significantly, the common issues need only be predominant, not
dispositive of the litigation.  *Lorazepam I*, 202 F.R.D. at 29 (citing *In re Potash Antitrust Litig.*,

159 F.R.D. 682, 693 (D. Minn. 1995)).  "There is no definitive test for determining whether

common issues predominate, however, in general, predominance is met 'when there exists

generalized evidence which proves or disproves an element on a simultaneous, class-wide basis,

since such proof obviates the need to examine each class members' individual position.'"

*Vitamins I*, 209 F.R.D. at 262 (citing *Potash*, 159 F.R.D. at 693).

  Here, Plaintiffs assert claims under the federal antitrust laws, the antitrust and/or

consumer protection laws of certain states, and the unjust enrichment laws of the fifty states.

Antitrust actions involving allegations of price-fixing have frequently been found to meet the

predominance requirement in class certification analyses.  *Id.* at 263 (collecting cases);

*Lorazepam I*, 202 F.R.D. at 29.  Indeed, a number of courts have specifically found the

predominance requirement satisfied (and certified classes) in class actions alleging antitrust

injury in the form of overcharges resulting from delayed entry of a generic or lower-priced drug.

*See Lorazepam I*, 202 F.R.D. at 29-30; *J.D.B.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D.

208, 217-19 (S.D. Ohio 2003); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 343-46 (D. Mass.

2003); *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 58 (S.D.N.Y. 2002); *Cardizem*, 200 F.R.D.

at 307-25.  Furthermore, "[u]nder both federal and state law, the essential elements of a private

antitrust action are the same . . . ."  *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D. Mass.

2004).  Although Plaintiffs assert claims under the unjust enrichment laws of the fifty states, such

claims may involve predominant common questions insofar as they all require a showing that

Defendants were unjustly enriched at the expense of the Class Members.  Moreover, the

existence of minor differences in state law does not preclude the certification of nationwide

classes.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir.

1998).  Accordingly, the Court finds that the common issues of law and fact identified above

predominate over non-common issues, such that the predominance test of Rule 23(b)(3) is met.

> 2.    *Superiority*

Finally, the Court turns to the superiority requirement of Rule 23(b)(3), which is met

when a court determines that a class action is superior to other available means of adjudication.

Fed. R. Civ. P. 23(b)(3).  The superiority requirement ensures that resolution by class action will

"achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to

persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable consequences."  *Amchem*, 521 U.S. at 615.  Here, the class action clearly provides

the superior method of adjudication, for reasons discussed above.  In particular, the size of the

Class, the uniformity of issues regarding Defendants' liability, and the fact that the costs of

prosecuting this type of complex litigation may outweigh an individual Class member's potential

damages all counsel in favor of class action adjudication.  The Court therefore concludes that the

superiority requirement of Rule 23(b)(3) is met.

> C.    *Rule 23(e) Requirements*

Having concluded that final certification of the Settlement Class is appropriate pursuant

to Rule 23(a) and (b), the Court now turns to considering whether the proposed settlement is

"fair, adequate and reasonable and is not the product of collusion between the parties," as

required by Rule 23(e).  *Thomas*, 139 F.3d at 231; Fed. R. Civ. P. 23(e).  There is no single test

in this Circuit for determining whether a proposed class action settlement should be approved

under Rule 23(e).  *Pigford*, 184 F.R.D. at 98.  However, in making such a determination, courts

in this Circuit have considered the following factors, among others: (1) whether the settlement is

the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength

of Plaintiffs' case; (3) the stage of the litigation proceedings at the time of settlement; (4) the

reaction of the class; and (5) the opinion of experienced counsel.  *Vitamins II*, 305 F. Supp. 3d at

104 (citing numerous cases); *In re Baan Company Secs. Litig.*, 284 F. Supp. 2d 62, 64-67

(D.D.C. 2003).  The Court shall address these factors in the order Plaintiffs consider them in their

Memorandum in support of their Motion for Final Approval.

   *1. Arm's-Length Negotiations*

  "A presumption of fairness, adequacy, and reasonableness may attach to a class

settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery."  *Vitamins II*, 305 F. Supp. 2d at 104; *Lorazepam II*, 2003 WL 22037741,

at * 2.  As discussed above, the settlement in this action was reached after extensive discovery,

factual investigation, and legal analysis.  Final Mem. at 9; Love Aff. ¶ 6.  Furthermore, the

settlement was the result of months of negotiations, including in person and telephonic meetings

between counsel, and oversight by Magistrate Judge Kay.  Final Mem. at 9; Love Aff. ¶ 7.  The

Court has been presented with absolutely no evidence that the settlement is anything other than

the product of arm's-length negotiation between experienced counsel.

   *2. The Terms of the Settlement in Relation to the Strength of Plaintiffs' Case*

  Plaintiffs continue to believe that they could have succeeded had this action gone to trial,

but readily admit that they "faced several significant substantive and procedural obstacles that

would have to be overcome before Plaintiffs and the Class could establish liability or recover

damages."  Final Mem. at 10.   Plaintiffs acknowledge that antitrust conspiracy cases are

complex and difficult, making victory uncertain.  *Id.*  Moreover, Plaintiffs' allegations in this

action have not yet been tested to see if Plaintiffs state a claim or have standing to bring this action.  On May 3, 2006 Defendants filed a Joint Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint, in which Defendants argued that Plaintiffs lacked standing to bring this action and failed to state a claim under various state antitrust statutes.  That motion was never resolved, but was instead dismissed without prejudice in order to allow the parties to concentrate on their settlement efforts.  *See* Order, Docket No. [88], Mar. 2, 2007.  Plaintiffs admit that the Court might have ruled in favor of Defendants upon considering the merits of that motion, and further acknowledge that there is no guarantee that Plaintiffs' claims would have survived a motion for summary judgment or that the Class would have been certified if litigated.  Final Mem. at 11.

Even more significantly, Plaintiffs admit that "Defendants raised several defenses that, if accepted by the jury, would have made it more difficult for Plaintiffs to secure a favorable verdict as to Defendants' liability."  *Id.*  First, Defendants asserted that they entered into the agreement at issue in this action for legitimate business reasons, i.e., because Warner Chilcott was experiencing serious supply problems with its then supplier. *Id.*  Second, Plaintiffs faced a defense relating to the definition of the relevant market in this action, which Defendants argued included over 80 other brand-name and generic oral contraceptives, rather than solely Ovcon 35 and its generic equivalents.  *Id.*  In support of each of these defenses, Defendants presented contemporaneous documentary evidence as well as expert testimony.  *See* Mem. of P & A in Support of Joint Motion for Final Approval of the Settlement, *Cohen v. Warner Chilcott Public Limited Company*, Civil Action No. 06-401, Docket No. [94] (D.D.C. Oct. 2, 2007) (referenced in Final Mem. at 11).  Third, Defendants raised a defense based on their evidence that Ovcon 35

16

is a heavily sampled product and that between April 2004 and September 2006, free samples

accounted for 40% of the packs of Ovcon 35 distributed by Warner Chilcott.  Final Mem. at 11 &

n.4; Love Aff. ¶ 16; Expert Report of Henry G. Grabowski (submitted as Defs' Ex. 1 at the

11/6/07 Fairness Hrg.)[4] (hereinafter "Grabowski Report") ¶ 6. This evidence presented a defense

to both liability and damages.  Specifically, Defendants argued–and their expert opined–that their

agreement was not anti-competitive.  Final Mem. at 11; Grabowski Report ¶¶ 24-27.  Defendants

and their expert also maintained that Warner Chilcott would have stopped distributing free

samples upon entry of a generic version of Ovcon 35.  Final Mem. at 11, n.4; Love Aff. ¶ 16;

Surrebuttal Expert Report of Henry G. Grabowski (submitted as Defs.' Ex. 2 at the 11/6/07

Fairness Hrg.) (hereinafter "Grabowski Surrebuttal Report") ¶¶ 12-15.  Plaintiffs acknowledge

that if Defendants could have proven this assertion, "one could conclude that Third Party Payors

would have had to pay some or all of those new prescriptions for consumers no longer receiving

free samples."  Final Mem. at 11, n.4; Love Aff. ¶ 16.

    In addition, the Third Party Payor Plaintiffs faced a unique defense due to the "co-

payment differential" that results from Third Party Payors generally requiring consumers to pay

higher co-payments for branded drugs than for generic versions of the same drug.  Final Mem. at

11-12; Love Aff. ¶ 17.  The following example demonstrates the possible import of the co-

payment differential, and is based on the explanation presented to the Court during the November

6, 2007 fairness hearing.  Plaintiffs acknowledge that Ovcon 35 is a relatively inexpensive drug,

Final Mem. at 12, which cost $44 per pack on average during the Class Period, Grabowski

---

    [4] At the Fairness Hearing, counsel for Warner Chilcott presented the Court with both
redacted and unredacted versions of Dr. Grabowski's reports. The Court has had no need to refer
to unredacted materials.

Report ¶ 31.  If a particular Third Party Payor set a $25 co-payment for branded Ovcon 35 during the Class Period, when a consumer purchased a pack of branded Ovcon 35 for $44, the remaining cost to the Third Party Payor was $19.  If Barr's generic version of Ovcon 35 entered the market at a 10% price discount, it would have been priced at roughly $39 per pack.  However, if the Third Party Payor set a $10 co-payment for the generic version, when a consumer purchased Barr's generic for $39, the remaining cost to the Third Party Payor would be $29.  The Third Party Payor might therefore pay more to reimburse a consumer's purchase of Barr's generic than to reimburse a purchase of branded Ovcon 35.  Even if a second generic entered the market, with a resulting 20% discount off of the price of branded Ovcon 35 and a per pack price of $35, if the consumer's co-payment was $10, the Third Party Payor would reimburse $25 of the consumer's purchase.  Again, the Third Party Payor would be required to reimburse more for the generic version than it would have for branded Ovcon 35.

Plaintiffs admit that this defense could have led a jury to conclude that Third Party Payors suffered little to no damages as a class.  Final Mem. at 12; Love Aff. ¶ 18.  Indeed, Plaintiffs note that in addition to Defendants, the plaintiffs in the related consumer class action pending before this Court took the position that Third Party Payors suffered little to no damages as a class.  *Id.* During the fairness hearing, Lead Counsel was quite frank as to the merits of these potential defenses and the risks inherent in continuing to trial in this litigation, stating that "at bottom . . . we just did not have damages in this case that we thought when we first got into the case. Furthermore, the Court notes that even if Plaintiffs had prevailed at trial, it is likely that any verdict would have been followed by an appeal, which might have further delayed the final resolution of this case.  *Pigford*, 185 F.R.D. at 104-05.  "By contrast, the settlement negotiated by

18

the parties provides for relatively prompt recovery." *Id.* It is obvious that Plaintiffs faced

significant risks in establishing both liability and damages and in continuing to trial, and that the

fairness, adequacy, and reasonableness of the settlement must be viewed in light of these

considerations.

3.     *The Status of the Litigation at the Time of Settlement*

In determining whether a proposed class action settlement is fair, adequate, and

reasonable, courts "consider whether counsel had sufficient information, through adequate

discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and

range of recovery." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290 (TFH),

2003 WL 22037741, *4 (D.D.C. Jun. 16, 2003) ("*Lorazepam II*"). Here, the Court finds that the

settlement does not "come too early to be suspicious nor too late to be a waste of resources" but

is rather "at a desirable point in the litigation for the parties to reach an agreement and to resolve

these issues without further delay, expense, and litigation." *Vitamins II*, 305 F. Supp. 2d at 105.

As noted above, the Settlement Agreement in this action was executed after 18 months of

litigation. By that point in time, Plaintiffs and Class Counsel had reviewed over 800,000

documents, taken the deposition of 27 employees of Defendants, defended four depositions, and

retained an expert to testify on class certification and damages. Final Mem. at 12; Love Aff. ¶ 6.

This extensive discovery was followed by more than five months of negotiations and further

investigations. Final Mem. at 12-13; Love Aff. ¶ 7. The Court therefore concludes that, at the

time settlement was reached, both parties possessed well-founded views of the merits of their

respective positions and the potential for, and likely amount, of any recovery.

4.     *The Reaction of the Class*

19

The Class' reaction to the settlement in this case appears to have been overwhelmingly positive, and is a factor which counsels in favor of approval. *Lorazepam II*, 2003 WL 22037741, at *5. The Settlement Administrator sent out 41,561 notices to Third Party Payors across the country, and developed and maintained a website to provide information about the settlement. Final Mem. at 13; Young Aff. ¶¶ 4-6. In addition, summary notice was published in the July 23, 2007 issue of *National Underwriter: Life & Health/Financial Services Edition*. Final Mem. at 13; Young Aff. ¶ 7. Despite the fact that the notice clearly advised Class Members of their right to opt-out of the settlement, only 50 class members opted-out. Young Aff. ¶ 14. In addition, only one objection was filed in this action, and the "existence of even a relatively few objections certainly counsels in favor of approval." *Lorazepam II*, 2003 WL 22037741, at *6.

The sole objector in this action asserted that the case should not be settled without the Class being reimbursed for its damages. *See* Love Aff., Ex. 3 (8/7/07 Letter from M. McTigue). However, as Plaintiffs correctly note, the objection does not "recognize that Defendants credibly argue that the Class suffered little to no damages, and that some Third Party Payors may have in fact benefitted from Defendants' alleged conduct." Final Mem. at 13-14. Moreover, as Plaintiffs further note, "if the objector believed that it had indeed suffered damages nothing prevented the objector from" opting-out and bringing its own lawsuit against Defendants; however, the objector did not do so. *Id.*; *see* Young Aff. ¶ 14, Ex. 3 (listing Requests for Exclusion received by Settlement Administrator).

For similar reasons, other courts have approved class action settlements that involve the distribution of products rather than individualized recoveries. *See e.g.*, Order and Final Judgment, *In re Childrens' Ibuprofen Oral Suspension*, Misc. No. 04-535 (ESH) (D.D.C. 11, 2006); *In re*

*Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 353 (S.D.N.Y. 2000) ("The decision to forego individual recoveries was sensible, given the difficulty of identifying proper claimants and the difficulty, and especially the costs, that such recoveries and their administration would have entailed. The net monetary relief for any individual claimant would have been limited."); *Reebok Int'l, Ltd.*, 96 F.3d 44, 49 (2d Cir. 1996). Significantly, the Court notes that product cannot be directly distributed to the Plaintiffs in this action because they are Third Party Payors rather than consumers. Nevertheless, the product distribution called for in the settlement may provide an indirect benefit to Class Members, because "[s]ome of the consumers that receive free product from this Settlement will inevitably be insured by Class Members, and the more free product their insureds receive, the less reimbursement those insurers will have to pay." Final Mem. at 12 n.5; Love Aff. ¶ 10. In addition, Plaintiffs note that because drug companies have apparently stopped offering discounts on oral contraceptives to university health services, the settlement "comes at a good time for young women who cannot afford birth control." Love Aff. ¶ 10 (citing *A Jump in the Cost of Birth Control Puts Students in a Quandary*, U.S. News & World Report, Oct.11, 2007). For all of the foregoing reasons, the Court concludes that the sole objection in this action lacks merit and shall be overruled.

     5.    *The Opinion of Experienced Counsel*

    As Judge Thomas F. Hogan has noted, the opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Lorazepam II*, 2003 WL 22037741, at *6. Class Counsel are clearly of the opinion that the settlement in this action is fair, adequate, and reasonable. Final Mem. at 14-15. The Court agrees with Plaintiffs' counsel that the total value of the settlement in this action appears

reasonable in light of the substantial difficulties faced by Plaintiffs in establishing liability and damages.  Moreover, for all of the reasons discussed above, the Court finds that the settlement represents the product of arm's length-negotiations between experienced counsel, after adequate opportunity for discovery.  As such, the Court concludes that the settlement is fair, adequate, and reasonable, and that the requirements of Rule 23(e)(1)(C) are therefore met.

> D.     *Attorneys' Fees, Expenses, and Incentive Awards*

Finally, the Court turns to considering the attorneys' fees, expenses, and incentive awards requested in Plaintiffs' Motion.  Neither Defendants nor any members of the Class oppose these requests, and the Court addresses each in turn.

Class Counsel requests that the Court grant them a fee award of the $1,100,000 placed in the Fees Fund as reasonable fees and costs in prosecuting this action.  Love Aff. ¶¶ 22-25.  Courts have a duty to ensure that claims for attorneys' fees are reasonable.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993).  As an initial matter, the Court notes that Class Counsel separately negotiated regarding the Fees Fund, and only did so after negotiating the $3 million product donation on behalf of the Class.  Love Aff. ¶ 12.  Thus, importantly, class Counsel's requested fee does not diminish the recovery by the Settlement Class.  *In re Vitamins Antitrust Litig.*, Misc. Action No. 99-197, 2001 WL 34312839, * 12 (D.D.C. Jul. 16, 2001) (hereinafter "*Vitamins III*") (citing *Duhaime v. John Hancock Mutual Life Ins. Co.*, 989 F. Supp. 375, 379 (D. Mass. 1997)).  Class Counsel asserts that their fee award request is reasonable under either of the two main methods used by courts to assess the reasonableness of such requests: the percentage-of-recovery method and the lodestar method.  Final Mem. at 26 (citing *In re Vitamins Antitrust Litig.*, Misc. Action No. 99-197, 2001 WL

34312839, * 4 (D.D.C. Jul. 16, 2001) (hereinafter "*Vitamins III*")).

The Court believes that it is appropriate to consider the various settlement funds collectively as a "constructive common fund," valued at $4.2 million. *Vitamins III*, 2001 WL 34312839, at * 4. In a true common fund case, attorneys' fees are paid out of a common fund shared with class plaintiffs, such that the amount recovered by plaintiffs is reduced by the amount awarded in attorneys' fees. *Id.* Here, in contrast, the settlement has separate funds for class recovery and attorneys' fees, and because the attorneys' fees are borne by defendants and not plaintiffs, they represent a valuable part of the settlement. *Id.* at *4, *9.

"The D.C. Circuit has joined other circuits 'in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.'" *Lorazepam II*, 2003 WL 22307741, at * 7 (quoting *Swedish Hosp.*, 1 F.3d at 1271). In the *Lorazepam* case, Judge Hogan noted that factors that may be considered by courts evaluating fee requests include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the award in similar cases.

*Id.* at *8 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)). As noted above, the separate settlement funds represent a constructive common fund of $4.2 million, and Plaintiffs estimate that the Class includes thousands of Third Party Payors. Final Mem. at 28. It is undisputed that this litigation was complex and stretched over roughly a year and a half. In addition, as discussed above, Class Counsel are experienced litigators who have served as lead or

23

co-counsel in numerous complex antitrust class actions and other actions benefitting consumers.

Furthermore, the Court notes again that the settlement in this action was obtained in the face of

substantial defenses.

      The Court has already addressed the sole objection to the settlement and there are no

objections to the request for attorneys' fees.  As Plaintiffs correctly note, the lack of objections is

significant because the Class is made up of thousands of sophisticated healthcare companies.  *Id.*

(citing *Freeport Partners v. Allbritton*, Civil Action No. 04-2030 (GK), 2006 WL 627140, at *10

(D.D.C. Mar. 13, 2006)).  Class Counsel devoted over 4500 hours of time to litigating this case,

including reviewing documents and data, retaining and consulting with experts, participating in

depositions, and researching and briefing numerous complex motions.  Final Mem. at 26, 29.

Moreover, in light of the substantial defenses raised by Defendants, "[t]he risk of nonpayment

through either an award of summary judgment or loss at trial was significant and real in this case."

*Lorazepam II*, 2003 WL 22037741, at *8 (quotation omitted).   Finally, the Court notes that "fee

awards in common fund cases may range from fifteen to forty-five percent" and that "the normal

range of fee recovery in antitrust suits is twenty to thirty percent of the common fund."

*Lorazepam II*, 2003 WL 22037741, at *8. (citing cases).  Here, Class Counsel's requested fee

award of $1,100,000 represents roughly twenty-six percent (26%) of the constructive common

fund of $4.2 million.  Class Counsel's requested fee thus appears reasonable in comparison to fee

awards in other comparable cases

      Class Counsel also avers that they expended an aggregate of 4,575.4 hours prosecuting this

action, resulting in a total lodestar of $1,550,110.  *See* Love Aff. ¶¶ 23; Pls.' Mot. for Final

Approval, Exs. D-I.  In addition to the time expended, Class Counsel incurred expenses of

$225,350.43.  Love Aff. ¶ 24.  Class Counsel is requesting a total of $1,100,000 from the Fees

Fund to reimburse them for over $1,700,000 in total lodestar and incurred costs.  Final Mem. at

27.  Class counsel is requesting attorneys' fees that are less than their lodestar without any

multiplier, which serves as further evidence of the reasonableness of their attorneys' fee request.

*See Lorazepam II*, 2003 WL 22037741, at *9 ("multiples ranging up to 'four are frequently

awarded in common fund cases when the lodestar method is applied.'") (quoting *Prudential Ins.*,

148 F.3d at 341).  As such, under either the common fund method or the percentage-of-recovery

method, Class Counsel's requested fee appears reasonable.

As part and parcel of their request for $1,100,000 in attorneys' fees and costs, Class

Counsel seek reimbursement for $225,350.43 in out-of-pocket expenses.  "[T]here is no doubt

that an attorney who has created a common fund for the benefit of the class is entitled to

reimbursement of . . . reasonable litigation expenses from that fund."  *Vitamins III*, 2001 WL

34312839, at *13 (citation omitted).  However, "counsel are entitled to reimbursement only for

those expenses incurred in the course of work that benefitted the class."  *Id.*  Here, Class Counsel

have submitted Affidavits itemizing their expenses from the inception of this litigation to date.

Pl.'s Mot. for Final Approval, Exs. D-I.  Based upon a thorough review of those Affidavits, the

Court finds that Class Counsel reasonably expended the claimed amounts, and shall therefore

approve payment of Class Counsel's incurred expenses as part of their request for $1,100,000

from the Fees Fund.  In light of the foregoing considerations, the Court concludes that Class

Counsel's attorneys' fee request and costs request is reasonable, and shall therefore award Class

Counsel the $1,100,000 they seek from the Fees Fund.

Finally, Class Counsel requests that the Court award each Plaintiff (Vista and United

Food) a $12,500 incentive award, to be paid out of the Costs Fund.  Final Mem. at 30; Love Aff.

¶¶ 26-27.  The Court notes that Class Members were advised of these potential awards via the

notice program, and that no objections to the incentive awards were received.  Final Mem. at 30.

As Judge Hogan noted in the *Lorazepam* case, "courts routinely approve incentive awards to

compensate named plaintiffs for the services they provided and the risks they incurred during the

course of the class action litigation."  2003 WL 22037741, at *10.  Here, Class Counsel estimates

that the each named Plaintiff spent in excess fifty (50) hours assisting class counsel in prosecuting

this action.  Love Aff. ¶ 26.  Class Counsel further asserts that each named Plaintiff "assisted

Class Counsel in various essential tasks, including document production, depositions,

participating in discussions on damages with the expert, and taking part in settlement

negotiations."  *Id.* ¶ 27.  The Court therefore concludes that "the additional payments to the

named Plaintiffs are reasonable in light of their investments of . . . money, and effort on the part of

the class."  *Lorazepam III*, 2003 WL 22037741, at *11 (quoting *Collins v. Pension Benefit*

*Guaranty Corp.*, No. CA 88-3406-AER, 1996 WL 335346, at *6 (D.D.C. Jun. 7, 1996)).  The

Court shall accordingly grant the requested incentive awards.

## IV:  CONCLUSION

    For the foregoing reasons, the Court shall grant Plaintiffs' [101] Motion for Final

Approval of Settlement and [103] Request for Attorneys' Fees, Costs and Incentive Awards. The

parties' proposed Order and Final Judgment accompanies this Memorandum Opinion.


Date:   November 15, 2007


                                    /s/
                                    COLLEEN KOLLAR-KOTELLY

United States District Judge